**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **JOE M. FULBRIGHT,**<br>**Plaintiff,**<br>**vs.**<br>**UNION PACIFIC RAILROAD COMPANY**,<br>**Defendant.** | **Case No. 3:20-cv-2392** |

**DEFENDANT UNION PACIFIC'S BRIEF IN SUPPORT OF ITS**
**MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

PROCEDURAL BACKGROUND ........ 2

STANDARD UNDER RULE 12(B)(6) ........ 6

ARGUMENT ........ 7

I. Fulbright has not administratively exhausted his disparate-impact claim (First Cause of Action). ........ 8

A. A claim based on qualification standards is a disparate-impact claim. ........ 8

B. Fulbright's disparate-impact claim has not been administratively exhausted. ........ 11

II. Fulbright's failure-to-accommodate claim is time-barred and unexhausted (Second Cause of Action). ........ 13

A. Fulbright did not timely file his failure-to-accommodate claim. ........ 14

B. Regardless, Fulbright has not exhausted his administrative remedies for a failure-to-accommodate claim. ........ 17

III. Fulbright's unlawful medical inquiry claim is time-barred (Third Cause of Action). ........ 18

CONCLUSION ........ 21

## TABLE OF AUTHORITIES

### Cases

*Acker v. Gen. Motors, L.L.C.*,
853 F.3d 784 (5th Cir. 2017) ........ 17
*Aguilar v. Ocwen Loan Servicing, LLC*,
No. 3:17-cv-1165-B, 2018 WL 949225, (N.D. Tex. Feb. 20, 2018) ........ 15, 16
*Ahmed v. Hussain*,
No. 4:17-CV-00999-O-BP, 2018 WL 2271179, (N.D. Tex. Apr. 18, 2018). ........ 12, 13
*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ........13, 14, 15, 16, 18, 19, 20
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6
*Boersig v. Union Elec. Co.*,
219 F.3d 816 (8th Cir. 2000) ........ 10
*Busari-Ibe v. AGS-AECOM Co.*,
No. 4:11-CV-625-Y, 2012 WL 12090207 (N.D. Tex. Jan. 25, 2012) ........ 11
*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
137 S.Ct. 2042 (2017)........ 15
*China Agritech, Inc. v. Resh*,
138 S.Ct. 1800 (2018)........ 15
*Cicalese v. Univ. of Tex. Med. Branch*,
924 F.3d 762 (5th Cir. 2019) ........ 8
*Cinel v. Connick*,
15 F.3d 1338 n. 6 (5th Cir.1994)........ 2
*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ........ 7
*Commonwealth Oil/Tesoro Petroleum Corp. Securities Litig.*,
467 F. Supp. 227 (W.D. Tex. 1979)........ 10, 16
*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) ........ 15
*Dao v. Auchan Hypermarket*,
96 F.3d 787 (5th Cir. 1996) ........ 11, 14
*Dollis v. Rubin*,
11 F.3d 777 (5th Cir. 1995) ........ 11
*Fort Bend County v. Davis*,
139 S.Ct. 1843 (2019)........ 11
*Ganousis v. E.I. du Pont de Nemours & Co.*,
803 F. Supp. 149 (N.D. Ill. 1992)........ 20
*Gonzalez v. City of New Braunfels*,
176 F.3d 834 (5th Cir. 1999) ........ 10, 12
*Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ........ 6

*Guidry v. Am. Pub. Life Ins. Co.*,
512 F.3d 177 (5th Cir. 2007) ........ 2
*Guy v. Lexington-Fayette Urban Cty. Gov't*,
488 Fed. Appx. 9, 21 (6th Cir. 2012) ........ 16
*Hall v. La. Workforce Comm'n*,
No. 15-00533-BAJ-RLB, 2016 WL 1756897, (M.D. La. Apr. 29, 2016) ........ 13
*Hamar v. Ashland, Inc.*,
211 Fed. Appx. 309 (5th Cir. 2006) ........ 17
*Hazen Paper Co. v. Biggins*,
507 U.S. 604 (1993) ........ 8
*Hunter v. Am. Gen. Life & Acc. Ins. Co.*,
384 F. Supp. 2d 888 (D.S.C. 2005) ........ 20
*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019) ........ 6, 8
*Johnson v. Ry. Express Agency*,
421 U.S. 454 (1975) ........ 15, 16, 18
*Jones v. Unum Life Ins. Co. of Am.*,
No. 4:0600547 JLH, 2006 WL 3462130, (E.D. Ark. Nov. 29, 2006) ........ 18
*King v. Life Sch.*,
809 F. Supp. 2d 572 (N.D. Tex. August 9, 2011) ........ 2
*Krehbiel v. Union Pac. R.R. Co.*,
No. 2:19-CV-02002-JAR-JPO, 2019 WL 3387049, (D. Kan. July 26, 2019) ........ 16
*Lejeune v. Omni Energy Servs. Corp.*,
No. 6:09-CV-0194, 2010 WL 378305 (W.D. La. Jan. 29, 2010) ........ 11
*Lovelace v. Software Spectrum, Inc.*,
78 F.3d 1015 (5th Cir. 1996) ........ 7
*Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997) ........ 10
*McClain v. Lufkin Indus., Inc.*,
519 F.3d 264 (5th Cir. 2008) ........ 11, 13
*Melgar v. T.B. Butler Publ'g Co., Inc.*,
931 F.3d 375 (5th Cir. 2019) ........ 11
*Menominee Indian Tribe of Wis. v. United States*,
136 S.Ct. 750 (2016) ........ 18
*Neitzke v. Williams*,
490 U.S. 319 (1989) ........ 7
*Owen v. STMicroelectronics, Inc.*,
No. 3:15-CV-1186-B, 2016 WL 2757368, (N.D. Tex. May 12, 2016) ........ 13
*Pacheco v. Mineta*,
448 F.3d 783 (5th Cir. 2006) ........ 11, 12
*Papasan v. Allain*,
478 U.S. 265 (1986)) ........ 6
*R2 Invs. LDC v. Phillips*,
401 F.3d 638 n. 2 (5th Cir. 2005) ........ 7
*Raytheon Co. v. Hernandez*,
540 U.S. 44 (2003) ........ 8, 9, 12

*Ricci v. DeStefano*,
557 U.S. 557 (2009) ....................................................................................................... 8
*Sista v. CDC Ixis N. Am., Inc.*,
445 F.3d 161 (2d Cir. 2006) .......................................................................................... 10
*Smith v. Pennington*,
352 F.3d 884 (4th Cir. 2003).......................................................................................... 19
*Spann v. Cmty. Bank of N. Va.*,
No. 03 C 7022, 2004 WL 691785, (N.D. Ill. Mar. 30, 2004)........................................... 17
*Spindle v. CKJ Trucking, LP*,
No. 4:18-CV-818, 2020 WL 1283519, (E.D. Tex. Mar. 18, 2020) .................................. 17
*Stith v. Perot Sys. Corp.*,
122 Fed. Appx. 115 (5th Cir. 2005) ................................................................................ 13
*Taylor v. Books-A-Million, Inc.*,
296 F.3d 376 (5th Cir. 2002)........................................................................................... 14
*Weitzner v. Sanofi Pasteur Inc.*,
909 F.3d 604 (3rd Cir. 2018)........................................................................................... 15
*Williams v. ABM Parking Servs. Inc.*,
296 F. Supp. 3d 779 (E.D. Va. 2017)........................................................................... 7, 10
*Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. & Mech. Coll.*,
360 Fed. Appx. 562 (5th Cir. 2010) ........................................................................... 16, 17
*Wright v. Arlington Indep. Sch. Dist.*,
834 Fed. Appx. 897 (5th Cir. 2020)................................................................................. 14
*Zarecor v. Morgan Keegan & Co.*,
801 F.3d 882 (8th Cir. 2015) ...................................................................................16, 19, 20

**INTRODUCTION**

In this employment discrimination action under the ADA, Plaintiff Joe Fulbright ("Plaintiff" or "Fulbright") seeks to remedy wrongs allegedly committed against him in 2015 by Defendant Union Pacific Railroad Company ("Union Pacific"). In July 2015, Fulbright filed a discrimination charge that was limited to disparate-treatment and retaliation allegations that Union Pacific falsely accused him of being impaired at work, removed him from service, and told him he no longer had a job because of his disability. The EEOC issued Fulbright its right-to-sue notice in June 2016, but Fulbright did not file this action at that time. Instead, he waited over four years to do so. In an attempt to justify this, Fulbright filed a sprawling complaint—no longer limited to the discrete issues raised in his discrimination charge—modeled after the class action complaint in *Harris v. Union Pac. R.R. Co.*, No. 8:16CV381 (D. Neb.).

Fulbright's discrimination charge did not administratively exhaust all of the issues raised in his Amended Complaint. His charge did not allege any facts regarding Union Pacific's fitness-for-duty program, Medical Rules, or alleged unlawful qualification standards, nor did it allege any facts regarding his failure-to-accommodate claim. Moreover, Fulbright's failure-to-accommodate claim is time-barred and not subject to equitable tolling because it was not part of the *Harris* class allegations. Lastly, Fulbright's claim for unlawful medical inquiries is time-barred because tolling ended when the *Harris* plaintiffs did not seek class certification for that claim, and Fulbright did not file this action within 90 days thereafter.

Thus, the Court should dismiss, with prejudice, Fulbright's claims for disparate impact (First Cause of Action), failure to accommodate (Second Cause of Action), and unlawful medical inquiries (Third Cause of Action).[1]

**PROCEDURAL BACKGROUND**

On July 28, 2015, Fulbright dual filed a discrimination charge against Union Pacific with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Fort Worth Human Relations Commission. *See* Doc. 40, ¶ 55; Ex. A.[2] Fulbright's charge alleged:

> **<u>I. PERSONAL HARM</u>**
> I complained of discrimination by Supervisor Terry Neal due to my disability in 2012. In retaliation for my complaint, I was falsely accused of being impaired in January 2015. I was involuntarily removed from work and placed on a medical evaluation in February 2015. In June 2015 I was discharged from my position.
>
> **<u>II. RESPONDENT'S REASON FOR ADVERSE ACTION</u>**
>
> On January 6, 2015, Mr. Neal alleged that I was impaired while at work and that I had failed to answer a call made my [sic] dispatch which was all proven to be false.
>
> On June 28, 2015, human Resources said no longer had a job in communications due to the medical evaluation.
>
> **<u>III. DISCRIMINATION STATEMENT</u>**
>
> I believe I have been discriminated against and retaliated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended, the City of Fort Worth's Fair

---

[1] In filing this motion, Union Pacific does not concede Fulbright is eligible for tolling to apply to any of his claims not addressed herein.

[2] As a public record, the court can consider Fulbright's discrimination charge under the Rule 12(b)(6) standards that apply to this Rule 12(c) motion. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007); *King v. Life Sch.*, 809 F. Supp. 2d 572, 578 (N.D. Tex. August 9, 2011) ("It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (quoting *Norris**Error! Bookmark not defined.** v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)); *see also Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994) (even though EEOC charge is outside the pleading, judicial notice may be taken as a matter of public record when deciding a Rule 12(b)(6) motion).

> Employment Ordinance No. 7278, as amended, and the Texas Commission on Human Rights because:
>
> I complained of discrimination by Supervisor Terry Neal due to my disability in 2012. Mr. Jim Bracken Regional Director of Communications corrected Mr. Neal's actions of discrimination and all was well until Mr. Bracken retired in late 2014. In January 2015, Mr. Neal scheduled a conference with me and my union representative to discuss my job performance. He alleged that I was impaired while at work and that I had failed to answer to a call made by dispatch. All his allegations were proven to be false. Even though I had no previous write ups I was removed from my service on February 3, 2015. Human Resources said I was on a medical evaluation. On or around June 28, 2015, I was told I no longer had a job in communications due to the results of the medical evaluation even though the company never contacted me to complete a medical evaluation. I believe that Mr. Neal is retaliating against me for my complaints of discrimination against him and that I am being treated in this manner due to my disability.

*See* Ex. A. On June 7, 2016, the EEOC issued its dismissal and right-to-sue notice to Fulbright. *See* Doc. 40, ¶ 56; Ex. B.

Over four years later, Fulbright filed his Complaint against Union Pacific. *See* Doc. 1, *passim*. On March 11, 2021, he filed an Amended Complaint. *See* Doc. 40, *passim*. Fulbright's discrimination charge did not allege any facts regarding Union Pacific's fitness-for-duty program, Medical Rules, or alleged unlawful qualification standards. *See* Ex. A. In his Amended Complaint, however, Fulbright alleges that Union Pacific had a fitness-for-duty program under its Medical Rules, Fulbright was a victim of the program and Medical Rules, and the program and Medical Rules were an unlawful qualification standard under 42 U.S.C. § 12112(b)(6). *See* Doc. 40, ¶¶ 6-12, 77, 79. Despite labeling this claim as a disparate-treatment claim, a claim based on qualification standards under the ADA is a disparate-impact claim. This claim has not been administratively exhausted and is not properly before the Court.

Fulbright's Amended Complaint also alleges a failure-to-accommodate claim under the ADA. *Id.*, ¶¶ 82-86. Fulbright was required to file this claim within 90 days of receiving his EEOC right-to-sue notice. His decision to wait until over four years later to do so bars this claim as untimely because it is not subject to equitable tolling. Moreover, this claim has not been administratively exhausted. Similarly, Fulbright's claim for unlawful medical inquiries is time-barred because equitable tolling based on the *Harris* class action stopped when the *Harris* plaintiffs did not seek class certification of the claim and Fulbright did not file this action within 90 days thereafter.

***The Harris Class Action***

Fulbright is pursuing claims that are not timely unless they were tolled by the now de-certified *Harris* class action. *Id.*, ¶¶ 55-65. *Harris* was filed on November 25, 2015, when Quinton Harris filed a complaint against Union Pacific in the U.S. District Court for the Western District of Washington alleging disability discrimination (Counts I, IV), unlawful medical requests (Count II), and failure to accommodate (Count III, V) in violation of the ADA and Arkansas Civil Rights Act (ACRA). *See* Ex. C, ¶¶ 23-47.

On February 19, 2016, Harris and five other named plaintiffs filed an amended complaint asserting individual and class claims alleging—in relevant part—disability discrimination based on disparate treatment (Count I), disparate impact (Count II), unlawful medical inquiries (Count III), and failure to accommodate under the ADA (Count IV). *See* Doc. 40, ¶ 57; Ex. D, ¶¶ 136-163. But the failure-to-accommodate claim was only pleaded on behalf of Harris and the other five named plaintiffs, not on behalf of the purported ADA class—of which Fulbright alleges he was a

member.[3] *See* Doc. 40, ¶ 58; Ex. D, ¶¶ 159-163. The amended complaint described the proposed class as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*See* Doc. 40, ¶ 58; Ex. D, ¶ 116.

On August 8, 2016, the case was transferred to the U.S. District Court for the District of Nebraska. *Harris v. Union Pac. R.R. Co*., No. 8:16CV00381-JFB-SMB (D. Neb. Aug. 8, 2016), ECF No. 52. On August 7, 2018, the named plaintiffs moved for class certification but narrowed the description of the proposed class to:

> All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

*See* Ex. E, p. 1; Ex. F, p. 22 n.5. Further, the named plaintiffs only sought "certification of Count I, ADA disparate treatment, of the Amended Complaint[.]" *See* Ex. F, p. 22.

On February 5, 2019, the district court granted plaintiffs' motion for class certification. *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 628 (D. Neb. 2019). On March 24, 2020, the Eighth Circuit Court of Appeals reversed class certification and ordered the class be de-certified for failing to satisfy the predominance and cohesiveness requirements under Rule 23. *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1035-39 (8th Cir. 2020).

---

[3] Union Pacific does not admit that Fulbright was, in fact, a class member in *Harris* and reserves the right to argue, after some discovery, that Fulbright's disparate treatment claim was also not tolled.

**STANDARD UNDER RULE 12(B)(6)**

In resolving a Rule 12(b)(6) motion, a court must take all well-pleaded facts as true, but after assuming the veracity of all well-pleaded facts, the court must assess whether those factual assertions "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Merely reciting a cause of action's elements is insufficient to state a claim for relief. *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."). Additionally, the court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Determining whether a complaint states a plausible claim for relief is a context specific task requiring the reviewing court to draw upon its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. The court must disregard "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Twombly*, 550 U.S. at 555, 557; *Iqbal*, 556 U.S. at 696, 698. Facts that are merely consistent with a defendant's liability "stop [] short of the line between possibility and plausibility of entitlement of relief." *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 698 (internal quotations omitted). In other words, where the pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the plaintiff is not entitled to relief. *Iqbal*, 556 U.S. at 679; *see also Lincoln Prop.*, 920 F.3d at 899 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true.")).

"[C]laims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.'" *Lincoln Prop.*, 920 F.3d at 899 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). The court's inquiry of whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss is limited to: (1) facts set forth in the complaint; (2) documents attached to the complaint; and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Id.* at 900 (citing *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 640 n. 2 (5th Cir. 2005)). In deciding a motion under Rule 12(b)(6) standards, courts may consider "documents either attached to *or incorporated in* the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (emphasis added). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (quotation omitted). The court can properly consider those documents in ruling under Rule 12(b)(6). *Lincoln Prop.*, 920 F.3d at 900. "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

**ARGUMENT**

The Court should dismiss, with prejudice, Fulbright's claims for disparate impact (First Cause of Action), failure to accommodate (Second Cause of Action), and unlawful medical inquiries (Third Cause of Action). Fulbright has not administratively exhausted his disparate-impact and failure-to-accommodate claims. Additionally, his failure-to-accommodate and unlawful medical inquiry claims are time-barred. Thus, these causes of action should be dismissed.

**I. Fulbright has not administratively exhausted his disparate-impact claim (First Cause of Action).**

Fulbright's first cause of action alleges "disparate treatment" based on Union Pacific allegedly imposing qualification standards and other criteria that screen out individuals with disabilities. *See* Doc. 40, ¶¶ 77, 79. Despite labeling it a disparate-treatment claim, a claim based on qualification standards under the ADA is a disparate-impact claim. This claim has not been administratively exhausted, and, thus, should be dismissed.

**A. A claim based on qualification standards is a disparate-impact claim.**

The U.S. Supreme Court has made clear that disparate-treatment and disparate-impact claims under the ADA rely on different theories and standards to prove discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52–55 (2003). Disparate treatment requires the employee to prove that the employer acted with discriminatory intent based on the employee's protected characteristic. *Id.* at 52–53; *see also Dept't of Hous. & Cmty. Affiars v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015); *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). The Fifth Circuit also recognizes that disparate-treatment claims require "proof and finding of discriminatory motive." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

In contrast, disparate impact involves facially neutral employment practices that have a disproportionately adverse effect on a protected group and cannot be justified by business necessity. *Raytheon*, 540 U.S. at 52-53; *see also Inclusive Communities Project*, 576 U.S. 524 ("In contrast to a disparate-treatment case, 'where a plaintiff must establish that the defendant had a discriminatory intent or motive,' a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect …' and are otherwise unjustified by a legitimate rationale.") (citation omitted).

Despite labeling it a disparate-treatment claim, Fulbright's claim that Union Pacific imposed a qualification standard that screens out individuals with disabilities is a disparate-impact claim. Disability discrimination under the ADA includes:

> [U]sing qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the [employer], is shown to be job-related for the position in question and is consistent with business necessity[.]

42 U.S.C. § 12112(b)(6). The Court in *Raytheon* put § 12112(b)(6) claims squarely under the disparate-impact category. Indeed, the Court explained that disparate-impact claims are cognizable under the ADA and cited "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out *an individual* with a disability"—the above language lifted directly from § 12112(b)(6)—as an example. *Raytheon*, 540 U.S. at 53 (emphasis added). This is consistent with the EEOC's interpretive guidance that § 12112(b)(6) is a disparate-impact provision. *Compare* 29 C.F.R. § 1630.15(a) (defense to disparate-treatment claims) *with* § 1630.15(b)-(c) (defenses to unlawful qualification standards and other disparate-impact claims); *see also* 29 C.F.R. Pt. 1630 App. § 1630.15(b)-(c) (discussing disparate-impact defenses to unlawful qualification standards claims). As the EEOC explains:

> Disparate impact means, with respect to title I of the ADA and this part, that uniformly applied criteria have an adverse impact *on an individual* with a disability or a disproportionately negative impact on a class of individuals with disabilities. Section 1630.15(b) clarifies that an employer may use selection criteria that have such a disparate impact, *i.e.*, that screen out or tend to screen out *an individual* with a disability or a class of individuals with disabilities only when they are job-related and consistent with business necessity.

29 C.F.R. Pt. 1630 App. § 1630.15(b)-(c) (emphasis added).

Similarly, in *Gonzalez v. City of New Braunfels*, the Fifth Circuit recognized that "[u]nder the ADA, if a plaintiff can prove that his employer has imposed eligibility requirements that tend to screen out the disabled, that employer will be deemed to have 'discriminated' unless it can demonstrate that the particular eligibility standard or criterion in question is 'job-related' and 'consistent with business necessity.'" 176 F.3d 834, 839 (5th Cir. 1999) (quoting § 12112(b)(6)). The court construed this claim as a disparate-impact claim. *Id*. Unlike a Title VII disparate-impact claim, under the ADA, a plaintiff can support his claim by "demonstrating an adverse impact on himself rather than on an entire group." *Id.* at 839 n.26. To make a *prima facie* claim of disparate-impact discrimination under § 12112(b)(6), a plaintiff must (1) identify the challenged employment practice or policy, and pinpoint the defendant's use of it; (2) demonstrate that the practice or policy had an adverse impact on the plaintiff with a disability; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *Id*. Thus, "the ADA, unlike Title VII, provides a screen out disparate impact theory under § 12112(b)(6) that applies to individuals." *Williams v. ABM Parking Servs. Inc.*, 296 F. Supp. 3d 779, 789 (E.D. Va. 2017) (relying on *Gonzalez*).

The majority of other circuits have also treated § 12112(b)(6) as a disparate-impact provision. *See, e.g.*, *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (distinguishing claims alleging discriminatory application of qualification standards from disparate-treatment claims); *Boersig v. Union Elec. Co.*, 219 F.3d 816, 822 (8th Cir. 2000) (discussing § 12112(b)(6) claim as "invoking a disparate-impact theory of ADA liability"); *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197 (7th Cir. 1997) (§ 12112(b)(6) sets forth disparate-impact approach to proving discrimination).

Consequently, Fulbright's qualification-standard claim is a disparate-impact claim. He has not exhausted his administrative remedies for disparate-impact claims.

**B. Fulbright's disparate-impact claim has not been administratively exhausted.**

To bring a claim under the ADA, a plaintiff must timely file a discrimination charge with the EEOC to exhaust his administrative remedies. *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378–79 (5th Cir. 2019) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (recognizing that ADA incorporates Title VII's administrative procedures)). The charge-filing rule is a mandatory precondition to bringing an action in court. *Fort Bend County v. Davis*, 139 S.Ct. 1843, 1846, 1851 (2019). Texas is a "deferral state" and the charge must be filed within 300 days of the allegedly discriminatory act. *Busari-Ibe v. AGS-AECOM Co.*, No. 4:11-CV-625-Y, 2012 WL 12090207, at *3 (N.D. Tex. Jan. 25, 2012).

"Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). An ADA action "is limited to the scope of an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Lejeune v. Omni Energy Servs. Corp.*, No. 6:09-CV-0194, 2010 WL 378305, at *5 (W.D. La. Jan. 29, 2010). Any issues that Fulbright did not bring before the EEOC for consideration cannot be considered by the Court. *Id.* (citing *Dollis v. Rubin*, 11 F.3d 777, 781 (5th Cir. 1995)).

In *Pacheco v. Mineta*, the Fifth Circuit held that the employee failed to exhaust his disparate-impact claim because his discrimination charge did not identify a neutral employment policy that would form the basis of a disparate-impact claim and the charge only alleged disparate treatment. 448 F.3d 783, 792 (5th Cir. 2006). "A neutral employment policy is the cornerstone of

any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business justifications for the policy." *Id*. There, the employee's discrimination charge alleged that he hadn't been promoted because of racial discrimination, but his lawsuit alleged both disparate treatment and disparate impact. *Id.* at 786–87. In affirming dismissal of the disparate-impact claim, the court held that:

> [a] disparate-impact investigation could not reasonably have been expected to grow out of Pacheco's administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only.

*Id.* at 792.

Here, "the Court must determine whether Plaintiff's charge provides enough information such that a resulting EEOC investigation would have touched upon the facially neutral, but actually discriminatory, employment policy Plaintiff alleges resulted in disparate impact." *Ahmed v. Hussain*, No. 4:17-CV-00999-O-BP, 2018 WL 2271179, at *3 (N.D. Tex. Apr. 18, 2018). Indeed, to make a *prima facie* case under § 12112(b)(6) Fulbright must identify the challenged employment practice or policy, and pinpoint the defendant's use of it. *Gonzalez* 176 F.3d at 839 n.26. But like the employee in *Pacheco*, Fulbright's discrimination charge was limited to disparate-treatment allegations that Union Pacific falsely accused him of being impaired at work, removed him from service, and told him he no longer had a job because of his disability. *See* Ex. A; *Raytheon*, 540 U.S. at 53 (case limited to disparate-treatment theory where applicant alleged that company refused to hire him because of a regard-as disability or his record-of disability). Despite his Amended Complaint identifying Union Pacific's fitness-for-duty program and Medical Rules as the neutral policy or practice supporting his disparate-impact claim, Fulbright's charge is void of any allegations about the program, Medical Rules, or any other neutral

employment policy or practice. *Compare* Doc. 40, ¶¶ 6-12, 77, 79, *with* Ex. A. Likewise, despite his claim that Union Pacific uses qualification standards that screen out or tend to screen out individuals with disabilities, his charge does not contain a single allegation about Union Pacific's supposed "qualification standards." *Compare* Doc. 40, ¶¶ 77, 79, *with* Ex. A. Nor does Fulbright's charge contain any allegations that an employment policy exists that adversely effects a protected class—all of Fulbright's arguments center on certain actions involving himself only. *See* Ex. A.; *Owen v. STMicroelectronics, Inc.*, No. 3:15-CV-1186-B, 2016 WL 2757368, at *3-*4 (N.D. Tex. May 12, 2016). Accordingly, "[t]o permit a disparate impact claim to be raised at this point would be to circumvent the EEOC's investigatory and conciliatory role." *Owen*, 2016 WL 2757368, at *3.

As such, Fulbright has not exhausted his disparate-impact claim, and, thus, his claim under § 12112(b)(6) should be dismissed. *See, e.g., McClain*, 519 F.3d at 273–74 (holding employee did not exhaust disparate-impact claims); *Stith v. Perot Sys. Corp.*, 122 Fed. Appx. 115, 118 (5th Cir. 2005) ("Because [plaintiff] did not include disparate impact discrimination in her EEOC complaint and has, therefore, failed to exhaust her administrative remedy, she cannot recover on that theory."); *Ahmed*, 2018 WL 2271179, at *3 (recommending dismissal of unexhausted disparate-impact claim); *Hall v. La. Workforce Comm'n*, No. 15-00533-BAJ-RLB, 2016 WL 1756897, at *6 (M.D. La. Apr. 29, 2016) (employee did not exhaust disparate-impact claim).

### II. Fulbright's failure-to-accommodate claim is time-barred and unexhausted (Second Cause of Action).

Fulbright was required to file his failure-to-accommodate claim within 90 days of receiving his right-to-sue notice. He did not do so. Instead, Fulbright attempts to excuse his failure by relying on equitable tolling under *American Pipe* and its progeny. Tolling, however, is not available for this claim because it was not asserted on a class-wide basis, and, thus, is time-barred. Regardless,

Fulbright's discrimination charge also did not administratively exhaust this claim. Thus, it should be dismissed.

**A. Fulbright did not timely file his failure-to-accommodate claim.**

A plaintiff alleging employment discrimination must file a civil action no more than 90 days after he receives the statutory right-to-sue notice from the EEOC. *Taylor v. Books-A-Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). "If the parties dispute the date of receipt, if the date is unknown, or if the plaintiff fails to allege the date of receipt, we presume that the plaintiff received the EEOC's letter, at most, seven days after it was mailed." *Wright v. Arlington Indep. Sch. Dist.*, 834 Fed. Appx. 897, 901 (5th Cir. 2020). The 90-day window is strictly construed and is "a precondition to filing suit in district court." *Taylor*, 296 F.3d at 379 (quoting *Dao*, 96 F.3d at 788–89 (5th Cir.1996)).

It is undisputed that the EEOC issued and mailed Fulbright its right-to-sue notice on June 7, 2016. *See* Doc. 40, ¶ 56; Ex. B. Thus, with the 7-day mailing presumption, the latest Fulbright could timely file suit was September 12, 2016. Fulbright did not do so and instead filed this action nearly four years later. He attempts to excuse his lateness by asserting that his claims were tolled during the now de-certified *Harris* class action. *See* Doc. 40, ¶¶ 55-65. But there is no tolling available for Fulbright's failure-to-accommodate claim because it was not pleaded on a class-wide basis in *Harris*. *See* Ex. D, ¶¶ 159-163.

In *American Pipe & Constr. Co. v. Utah*, the Supreme Court held that putative class members could otherwise untimely intervene because the filing of an underlying class action—which ultimately was not certified—tolled the statute of limitations on their claims against American Pipe. 414 U.S. 538, 541-44, 560-61 (1974). The Court has since clarified that *American Pipe* tolling is equitable tolling "designed to modify a statutory time bar where its rigid application

would create injustice." *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* 137 S.Ct. 2042, 2051-52 (2017). "Plaintiffs have no substantive right to bring their claims outside of the statute of limitations. That they may do so, in limited circumstances, is due to a judicially crafted tolling rule that itself does not abridge, enlarge, or modify any substantive right." *China Agritech, Inc. v. Resh,* 138 S.Ct. 1800, 1810 (2018); *see also ANZ Sec.*, 137 S.Ct. at 2051-52 ("Nothing in the *American Pipe* opinion suggests that the tolling rule it created was mandated by the text of a statute or federal rule. Nor could it have."). Accordingly, *American Pipe* tolling "need not be applied mechanically" and "it should not be applied where doing so would result in an abuse of *American Pipe." Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3rd Cir. 2018) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983)).

"The purpose of *American Pipe* tolling is to further the purpose of class actions without defeating the purpose of statutes of limitations." *Aguilar v. Ocwen Loan Servicing, LLC,* No. 3:17-cv-1165-B, 2018 WL 949225, at *6 (N.D. Tex. Feb. 20, 2018) (citing *Am. Pipe*, 414 U.S. at 555). "A key consideration in *American Pipe* was that the putative class member seeking to intervene had the exact same cause of action as the named plaintiff who originally brought the class action." *Id.* (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 467 (1975)). "This factor was more than a mere abstract or theoretical consideration because the prior filing in each case necessarily operated to avoid the evil against which the statute of limitations was designed to protect." *Johnson*, 421 U.S. at 467. In *Johnson*, the Court "was apparently unswayed by the fact that both of the plaintiff's claims were based on the same set of factual circumstances" and stated "[o]nly where there is complete identity of the causes of action will the protections [against the running of the statute of limitations] necessarily exist." *In re Commonwealth Oil/Tesoro*

*Petroleum Corp. Securities Litig.*, 467 F. Supp. 227, 259 (W.D. Tex. 1979) (quoting *Johnson*, 421 U.S. at 467 n.14).

> Thus, under the *American Pipe* rationale, if the class action giving rise to tolling is supposed to put the defendant on notice of claims that might be brought by putative class members after certification is denied, *American Pipe* tolling cannot extend to causes of action not raised in the class action because the class action will not have provided the defendant notice of claims other than those asserted in the class action.

*Aguilar*, 2018 WL 949225, at *6.

The *Harris* class action asserted class claims of disparate treatment (Count I), disparate impact (Count II), and unlawful medical inquiry (Count III). *See* Ex. D, ¶¶ 136-158; *Harris*, 329 F.R.D. at 620. While a failure-to-accommodate claim was pleaded in *Harris*, it was only done so on behalf of the 6 individual named plaintiffs—not on behalf of the ADA class. *See* Ex. D, ¶¶ 159-63. "A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment." *Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. & Mech. Coll.*, 360 Fed. Appx. 562, 565 (5th Cir. 2010).

As a result, Fulbright's failure-to-accommodate claim should be dismissed as untimely because this claim was not asserted on a class-wide basis in *Harris*, and, thus, is not tolled under *American Pipe*. *Krehbiel v. Union Pac. R.R. Co.*, No. 2:19-CV-02002-JAR-JPO, 2019 WL 3387049, at *4 (D. Kan. July 26, 2019) (holding *American Pipe* tolling did not apply to a *Harris* putative class member's untimely failure-to-accommodate claim and dismissing the claim); *see also Aguilar*, 2018 WL 949225, at *6 (holding *American Pipe* tolling did not apply to putative class members' state-law claims that were not asserted in the class action); *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015) ("*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action."); *Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 Fed. Appx. 9, 21 (6th Cir. 2012) ("[F]iling one class

action will not toll the statutes of limitations on all the claims or class actions a putative class member might have; it only tolls the claims asserted in the filed class action.”); *Spann v. Cmty. Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785, at *5 (N.D. Ill. Mar. 30, 2004) (recognizing that “the tolling doctrine only applies to the claims that were pending on behalf of the class”).

**B. Regardless, Fulbright has not exhausted his administrative remedies for a failure-to-accommodate claim.**

As discussed above, Fulbright’s discrimination charge was limited to disparate-treatment and retaliation allegations that Union Pacific falsely accused him of being impaired at work, removed him from service, and told him he no longer had a job because of his disability. *See* Ex. A. Fulbright’s charge neither alleges nor suggests an allegation that Fulbright requested a reasonable accommodation, much less that Union Pacific denied Fulbright a reasonable accommodation. *See Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017) (“Employees who require accommodation due to disability are responsible for requesting a reasonable accommodation.”) Disparate-treatment and failure-to-accommodate claims “represent distinct categories of disability discrimination under the ADA.” *Hamar v. Ashland, Inc.*, 211 Fed. Appx. 309, 309 (5th Cir. 2006). “An EEOC charge alleging only acts supporting a claim of discriminatory discharge does not exhaust a claim of failure to reasonably accommodate.” *Spindle v. CKJ Trucking, LP*, No. 4:18-CV-818, 2020 WL 1283519, at *2 (E.D. Tex. Mar. 18, 2020).[4]

[4] Citing *Windhauser*, 360 Fed. Appx. at 565 (“A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment.”); *Hamar*, 211 Fed. Appx. at 309 (affirming dismissal of ADA reasonable-accommodation claim because the EEOC charge asserted only employment discrimination); *Green v. Nat’l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (“Therefore, [failure to reasonably accommodate and disability discrimination] are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from a claim that an employee was terminated because of a disability.”)

Thus, Fulbright failed to exhaust his administrative remedies and his failure-to-accommodate claim should be dismissed.

**III. Fulbright's unlawful medical inquiry claim is time-barred (Third Cause of Action).**

Fulbright was required to file his unlawful medical inquiry claim within 90 days of receiving his right-to-sue notice. He did not do so. *See* Doc. 40, ¶ 56; Ex. B. Instead, Fulbright attempts to excuse his failure by relying *American Pipe* tolling. For purposes of this motion, however, even if the Court presumes that Fulbright's unlawful medical inquiry claim was tolled by the filing of the *Harris* class allegations—which Union Pacific does not concede—tolling ended when the *Harris* named plaintiffs moved for class certification only for their claim of disparate treatment and not for unlawful medical inquiry. In other words, Fulbright was required to file a lawsuit asserting his unlawful medical inquiry claim within 90 days of August 7, 2018 and his failure to do so bars his claim.

To invoke tolling under *American Pipe*, a plaintiff must fit within the class that the putative class action complaint sought to certify. *Menominee Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 755-57 (2016); *Jones v. Unum Life Ins. Co. of Am.*, No. 4:0600547 JLH, 2006 WL 3462130, at *3 (E.D. Ark. Nov. 29, 2006). The Supreme Court has explained that for tolling to apply the class action must "notif[y] the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S. at 555. "[T]he tolling effect given to the timely prior filings in *American Pipe* … depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson*, 421 U.S. at 467. "Only where there is complete identity of the causes of action will the [tolling] protections suggested by petitioner necessarily exist." *Id.* at 467 n.14.

In *Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003), the Fourth Circuit held that "when a plaintiff moves for class certification by asserting an unambiguous definition of his desired class that is more narrow than is arguably dictated by his complaint, his asserted class for tolling purposes may be limited to that more narrow definition." There, the plaintiff's memorandum in support of certification defined the class more narrowly than the complaint. Groups of intervenors later sought to join the litigation, but the Fourth Circuit affirmed that their claims were not subject to tolling because they were not within the class the plaintiff sought to certify. *Id.* at 895-96.

Similarly, in *Zarecor*, plaintiffs argued that *American Pipe* tolling should apply to pleaded claims that were different than those asserted in a prior class complaint but "based on the same factual information." 801 F.3d at 888. The Eighth Circuit disagreed, holding that "*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action." *Id*. The court acknowledged that the primary justification for *American Pipe* tolling is preventing duplicative and needless filings. *Id*. And it explained that "where a putative class member wishes to pursue a claim that is outside the scope of the class action, his separate timely lawsuit is not 'needless,' because the class action would not prosecute his different claim." *Id*.

This case is no different. On August 7, 2018, the *Harris* plaintiffs moved for class certification but narrowed the description of the proposed class. *See* Ex. E, p. 1; Ex. F, p. 22 n.5. They only sought "certification of Count I, ADA disparate treatment, of the Amended Complaint[.]" *See* Ex. F, p. 22. Thus, once they filed their motion to certify, all claims *except* disparate treatment became "outside the scope" of the litigation. In other words, the *Harris* plaintiffs were no longer prosecuting an unlawful medical inquiry claim on behalf of absent class

members. *Zarecor*, 801 F.3d at 888. Further, individuals with unlawful medical inquiry claims were not part of the "potential plaintiffs who may participate in the judgment" since any judgment for absent class members would have been limited to the ADA disparate treatment cause of action. *American Pipe*, 414 U.S. at 555.

As one district court has explained, allowing tolling under these circumstances encourages overly broad pleading and undermines judicial economy—the lynchpin supporting *American Pipe* tolling:

> [A]llowing tolling under these circumstances encourages spin-off litigation, rather than requiring resolution of all of the class certification issues in the original action in which they are raised. Thus, as occurred in this situation, counsel could initially pursue a broad definition in one jurisdiction, voluntarily narrow it for settlement purposes, dismiss any remaining claims, and then revive the dismissed claims in multiple suits in other jurisdictions while gaining the benefit of tolling from the earlier litigation.

*Hunter v. Am. Gen. Life & Acc. Ins. Co.*, 384 F. Supp. 2d 888, 893 (D.S.C. 2005) (refusing to apply tolling where "earlier class definition was voluntarily abandoned in favor of a narrower definition in the context of settlement negotiations"). Thus, even though the amended complaint in *Harris* included an unlawful medical inquiry claim, once the named plaintiffs voluntarily abandoned it in the motion to certify, class members could no longer avail themselves to the benefit of tolling. *See Ganousis v. E.I. du Pont de Nemours & Co.*, 803 F. Supp. 149, 155-56 (N.D. Ill. 1992) (explaining that once counsel moved to certify a narrower class, individuals who no longer met the narrower definition "were placed on legal notice that they could not look to the pending [class actions] to protect their interests and that they would therefore have to go it alone by bringing their own lawsuits.").

Because his right-to-sue notice had already issued, Fulbright had 90 days from August 7, 2018, until November 5, 2018, to file a lawsuit asserting his unlawful medical inquiry claim. He did not. Thus, his claim is time-barred and should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss, with prejudice, Fulbright's claims for disparate impact (First Cause of Action); failure to accommodate (Second Cause of Action); and unlawful medical inquiry (Third Cause of Action).

Respectfully submitted this 25th day of March, 2021.

*/s/ Derek McKee*

Derek McKee (TX #24108765)
Constangy, Brooks, Smith & Prophete, LLP
1201 Elm Street, Suite 2550
Dallas, Texas 75270
Telephone: 214.646.8625
Facsimile: 214.749.0078
dmckee@constangy.com

Heather M. Miller (TX #24062897)
Constangy, Brooks, Smith & Prophete, LLP
2600 Grand Blvd., Suite 750
Kansas City, MO 64108
Telephone: 816-472-6400
Facsimile: 816-329-5954
hmiller@constangy.com

Robert L. Ortbals, Jr. (MO Bar #56540)*
Constangy, Brooks, Smith & Prophete, LLP
7733 Forsyth Blvd, Ste. 1325
St. Louis, MO 63105
Telephone: (314) 338-3740
Facsimile: (314) 727-1978
rortbals@constangy.com

Attorneys for Defendant Union Pacific Railroad Company

* Admitted *Pro Hac Vice*.

**CERTIFICATE OF SERVICE**

I certify that on the 25th day of March, 2021, I electronically transmitted the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the following:

Donald E. Uloth
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-0 #261
Dallas, TX 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro

COUNSEL FOR PLAINTIFF

*/s/ Derek McKee*
An Attorney for Defendant