**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOE M. FULBRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:20-cv-2392** |
| | ) | |
| **UNION PACIFIC RAILROAD COMPANY** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**APPENDIX IN SUPPORT OF UNION PACIFIC's RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**


| Page(s) | Description |
|---|---|
| 5-20 | Deposition of Joe Fulbright (excerpts) |
| 21-27 | Deposition of Dr. John Charbonneau (excerpts) |
| 28-40 | Deposition of Terry Neal (excerpts) |
| 41-46 | Deposition of Jason Ensign (excerpts) |
| 47-48 | Declaration of Dr. John Charbonneau |
| 49-57 | Fulbright's HR Report (UPFULBRIGHT000001-9) |
| 58-61 | Fulbright's Employment Application (UPFULBRIGHT000661-665) |
| 62-67 | Senior Communication Technician Job Description (UPFULBRIGHT000681-686) |
| 68-71, 72-73 | Agreement between Union Pacific- IBEW (excerpts) (UPFULBRIGHT1503-1506, 1512-1513) |
| 74-76 | Fulbright's 1998 Termination Letter (UPFULBRIGHT000449-501) |

| Page(s) | Description |
|---|---|
| 77-79 | Nat'l Mediation Board 2000 Reinstatement Award (UPFULBRIGHT000344-346) |
| 80 | November 2014 Missed Call (UPFULBRIGHT000946) |
| 81-82 | January 2015 Dispatch Record (UPFULBRIGHT000948-949) |
| 83 | January 2015 Formal Conference (UPFULBRIGHT000951) |
| 84-86, 87, 88-89 | General Code of Operating Rules (excerpts) (UPFULBRIGHT001260-62, 1271, 1275-76) |
| 90-108 | Medical Comments (UPFULBRIGHT000250-268) |
| 109-117 | April 2014 Return to Work Documents (UPFULBRIGHT000128-136) |
| 118, 119, 120 | August 2014 Return to Work Documents (excerpts) (UPFULBRIGHT000167, 169, 171) |
| 121 | November 2014 Chart Note (UPFULBRIGHT002128) |
| 122-123 | Neal Manager Referral (UPFULBRIGHT000182-183) |
| 124-125, 126-127 | HMS Records Requests, January - February 2015 (UPFULBRIGHT000185-186, 190-191) |
| 128 | March 2015 Fulbright Medical Authorization (UPFULBRIGHT002122) |
| 129 | May 2015 Fulbright Statement (UPFULBRIGHT000227) |
| 130 | May 2015 Letter from Texas Medical Diagnostics to Kaner (UPFULBRIGHT002102) |
| 131-132 | HMS Records Request, June 2015 UPFULBRIGHT000230-231) |
| 133-136 | June 2015 Restriction Review Form (UPFULBRIGHT000239-242) |

| Page(s) | Description |
|---|---|
| 137-139 | June 2015 BRS Appeal (UPFULBRIGHT000271-273) |
| 140-142 | 2018 Nat'l Railroad Adjustment Board, Decision on Medical Claim (UPFULBRIGHT000493-495) |
| 143-176 | 1999 Implementing Agreement between UP, BRS, IBEW (JF402-435) |
| 177 | May 2012 Formal Conference (JF9) |
| 178-188 | Texas Medical Diagnostics - Office Notes (JF436-446) |
| 189-208, 209-210, 211-233 | Fulbright Job Search Documents (JF195-214, 226-227, 448-470) |
| 234-243 | BNSF Telecommunications Job Postings, 9/17/2021 |
| 244-248 | BNSF Tennessee Job Postings, 9/17/2021 |

Respectfully submitted this 17th day of September, 2021.

/s/ Heather M. Miller
Heather M. Miller (TX Bar No. 24062897)
Constangy, Brooks, Smith & Prophete, LLP
2600 Grand Boulevard, Suite 750
Kansas City, Missouri 64108
Telephone: 816-329-5917
Facsimile: 816-472-6401
hmiller@constangy.com

Robert L. Ortbals, Jr. (MO Bar No. 56540)*
Constangy, Brooks, Smith & Prophete, LLP
7733 Forsyth Boulevard, Suite 1325
St. Louis, Missouri 63105
Telephone: 314-338-3740
Facsimile: 314-727-1978
rortbals@constangy.com

ATTORNEYS FOR DEFENDANT UNION PACIFIC RAILROAD COMPANY

* Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

I certify that on the 17th day of September, 2021, I electronically transmitted the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to all counsel of record.

/s/ Heather M. Miller
An Attorney for Defendant

# In the Matter Of:

FULBRIGHT vs UNION PACIFIC RAILROAD

3:20-cv-2392

---

## JOE M. FULBRIGHT

*April 15, 2021*

---

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE M. FULBRIGHT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| V. | ) | Civil Action No. |
| | ) | 3:20-cv-2392 |
| | ) | |
| UNION PACIFIC RAILROAD | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * *

REPORTER'S CERTIFICATION
VIDEOCONFERENCE AND VIDEO DEPOSITION OF
JOE FULBRIGHT
APRIL 15, 2021
(Reported Remotely)

* * * * * * * * * * * * * * * * * * *

VIDEOCONFERENCE AND VIDEO DEPOSITION OF JOE FULBRIGHT, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and -numbered cause on the 15th of April, 2021, at 9:04 a.m., before Brandy Cooper, CSR in and for the State of Texas, reported by machine shorthand. The witness is located at his residence in Collinwood, Tennessee,

pursuant to the Federal Rules of Civil Procedure, the First Emergency Order Regarding the COVID-19 State of Disaster, and the provisions stated on the record or attached hereto.

A P P E A R A N C E S

FOR THE PLAINTIFF:

DONALD E. ULOTH (Via Videoconference)
Law Office of Donald E. Uloth
18208 Preston Road, Suite D-9 #261
Dallas, Texas 75252
(214) 989-4396
don.uloth@uloth.pro

FOR THE DEFENDANT:

ROBERT L. ORTBALS, JR. (Via Videoconference)
DEREK MCKEE (Via Videoconference)
Constangy, Brooks, Smith & Prophete, LLP
7733 Forsyth Boulevard, Suite 1325
St. Louis, Missouri 63105
(314) 338-3740
rortbals@constangy.com

ALSO PRESENT VIA VIDEOCONFERENCE:

RANDY WRIGHT - Videographer
SARA LITTLETON - Paralegal with Defendant

Q. What was your reason for writing down handwritten notes?
A. To make sure I remembered, you know, points of contention, inaccuracies I thought were in the meeting.
Q. Any other reason you took the handwritten notes at that time?
A. No. Just to be sure I could remember certain points about the meeting.
Q. When did you write up your handwritten notes?
A. Probably a day or two after the meeting.
Q. And you had not been removed from service at that time; is that right?
A. That's correct.
Q. Were you contemplating any legal action against Union Pacific at that time?
A. No.
Q. Is Chris Ozuna your son-in-law?
A. Yes.
Q. How is that the case? I believe you testified earlier you have no children.
A. Well, he's not my child. I didn't get married until I was, you know, 52 years old -- 53 or -- 50 years old, somewhere in there. I've never had children.
Q. Then how is he your son-in-law?
A. Well, I don't consider a son-in-law one of my

Q. Okay.
A. They wanted to do a sleep study was all I remembered from what they told me, which was pretty simple. I didn't need to know everything it entailed.
Q. And you didn't go through with this plan; is that correct?
A. Yeah. I didn't have the money.
Q. How much was it going to cost?
A. $600.
Q. And did you discuss that with Union Pacific?
A. Yes. I think Dr. Charbonneau, I mentioned to him that I didn't have the money. There was no way I'm going to put that out of pocket. I had to pay for that appointment. Was outraged. They had cut my insurance off and I didn't have the money. And they wanted it for --
Q. What did Dr. Charbonneau say in response?
A. I think he pretty much sidestepped the question -- or the statement or just ignored it. I...
Q. And that's a recorded conversation; is that right?
A. Yes.
Q. Did you ever turn in any of your records from Texas Medical Diagnostics to Union Pacific?
A. Turn in my records? I authorized the Union

Pacific to have the records. I didn't turn in any. I think they were sent directly to the Union Pacific from Texas Diagnostics, but I'm not sure.

Q. So you didn't turn any records from Texas Diagnostics to Union Pacific; is that right?

A. I don't think so. I think they were sent directly from them to the Union Pacific.

Q. And you don't know one way or another whether or not Union Pacific would have received those records from them?

A. No. I could verify that. They had the release forms, though.

Q. So then what was going to be the outcome of you not going through the sleep evaluation?

A. Well, I couldn't tell you. Mr. Charbonneau kind of left off like -- he issued some basically work restrictions where I couldn't work there anymore, and I don't know if he did any follow-up or -- he didn't contact me about rescheduling anything or paying for the doctors, nothing.

Q. Did you have an understanding that Union Pacific couldn't complete its Fit-For-Duty evaluation without the information it was requesting?

A. No. They did complete their evaluation without the additional information being given.

Q. My question is just that this is a letter dated June 18th, 2015 to you; is that right, sir?
A. Well, that's what it says it is, yes.
Q. And you don't have a recollection one way or another whether you received this letter?
A. No. I was talking directly to the Medical Department by this time.
Q. How were you notified that you were being issued medical restrictions?
A. By telephone. There was a conference with -- with the Dr. Charbonneau and the nurse online, and that was the first of the restrictions. They may have sent a letter later that, you know, said the same thing, but that's how I was notified.
Q. And you recorded that conversation?
A. Yes.
Q. And then I've just shared what's been marked Deposition Exhibit 30. Do you recall receiving Exhibit 30?
(Exhibit No. 30 was marked.)
A. I think I have seen this.
Q. (BY MR. ORTBALS) Did you contact anybody in Union Pacific's Disability Management Department about going through vocational rehabilitation?
A. I contacted somebody -- or was in contact with

somebody that told me that they were in charge of trying to find jobs for people within Union Pacific or something, and he told me they didn't have anything at the time. And I wasn't too interested in that because I would have had to give up my rights to litigate to even get a job like that.

Q. What do you mean by that?

A. Well, my contention is that, you know, I should have been left on my job. And if they found me a job in Omaha, I'd have to move away from my mom, who I was in charge of taking care of. I couldn't do that. That was one of the things he mentioned specifically, A lot of times, we move people to these big locations, like Omaha.

And you -- I had talked to other people that had done that that had been injured and went through these people, and they make them sign agreements that they give up their rights to their old job and to litigate, and I'm not going to do that. But he didn't have anything anyway, so it never became an issue.

Q. How many times did you have a conversation with this person about other jobs within Union Pacific?

A. I think one time or -- I think one conversation.

Q. Was that a conversation that you recorded?

diabetes, all kinds of problems. It would destroy you if it just was left untreated.

Q. When's the last time you've communicated with Union Pacific about your employment there?

A. I don't know.

Q. Have you had any communication with Union Pacific about your employment since you had the call with the person who told you that there weren't any jobs open?

A. No, not that I remember.

Q. Are you currently employed?

A. No.

Q. Have you held any jobs since you last performed work for Union Pacific?

A. No.

Q. After you last performed work at Union Pacific did you begin looking for another job right away?

A. Not right away, no.

Q. Why not?

A. I was organizing all my material and getting ready to present it to a lawyer. I spent three months doing that.

Q. And then after that three-month period, did you start looking for another job?

A. Yes.

Q. Does that insurance come through your -- through RRB or through just your medical plan through the Union?

A. It's the continuation of the medical insurance I had with the Union Pacific Railroad, which is a trust fund that we pay into the whole time we work out there. And it was to be continued two years on me and one year on my wife, the same insurance I had when I was working.

Q. When did that get reinstated?

A. It was about three or four weeks, I think, after my appointment with the medical diagnostics group -- sleep diagnostics group. The nurse said it had been cut off. That's why I couldn't pay these people. And she said that was mysterious that it got cut off. It wasn't supposed to be cut off. And so she did something, and two or three weeks later, it was working again.

Q. Which nurse are you referring to?

A. It may have been the nurse that I had been talking to -- I forget her name. I get all these people's names, but it may have been the nurse that -- you know, I've been scheduling all this doctor stuff that was approved.

Q. Was it a Union Pacific nurse?

A. Yes, yes.

Q. So you think she helped get your insurance straightened out?
A. Yes.
Q. Well, once that had been reinstated, why didn't you go back to the Texas Medical Diagnostics now that you had insurance coverage?
A. Charbonneau had finished dealing with me. He had made an evaluation based on what he had. He made it clear he didn't need anything else.
Q. Did you see if, now being able to provide a sleep medicine evaluation, would have changed the outcome?
A. Well, no. The nurse knew. I mean, it was up to her. I'm sure I mentioned it to her, that, you know, If you can get my insurance going, that can all happen, or whatever. But this is months after he had made his -- you know, his final determination.
Q. And you didn't follow up to see if you could provide that information now and have your case reevaluated?
A. No. Within the time that my insurance was going, I was working pretty hot and heavy on my legal case and didn't even -- I didn't spend any time anymore on my medical issue.
Q. Have you received any job offers since you last

MR. ORTBALS: Hello.
THE REPORTER: Off the record?
MR. ULOTH: Yeah, let's go off the record.
THE REPORTER: We are off the record.
(Break was taken from 3:21 p.m. to 3:33 p.m.)
THE VIDEOGRAPHER: We are back on the video record. The time is 3:33 p.m.
Q. (BY MR. ORTBALS) Okay. We're back on the record after a short break. Mr. Fulbright, I'll remind you you're still under oath.
And I apologize if I missed this in your last answer before my phone cut out, but why did you turn down the job offers that you had turned down?
A. Well, they were like seven, eight-dollar-an-hour jobs, and as soon as I filled out a W-2, I'd have lost my insurance. They also probably would have put my Railroad retirement into Social Security. I would have lost as much as a third of that. Would not have been in my interest to take a job like that.
Q. And then you mentioned a period of time where you were unable to work because of cancer; is that right?
A. Yes.
Q. What time period was that?

A. I believe that was 2016, about the middle part of 2016.
Q. And when were you cleared to work again?
A. I was never cleared because I couldn't finish the treatment. My insurance ran out after two years. And I wasn't really cleared to work. I just had to wait until my back healed, and that took about -- that took about a year.
Q. Did you have to have surgery to remove the tumor?
A. Yes.
Q. Who treated you for the cancer?
A. There were two doctors. There was a dermatologist in North Richland Hills. I don't remember his name. And then there was the doctor in Dallas. Two surgeries done, one at each doctor. And the doctor in Dallas, I can just almost remember his name, but I can't -- I can't recall his name right now.
Q. Do you have records from those two doctors?
A. Yes.
Q. Since your back has been healed, have you been looking for work again?
A. Yes. I work -- looked for work for, I think, a brief period of time. And I got a hernia in my stomach that -- where I couldn't work. And I needed surgery for

that, and I had that done here, I think, last year. It finally got so bad I couldn't walk, so I had to have that done.

Q. What period of time were you out of commission because of the hernia?

A. Oh, probably seven or eight months, just guessing. I'd have to go back and look at the records.

Q. Who was it that treated you for the hernia?

A. A doctor in North Alabama Medical Center. That was in Florence, Alabama -- or Muscle Shoals, Alabama. It's kind of the same town. And I don't recall the name of that doctor either. I've had quite a few doctors.

Q. Do you have records from that treatment?

A. Yes.

Q. Are you still unable to work, or are you healed?

A. As of the last few months, I'm able to work. And I've done some checking on jobs in the area, but they have to be Railroad jobs because I'll lose my Railroad retirement, a big chunk of it, if I severed my connection with the Railroad.

Q. So you're only looking for Railroad jobs?

A. Yes.

Q. Are you only looking from where you're at in Tennessee, or are you looking more broadly?

A. From where I'm at here in Tennessee.
Q. What are you doing to look for the Railroad jobs?
A. Well, those are all done online, so I just -- they actually post the jobs that you're qualified for when you punch in a certain amount of information. I think there's four here in Tennessee that I keep looking at.
Q. And what do you keep looking at?
A. They post the jobs that are available on their website.
Q. Have you applied for any of them?
A. Well, no, not the ones I'm not qualified for. They haven't had any since I've been here that I'm qualified for. They list the qualifications on the job. They're not electronics jobs for a technician.
Q. Are you willing to relocate for a Railroad job?
A. Not this close to my retirement. My Railroad retirement will be here -- in less than two years, I'll have Railroad retirement, and I'll need that to start paying my wife's medical bills. If I move away from here, I'd have to sell the house and she would n't have any place to stay in an emergency once she's through taking care of her parents.
Q. Do you have any income coming in from any other

Legal Solutions

# Transcript of the Testimony of **Dr. John Charbonneau**

**Date:** March 25, 2021

**Case:** Joe Fulbright v. Union Pacific Railroad Company

Legal Solutions Court Reporting
Reporter: Christy Fagan
Phone: (866) 830-1717
Fax: (866) 651-4292
**Schedule Next Depo:**
**http://legalsolutionscourtreporting.com/contact_us**
Internet: www.LegalSolutionsCourtReporting.com
Reporter-owned and operated firm since 2004
Christy Fagan, CSR, CRR, CMR, RMR, TMR, RPR - DFW reporter since 1992

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOE M. FULBRIGHT, )
Plaintiff, )
)
vs. ) Civil Action
) No. 3:20-cv-02392-BK
)
UNION PACIFIC RAILROAD COMPANY,)
Defendant. )

* * * * * * * * * * *

ORAL VIDEOTAPED DEPOSITION

DR. JOHN CHARBONNEAU

MARCH 25, 2021

(REPORTED REMOTELY)

* * * * * * * * * * *

ORAL VIDEOTAPED DEPOSITION OF DR. JOHN CHARBONNEAU, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on March 25, 2021, from 9:29 a.m. to 1:35 p.m., before Christy Fagan, CSR, CRR, RMR, TMR, RPR, CLR in and for the State of Texas, reported remotely by computerized stenotype machine, considered being taken at the witness's location of his residence located in Greeley, Colorado, Weld County, during the COVID-19 State of Disaster, pursuant to the Federal Rules of Civil Procedure.

APPEARANCES

FOR THE PLAINTIFF (VIA VIDEOCONFERENCE):

Mr. Donald E. Uloth
Law Office of Donald E. Uloth
18208 Preston Road
Suite D-9 #261
Dallas, Texas 75252
(214) 989-4396
don.uloth@uloth.pro

FOR THE DEFENDANT (VIA VIDEOCONFERENCE):

Mr. Robert Ortbals, Jr.
Constangy, Brooks, Smith & Prophete
7733 Forsyth Boulevard
Suite 1325
St. Louis, Missouri 63105
(314) 338-3740
(314) 338-7930 Fax
rortbals@constangy.com

ALSO PRESENT (VIA VIDEOCONFERENCE):

Mr. Joe Fulbright

A I have -- excuse me. I have what I have documented in this June 29th note.

Q And would you agree with me that he was unable to accomplish what you had asked him to do and he set out to do?

A I would agree -- I don't know what that initial interaction was between Mr. Fulbright and whoever he spoke to at the sleep medicine provider's office. I just -- I wasn't part of that discussion, so I don't know what happened.

Q Why did you proceed with the decision to impose work restrictions rather than trying to accomplish what you had set out to accomplish?

A Because he had put a stop to the plan of getting the evaluation -- excuse me, the sleep medicine evaluation done. We weren't going to go any farther because we needed medical information that, for whatever reason, wasn't going to happen. So at that point it was appropriate to make the fitness-for-duty determination.

Q And you made that determination without all of the best available facts and information, correct?

A What best available facts and information are you talking about, sir?

Q The results of the sleep medicine evaluation that you thought was important.

A We made it on the basis of the then available medical information.

Q Which did not include the results of a sleep medicine evaluation, right?

A That's right.

Q And Mr. Fulbright told you he couldn't afford to pay for that sleep medicine evaluation, correct?

A That's what this note says, yes.

Q And Union Pacific never offered to cover the cost of that evaluation, correct?

A As I said before, I don't know. I would not have the authority to authorize that payment.

Q Why did you decide to impose sudden incapacitation restrictions?

A We do that when there is lack of clarity about the employee's ability to stay awake and alert and upright. And that may sound kind of off-the-cuff, but it's -- it's not. It's -- it's about ability, again, to be awake and alert and fully in control of your senses and things like that at work.

So, in that sense, if somebody had serious cardiovascular disease that might lead to a syncopal episode, they would get sudden incapacitation restrictions. If someone had a seizure disorder, they would get sudden incapacitation restriction. If someone

had, like Mr. Fulbright, a serious underlying condition, he used the term life-threatening condition, and medicine that precludes his working but we don't know the duration of the effects of that medicine, then we don't know if he's always going to be awake and alert and in full control of his senses at work. So --

Q Well --

A -- those are three different categories of medical condition that end up with the same grouping of restrictions.

Q What were the three?

A I think I just used seizure disorder or bad cardiovascular disease or a serious sleep problem such as in this case. I was just using those -- the other two as examples.

Q Joe didn't have a cardiovascular disorder, did he?

A I don't believe so, no.

Q He didn't have a seizure disorder, did she?

A Not to my knowledge.

Q What was his serious sleep problem?

A Well, I mean, he called it a life-threatening sleep condition. Those are his words, not ours. And there are documents here that talk about how, you know, after one or two days of work he's just worn out, can't

sleep, and has to take his medication. And when he does, he couldn't possibly return -- you know, work. And I'm not saying he should have, but it was he who talked about the severity of his underlying condition and, secondly, the effects of the medication that he took for that underlying condition. So --

Q And he told you that the medication treated his sleep disorder, right?

A He told us that he took that medication for it and that in his opinion it worked well to get him to sleep. There's no way we could know how long that medication lasted. We just know about the what we call soporific or the sleep-causing effects of the medication. And so, as a result, you know, when it comes to us making that certification that he was fit for duty, we didn't feel that we had the body of information that could allow us to say that with certainty.

MR. ULOTH: Christy, can you read that last question? I don't even remember what I asked.

(Requested text read back.)

Q Dr. Charbonneau, when you talked to Mr. Fulbright at the end of June 2015, he explained to you that the Trazodone was effective and helped his sleep condition, correct?

Legal Solutions

# Transcript of the Testimony of **Terry Neal**

**Date:** April 27, 2021

**Case:** Fulbright v Union Pacific Railroad Company

Legal Solutions Court Reporting
Reporter: Stephanie M. Harper
Phone: (866) 830-1717
Fax: (866) 651-4292
**Schedule Next Depo:**
**http://legalsolutionscourtreporting.com/contact_us**
Internet: www.LegalSolutionsCourtReporting.com
Reporter-owned and operated firm since 2004
Christy Fagan, CSR, CRR, CMR, RMR, TMR, RPR - DFW reporter since 1992

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE M. FULBRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. |
| UNION PACIFIC | ) | 3:20-cv-02392-BK |
| RAILROAD COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

****************************************

ORAL AND VIDEOTAPED DEPOSITION OF

TERRY D. NEAL

APRIL 28, 2021

(Reported Remotely)

****************************************

ORAL AND VIDEOTAPED DEPOSITION of TERRY D. NEAL, produced as a witness at the instance of the PLAINTIFF, and duly sworn, was taken in the above-styled and numbered cause on APRIL 28, 2021, from 9:27 a.m. to 12:08 p.m., before Stephanie M. Harper, RPR, CSR in and for the State of Texas, recorded by machine shorthand, at 520 Samuels Avenue, Fort Worth, Texas, pursuant to the Federal Rules of Civil Procedure, the First Emergency Order Regarding the COVID-19 State of Disaster, and the provisions stated on the record or attached hereto; that the deposition shall be read and signed before any notary public.

A P P E A R A N C E S

FOR JOE M. FULBRIGHT:

MR. DONALD E. ULOTH [via Zoom videoconference]
DONALD E. ULOTH
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75252-6011
214-725-0260
don.uloth@uloth.pro

FOR UNION PACIFIC RAILROAD COMPANY:

MR. ROBERT L. ORTBALS JR.
[via Zoom videoconference]
CONSTANGY BROOKS, SMITH & PROPHETE LLP
680 Craig Road
Creve Coeur, Missouri 63105
314.925.7270
rortbals@constangy.com

- AND -

MR. DEREK McKEE [via Zoom videoconference]
CONSTANGY BROOKS SMITH & PROPHETE LLP
1201 Elm Street, Suite 2550
Dallas, Texas 75270
214-646-8982
dmckee@constangy.com

REPORTED BY:

STEPHANIE M. HARPER, RPR, CSR
[via Zoom videoconference]
courtreporter@mac.com

Q. (BY MR. ULOTH) Mr. Neal, at some point did Joe Fulbright tell you that he was going to be taking a prescription medication?

A. Yes.

Q. Do you recall when that conversation was?

A. The best of my recollection was 2015.

Q. Okay. You don't recall a discussion six years earlier that he would be starting to take a prescription medication?

A. I don't remember that conversation.

Q. Do you remember if there were safety team meetings where you and he were both present where it was discussed that Mr. Fulbright would be taking a prescription medication?

A. No.

Q. When you first learned that Mr. Fulbright would be taking a prescription medication, do you recall if you told him to do anything?

A. That we needed to do a medical evaluation, a fit-for-duty and medical evaluation on the -- on the medicine.

Q. So before the meeting where you made the decision to refer him for an evaluation, you're saying you were not aware that he took a prescription medication?

A. The best of my recollection, that was when I -- when I was told that he was taking the medication, that we needed a fit-for-duty and the medical evaluation.

Q. Okay. I'm going to show you a couple of other documents that I didn't mark for the same reason.

All right. I'll go down just to show you guys this Bates number to confirm this is JF 191. And my first question for you, Mr. Neal, is just whether you've ever seen this document before.

A. No.

Q. Can I ask you to take a minute to read it to yourself, and then I'm going to ask you some questions about some of the statements in here. Okay?

A. Sure.

Q. Can you see this okay?

A. Yes.

Q. Let me know when you're finished, and take your time.

A. (Reviewing document.) Okay. I finished. Thank you.

Q. Having read this, does it trigger any recollection about a meeting at the end of 2009

similar to what Mr. Ozuna describes in his first sentence in this document?

A. We did have an area, a time frame that we did reorganize. I don't recall the particulars here. I don't remember the 2009 meeting.

Q. Does this have anything to do with the Lynn Andrews version that you testified about a few minutes ago?

A. It's possible.

Q. Was this -- scratch that.

When the Lynn Andrews version was going into effect, did you have a meeting with the technicians?

A. Yes. Anytime there was a structural change, I would have a meeting with the technicians.

Q. Okay. Do you remember explaining to technicians that there was going to be a position called restore senior electronic technician?

A. No. I don't remember the conversation. I'm sure I did, but I don't remember the conversation.

Q. Was there a position that y'all were going to refer to as restore senior electronic technician?

A. Yes.

Q. And do you recall if that was going to be

a bid position?
A. Yes.
Q. It was going to be a bid position?
A. Yes.
Q. And do you recall whether it was going to be paid an extra dollar an hour?
A. That's what I remember.
Q. That it would get more money?
A. Yes.
Q. And then do you recall if the rest -- if the restore senior electronic technicians were going to have a different line of reporting than the other technicians?
A. Can you please repeat?
Q. I'm focusing on the last sentence of the top paragraph just trying to figure out if -- if what Mr. Ozuna is saying here is consistent with what you recall, that if you were --
A. Yes, sir.
Q. -- if you were --
A. Yes, sir.
Q. So where he says if you were a restore tech, you would report to Mr. Neal directly, do you remember that being correct?
A. Yes.

Q. And that if you were an install tech, you would report to project supervisor Steve Hale. That's correct?
A. Yes.
Q. And then after the bidding, is it correct that Jason Norgan and Ed Hines were going to be the restore techs?
A. I don't remember. I don't remember who got the jobs.
Q. Would that be the ROS personnel as that term was used in the document we were looking at a minute ago?
A. Yes. They would be -- I don't know if that refers to the previous document, but that would refer to these two individuals being restore technicians.
Q. Okay. And in the second paragraph near the bottom, he uses the term "weekend rotation."
Is that the same rotation that you were describing before we took our break?
A. Yes.
Q. And in the second paragraph, that first sentence, it talks about install technicians were not responsible for being on call. Do you see that?
A. Yes.

Q. Do you agree with that statement?
A. Under a normal circumstance that -- that was not their -- they weren't going to be on a call list and that would not be their primary duty. But as I've stated before, all employees in the telecom department are subject to call 24/7, seven days a week on emergency restoration.
Q. So you're saying that under normal circumstances, a restoration-of-service call would not have gone to the people who were classified as install technicians?
A. On a normal circumstance, yes.
Q. And then in the last paragraph, he talks about Mr. Fulbright and sleeping medication. And I'm wondering if this, reading this brings back any memories of any prior discussion before 2015 about Fulbright and sleeping medication.
A. No.
Q. Do you believe that it could have happened and you just aren't recalling it here now in 2021?
A. I don't remember. I can't speculate on something I don't remember.
Q. Fair enough.
Let's go to -- there's another --
A. There is -- excuse me. I'm sorry.

Q. And so by writing up this document and signing it and giving it to Fulbright, it was -- it was a disciplinary measure; is that correct?

A. Not necessarily. It could have been, but it could have not been depending on the circumstance.

Q. And as the circumstances unfolded, was it disciplinary or was it not disciplinary?

A. It was not disciplinary. And in that meeting, I had Mr. Fulbright's union representative with us. I had no one representing me or as my witness, so it was just the three of us -- the three of us sitting in the room.

And after it came to light and I said this is not a disciplinary action at the time, I talked with the union representative and Joe Fulbright and said, you know, we probably need to go to medical on this and I will, you know, fill out the paperwork on my end, but Joe needs to contact medical.

And I said I don't need anybody getting hurt or, you know, here, so I said Joe, just go home. And I specifically -- I remember saying I will pay you while the medical does their initial evaluation. Once I get the initial evaluation back

from medical, then you do what you have to do with your, you know -- oh, I can't remember the term. Where you get paid for not working. Disability. But I will pay you. I said this is not a discipline. You can go home, take your keys, take your vehicle, go home, and let's get medical started on this.

And both agreed at that time. Even the union rep said he never heard of anybody being able to -- to go home and get paid while medical evaluates the issue. So it turned out not to be any type of discipline handed out. It just -- we really needed to get to the bottom of what was going on and what -- how this medication affected Joe Fulbright.

Q. Are you saying that you told Mr. Fulbright to go home and not report to work the next day?

A. Yes.

Q. And --

A. With pay.

Q. How were you going to arrange it so that it was with pay?

A. I put his time in for him.

Q. What -- what would I need to look at to see to verify that in terms of documentation that I could ask the railroad to turn over for us?

Q. To the right of the cursor --
A. Oh, right there. Okay. Let me read, please. (Reviewing document.)
Yes. I wrote those.
Q. Look at No. 4. It begins "Please provide," and you wrote -- let me read this first sentence. "I am worried that the medicine could impair Mr. Fulbright further into his normal work shift."
That's what you wrote, correct?
A. Yes.
Q. Why were you worried that the medicine could impair Mr. Fulbright into his normal work shift?
A. Well, during the conversation, Mr. Fulbright told me that he takes the sleep medication and it works for eight hours. Okay. And then he can drive -- he can get into his vehicle and drive. He stated that he could not drive his vehicle during, when he was taking the medicine, but after eight hours the medicine wears off and he could drive his vehicle and come to work and he was fine.
I'm not a doctor. I don't know how long this medication lasts. I don't know the

effects of it lingering in his body. I at that point felt that he needed to go to medical and have somebody evaluate what he's taking and how it affects him.

Q. Had you observed him impaired during his normal work shift?

A. No.

Q. Had anybody reported to you that he might have been impaired during his normal work shift?

A. No.

Q. So the referral and the statement "I am worried" was, as you explained, because you're not a doctor and you're not an expert --

A. That is correct.

Q. -- is that right?

Okay. The next sentence "Is the medication UPRR approved." Did you know what medication he was taking?

A. I -- no. I'm sure Mr. Fulbright told me what the medication was, but to this day I could not give you what he was taking. I do not know what it is.

Q. Okay. And then I flipped forward to the second page of this deposition exhibit, and there's a box where it says "recap." And are those all

Legal Solutions

Transcript of the Testimony of **Jason Ensign**

**Date:** June 29, 2021

**Case:** Joe Fulbright v. Union Pacific Railroad Company

Legal Solutions Court Reporting
Reporter: Jodi Goodman
Phone: (866) 830-1717
Fax: (866) 651-4292
**Schedule Next Depo:**
**http://legalsolutionscourtreporting.com/contact_us**
Internet: www.LegalSolutionsCourtReporting.com
Reporter-owned and operated firm since 2004
Christy Fagan, CSR, CRR, CMR, RMR, TMR, RPR - DFW reporter since 1992

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

JOE M. FULBRIGHT, )
)
Plaintiff, )
)
V. ) Civil Action No.
) 3:20-CV-02392-BK
UNION PACIFIC RAILROAD )
COMPANY, )
)
Defendant. )

-------------------------------
ORAL VIDEOCONFERENCE DEPOSITION
JASON BRADLEY ENSIGN
JULY 1, 2021
(REPORTED REMOTELY)
-------------------------------

ORAL VIDEOCONFERENCE DEPOSITION OF JASON BRADLEY ENSIGN, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on July 1, 2021, from 12:58 p.m. to 1:44 p.m., before Jodi Goodman, CSR, RPR, CRR, CRC, in and for the State of Texas, reported remotely by computerized stenotype machine, considered being taken at the witness's location in Melbourne, Florida, 32940, during the COVID-19 State of Disaster, pursuant to the Federal Rules of Civil Procedure.

A P P E A R A N C E S

FOR THE PLAINTIFF (VIA VIDEOCONFERENCE):
Donald E. Uloth
Law Office of Donald E. Uloth
18208 Preston Road, Ste. D-9 #261
Dallas, Texas 75252
(214) 989-4396
don.uloth@uloth.pro

FOR THE DEFENDANT (VIA VIDEOCONFERENCE):
Heather M. Miller
Constangy, Brooks, Smith & Prophete
2600 Grand Boulevard, Ste. 750
Kansas City, Missouri 64108
(816) 329-5917
hmiller@constangy.com

P R O C E E D I N G S

JASON BRADLEY ENSIGN,

Having been first duly sworn, testified as follows:

EXAMINATION

BY MR. ULOTH:

Q. Would you just tell us your full name, please.

A. Jason Bradley Ensign.

Q. And, Mr. Ensign, it's my understanding you worked with Joe Fulbright at Union Pacific at some time. Correct?

A. Yes, sir.

Q. Well, before I get into that, would you give me a brief rundown of your professional work life, if you will? What kind of jobs have you held since getting out of school?

A. Okay. So I separated from the military in 2001. After that I immediately started working for Motorola as a field service engineer maintaining public safety municipalities, so police department, fire department. I was then hired locally by Union Pacific Railroad for their Davidson yard location there in Fort Worth, Texas, which is where I was living at the time, as an electronic tech -- senior electronic tech. I did that for eight and a half years. I was -- then finished up my degree going to school at night and started

working for BNSF Railway, so that's the other large Class I railroad in the United States. I was not in agreement with them. I was a supervisor, part of management, and I worked with them for about another seven years and then I was recruited by Canadian National Railway to take over their operations center in Chicago, Illinois.

So I relocated to Chicago, Illinois, worked with them for two years, got their PTC up and running, Positive Train Control was the technology that I was working with, and unfortunately myself and 700 other people were laid off in the first round of layoffs and so I relocated to a warmer climate to beautiful Melbourne, Florida. There I started off as a lead system engineer designing electronics for the railroad industry. So still involved in the railroad industry and I recently got promoted. I'm the senior program manager over the big commuter project here in Florida, All Aboard Florida. It's a high speed rail project.

Q. Sounds interesting.

A. It can be.

Q. Thanks for that summary. Let me focus you back on when you went to work at Union Pacific. Do you recall approximately what year or when you started at Union Pacific?

A. Yes, sir. It would have been 2003 to almost 2011, I believe.

Q. Okay. And you mentioned senior electronic or senior communication technician. Which was it?

A. Yes. Senior electronic technician.

Q. Was that your position the whole time you worked there?

A. Yes, sir.

Q. And was Joe Fulbright one of the other senior electronic technicians?

A. Yes, sir.

Q. Did you work -- work with him or was he just somewhere -- you know, somewhere else on the Davidson yard?

A. No, we worked together daily.

Q. Okay. Can you give me an idea, just a simple summary, the way you would explain it to somebody who doesn't know anything about railroads or technology, what was your job?

A. So maintaining any kind of -- it expanded during our time there because of the advancements in technology, but it -- anything communication related, being a network router, or a lot of our work had to deal with RF controlled signalling devices called CDC, so we maintained those. We also maintained dispatcher radios.

**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **JOE M. FULBRIGHT,** Plaintiff, vs. **UNION PACIFIC RAILROAD COMPANY,** Defendant. | **Case No. 3:20-cv-2392** |

**DECLARATION OF DR. JOHN CHARBONNEAU**

I, Dr. John Charbonneau, declare as follows:

1. I am over eighteen years of age, am fully competent to make this statement, and have personal knowledge of the facts in this declaration.

2. I am the Associate Medical Director for Union Pacific Railroad Company. I am a board-certified Occupational Medicine physician. In my role as the Associate Medical Director, I am a self-employed contractor working with Union Pacific's Health and Medical Services Department. I am responsible for conducting and overseeing fitness-for-duty (FFD) evaluations to ensure that Union Pacific employees are medically and functionally capable of safely working in the railroad environment. I also work to ensure Union Pacific remains in compliance with various health, medical, and safety regulatory standards.

3. The purpose of Union Pacific's medical FFD evaluation is to determine if an individual has a health condition or functional impairment that poses a significant risk to the health or safety of the individual or others, or prevents the individual from safely performing the essential functions of the job. The FFD focuses on the safety risks in the railroad environment associated with the employee's specific health condition in light of the employee's essential job functions. Union Pacific works with the employee to gather medical records relevant to the

7739831v.1

condition that may have impacted or potentially impacts his or her ability to safely perform the job. Union Pacific's Health and Medical Services Department sometimes arranges for independent medical providers to review the employee's relevant medical records and assess the medical and functional significance of the employee's condition as related to the employee's essential job functions.

4. Supervisors and managers have the ability to refer an employee for a medical FFD evaluation "based on credible information which raises a concern about the employee's ability to safely perform his/her job duties."

5. In the case of a manager referral, when a concern has been raised by a manager, usually a layperson who is not medically trained, no assumptions are made that there is a medical cause for the observed behaviors or that the employee is unable to safely perform his or her job. In addition to the documented manager referral form, we obtain information directly from the employee and the manager. It is standard practice to request the last one to two years of medical records and information from the employee. From that point, the FFD evaluation continues until the FFD determination can be made.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge and belief.

Dated 9/10/2021

Dr. John Charbonneau

7739831v.1

CONFIDENTIAL

# HR Reporting System

**Employee Personal Data**
**Name: JOE M FULBRIGHT**
**Empl Id: 0251592**

| | | | |
|---|---|---|---|
| **Addr Eff Dt:** | 06/28/2012 | **Death Date:** | |
| **Home Addr:** | 807 OAKWOOD DRIVE - EULESS TX 76040-5260 | | |
| **Mail Addr:** | 807 OAKWOOD DRIVE - EULESS TX 76040-5260 | | |
| **Home Phone:** | (817) 301-3981 | **Cell Phone:** | (817) 733-0427 |
| **Marital Status:** | | | |
| **Original Hire Dt:** | 03/25/1985 | **Last Hire Dt:** | 03/25/1985 |
| **Adj Svc Dt:** | 03/25/1985 | **Years Of Svc:** | 35 |
| **Empl Status:** | OFF WORK | **Status Eff Dt:** | 02/03/2015 |
| **Exp Rtn Dt:** | | | |
| **Pos Eff Dt:** | | **Position Title:** | Sr Comm Technician |
| **Pos Number:** | 00083664 | **Job Code:** | A38898 |
| **Department:** | 41: Engineering | **Division:** | |
| **MOU:** | 3650: Engineering-Trk Renewal/Construct South | **Service Unit:** | |
| **Union:** | 04: BRS | **SBG:** | 9761 |
| **Work Location:** | LAREDO, TX | | |
| **Payroll:** | | **Cost Center:** | ED896 |
| **Supv Name:** | TRAVIS R YATES | **Supv Empl Id:** | 0449928 |

**Report Generated on 09/22/20 12:29:52 by LADM279**
**Data copyright Union Pacific Railroad 2020**

UPFULBRIGHT

 CONFIDENTIAL

HR Reporting System

**Work History**
**Name: JOE M FULBRIGHT**
**Empl Id: 0251592**

| EFF DATE | CHANGE TYPE | EMPL STATUS | JOB TYPE | POSITION TITLE | WORK LOCATION | UNION | DEPARTMENT | JOB CODE |
|---|---|---|---|---|---|---|---|---|
| 07/09/2015 | Agr-Layoff-Medically Disqual | OFF WORK | AGR | Sr Comm Technician | LAREDO, TX | BRS | Information Technologies | A38898 |
| 02/03/2015 | Agr LOA Health Reasons | LEAVE | AGR | Sr Comm Technician | LAREDO, TX | BRS | Information Technologies | A38898 |
| 10/24/2014 | Agr Return from Leave of Abs | ACTIVE | AGR | Sr Comm Technician | LAREDO, TX | BRS | Information Technologies | A38898 |
| 08/26/2014 | Agr LOA Health Reasons | LEAVE | AGR | Sr Comm Technician | LAREDO, TX | BRS | Information Technologies | A38898 |
| 04/24/2014 | Agr Return from Leave of Abs | ACTIVE | AGR | Sr Comm Technician | LAREDO, TX | BRS | Information Technologies | A38898 |
| 02/25/2014 | Agr LOA Health Reasons | LEAVE | AGR | Sr Comm Technician | LAREDO, TX | BRS | Information Technologies | A38898 |
| 03/01/2011 | Agr Return from Leave of Abs | ACTIVE | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 02/22/2011 | Agr LOA-Fam Medic Leave | LEAVE | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 09/29/2010 | Both-Data Redesignation | ACTIVE | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 04/26/2010 | Both-Data Redesignation | ACTIVE | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 06/23/2009 | Agr Return from Leave of Abs | ACTIVE | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 04/16/2009 | Agr LOA-On Duty Pers Injury | LEAVE | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 04/07/2006 | Both-Version 8.8 Upgrade | TERMINATED | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 01/26/2005 | Agr Change/Pos Title/Loc | TERMINATED | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | Information Technologies | A38898 |
| 07/01/2004 | Agr Change/Pos Title/Loc | TERMINATED | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | TRNSP SOUTHERN RGN | A38898 |
| 04/24/2000 | Agr Bid | TERMINATED | AGR | SR COMM TECHNICIAN | LAREDO, TX | BRS | TRNSP SOUTHERN RGN | A38898 |
| 09/02/1998 | Agr Discharge-Rule Violations | TERMINATED | AGR | SR COMM TECHNICIAN | FT WORTH, TX | BRS | Information Technologies | A38898 |
| 02/17/1998 | Agr Bid | ACTIVE | AGR | SR COMM TECHNICIAN | FT WORTH, TX | BRS | Information Technologies | A38898 |
| 02/16/1998 | Agr Assignment Pending | ACTIVE | AGR | SR COMM TECHNICIAN | FT WORTH, TX | BRS | Information Technologies | A41898 |
| 04/01/1996 | Agr Bid | ACTIVE | AGR | SR COMM TECHNICIAN | FT WORTH, TX | BRS | Information Technologies | A41898 |
| 11/05/1993 | Agr Change/Pos Title/Loc | ACTIVE | AGR | SR COMM TECHNICIAN | FT WORTH, TX | BRS | Information Technologies | A41898 |
| 06/01/1993 | Agr Change/Pos Title/Loc | ACTIVE | AGR | SR COMM TECHNICIAN | FT WORTH, TX | BRS | Information Technologies | A41898 |
| 07/01/1991 | GENERAL INCREASE | ACT-A | AGR | COMM MAINT LIC | FT WORTH, TX | BRS | Information Technologies | |
| 04/07/1988 | Agr Change/Pos Title/Loc | ACTIVE | AGR | COMM MAINT LIC | FT WORTH, TX | UNKNOWN | Information Technologies | A41308 |
| 05/01/1987 | Agr Change/Pos Title/Loc | ACTIVE | AGR | COMM MAINT LICENSED | FT WORTH, TX | UNKNOWN | Information Technologies | A41308 |
| 07/02/1986 | Agr Change/Pos Title/Loc | ACTIVE | AGR | COMMUNICATIONS DEPT | FT WORTH, TX | UNKNOWN | Information Technologies | A91265 |
| 07/16/1985 | Agr Change/Pos Title/Loc | ACTIVE | AGR | COMM MNTR | FT WORTH, TX | UNKNOWN | INA-MISSOURI PACIFIC-HISTORY | A91261 |
| 03/25/1985 | Agr New Hire | ACTIVE | AGR | COMM MNTR | FT WORTH, TX | UNKNOWN | INA-MISSOURI PACIFIC-HISTORY | A91261 |

**Report Generated on 09/22/20 12:29:52 by LADM279**
**Data copyright Union Pacific Railroad 2020**

UPFULBRIGHT

CONFIDENTIAL

HR Reporting System

**Complete Training History**
**Name: JOE M FULBRIGHT**
**Empl Id: 0251592**

| COMPLETION DATE | CODE | DESCRIPTION | DURATION IN HRS |
|---|---|---|---|
| 01/31/2019 | HZ89 | Hazardous Materials Emergency Respo | 0.0 |
| 01/11/2016 | HZ89 | HAZARDOUS MATERIALS EMERGENCY | |
| 01/30/2015 | MEDRT | MEDICAL RULES TRAINING | 0.3 |
| 11/17/2014 | JEV001 | IOS DEVICE POLICY | |
| 07/16/2014 | TTN01 | TTN DATABASE IP INFRASTRUCTUR | 1.0 |
| 07/16/2014 | TTN03E | TTN DATABASE IP NETWORK MONIT | 1.0 |
| 04/29/2014 | ES00E | ON TRACK SAFETY | 1.0 |
| 12/09/2013 | HZ89 | HAZARDOUS MATERIALS EMERGENCY | |
| 12/05/2013 | FCPAW | FOREIGN CORRUPT PRACTICES ACT | 0.8 |
| 02/15/2013 | Q248 | RECORDS MANAGEMENT | 0.5 |
| 01/30/2013 | ES00E | ON TRACK SAFETY | 1.0 |
| 07/05/2012 | SAPTM4 | SAP TIME ENTRY PORTAL (TEP) TE | 1.0 |
| 07/02/2012 | PXBDE | HEAT STRESS TRAINING FOR EMPLO | 1.0 |
| 07/02/2012 | TIPD1E | PROFESSIONALISM | 1.0 |
| 05/31/2012 | PXBD | HEAT STRESS | 0.8 |
| 05/31/2012 | QS97 | QSM - HEAT STRESS QUALITY SAFE | 1.0 |
| 05/31/2012 | SA22 | RED ZONE CONTACT | 1.0 |
| 04/25/2012 | PXD6 | BASIC MEDIC FIRST AID/CPR-V6 | 4.5 |
| 03/07/2012 | IFDD | DEFENSIVE DRIVING | 8.0 |
| 02/22/2012 | Q248 | RECORDS MANAGEMENT | 0.5 |
| 01/27/2012 | ES00E | ON TRACK SAFETY | 1.0 |
| 12/12/2011 | EEO11W | EQUAL OPPORTUNITY: EQUAL RESPO | 0.5 |
| 07/28/2010 | HZ89 | HAZARDOUS MATERIALS EMERGENCY | |
| 06/24/2010 | PXD6 | BASIC MEDIC FIRST AID/CPR-V6 | 4.5 |
| 03/02/2010 | IFDD | DEFENSIVE DRIVING | 8.0 |
| 01/22/2010 | ES00E | ON TRACK SAFETY | 1.0 |
| 08/03/2009 | HZ89 | HAZARDOUS MATERIALS EMERGENCY | |
| 02/04/2009 | ES00E | ON TRACK SAFETY | 1.0 |
| 02/04/2009 | TTN01 | TTN DATABASE IP INFRASTRUCTURE | 1.0 |
| 05/20/2008 | OPSU | TOTAL SAFETY CULTURE | 8.0 |
| 11/01/2007 | CTEOT | NEXTGEN EOT TRAINING | 2.0 |
| 04/12/2007 | AED6 | AUTO EXTERNAL DEFIBRILLATOR | 2.0 |
| 04/11/2007 | PX86 | BASIC MEDIC FIRST AID/CPR WITH | 6.0 |
| 08/15/2006 | EEOQ | EEO BASICS | 1.0 |

UPFULBRIGHT

CONFIDENTIAL

HR Reporting System

| | | | |
|---|---|---|---|
| 03/21/2006 | HM68 | HM232 SECURITY AWARENESS TRNG | 0.3 |
| 03/21/2006 | Q212 | RAIL SECURITY AWARENESS (MEETS | 1.0 |
| 03/13/2006 | TTN01 | IP INFRASTRUCTURE | 1.0 |
| 02/02/2006 | ES00IT | ON TRACK SAFETY TRAINING | 8.0 |
| 10/27/2005 | MD43 | AFTRMTH RD TO RESILENCEHP08203 | 0.3 |
| 10/27/2005 | MD45 | QSM BOUNCING BACK - RESILIENCE | 0.5 |
| 10/27/2005 | MD51 | 0-1-2-4: HOW MUCH IS TOO MUCH | 0.3 |
| 06/22/2005 | PXD9 | CPR - CARE INITIATOR MEDIC FI | 4.0 |
| 03/10/2005 | EEOV | EEO: COMPLIANCE AND BEYOND (AL | 2.0 |
| 02/03/2005 | ES00IT | ON TRACK SAFETY TRAINING | 8.0 |
| 09/16/2004 | EV27 | ASBESTOSAWARENESS | 0.3 |
| 04/29/2004 | PX60 | DEFENSIVE DRIVING TRAINING | 4.0 |
| 05/21/2003 | PXD9 | CARE INITIATOR MEDIC FIRST AI | 4.0 |
| 04/23/2002 | CTLT | COMMUNICATIONS TRNG LOAD TEST | 5.0 |
| 05/23/2001 | PXD9 | CARE INITIATOR MEDIC FIRST AI | 4.0 |
| 06/14/2000 | OSDS | OPERATIONS SUPPORT DISPATCH SY | 2.0 |
| 05/28/1998 | GT05 | GEN. TRNG.: TECHNICAL SKILLS | 8.0 |
| 05/07/1997 | TV10 | DC BATTERY PLANT MAINT BTV-269 | 2.0 |
| 04/29/1997 | RXCD | LOCOMOTIVECOMPUTERSCREENSCARME | 2.0 |
| 08/14/1996 | ES00 | ON TRACK SAFETY TRAINING | 8.0 |
| 08/05/1996 | DDL1 | OPS: LOTUS NOTES USER LEVEL 1 | 4.0 |
| 04/17/1996 | VH44 | STREET SMART S-326-95 | 1.0 |
| 03/19/1996 | PXG8 | RISK MGMT./HEALTH -- BY THE NUMBERS | 1.0 |
| 03/19/1996 | PXG8 | 0124 | 0.5 |
| 03/01/1996 | SFE2 | ELECTRICALSAFETYLEVEL2 | 0.3 |
| 02/21/1996 | SFE2 | ELECTRICALSAFETYLEVEL2 | 0.3 |
| 11/01/1995 | EV20 | FIRE EXTINGUISHER ANNUAL TRNG | 0.3 |
| 11/01/1995 | SF47 | SAFETY -- CONFINED SPACES ENTR | 4.0 |
| 11/01/1995 | SF48 | SAFETY -- CONFINED SPACE ATTEN | 4.0 |
| 11/01/1995 | SF49 | CONFINEDSPACESENTATTENDENTRYSU | 0.3 |
| 08/03/1995 | EV27 | ASBESTOSAWARENESS | 0.3 |
| 06/28/1995 | GT05 | GEN. TRNG.: TECHNICAL SKILLS | 8.0 |
| 06/28/1995 | PX60 | DEFENSIVE DRIVING TRAINING | 4.0 |
| 04/12/1995 | SF44 | LOCKOUT/TAGOUTOTHEREMPLOYEE | 0.2 |
| 05/26/1994 | PXP1 | DELTA - OFFICE SUPERVISORS | 16.0 |
| 01/13/1993 | RX90 | CLEAN CAB RADIO CLASS-UNDER. P | 2.0 |
| 01/23/1992 | PXQM | DO NOT USE | 8.0 |
| 09/17/1991 | PXB1 | ON LINE REQUISITION SYS TRAINI | 4.0 |

UPFULBRIGHT

CONFIDENTIAL

HR Reporting System

| | | | |
|---|---|---|---|
| 07/30/1991 | PXC5 | HRDT - PROBLEM SOLVING TRAININ | 7.0 |
| 07/30/1991 | PXCB | HRDT-QUALITY IMPROVEMENT TEAM | 8.0 |
| 02/27/1991 | PX83 | MEDIC FIRST AID/CPR | 8.0 |
| 09/21/1990 | CT | COMMUNICATIONS TECHNOLOGY - MI | 8.0 |
| 09/20/1990 | CTBR | RA1, FM BASE RADIO SYSTEMS | 80.0 |
| 09/29/1989 | PXE6 | PRO-BACK II, SESSION 1 FOR WOR | 2.0 |
| 09/28/1989 | SF03 | HAZCOMLINEEMPLOYEETRAINING | 0.5 |
| 05/17/1989 | PXBC | GMS TRAINING COMM/SIGNAL GANGS | 8.0 |
| 09/21/1987 | CT | COMMUNICATIONS TECHNOLOGY - MI | 8.0 |
| 06/05/1987 | CTTP | TELEPHONY-BASIC TELEPHONY CIRC | 80.0 |
| 06/04/1987 | CT | COMMUNICATIONS TECHNOLOGY - MI | 8.0 |
| 04/01/1987 | ES | ENGRG SVCS/MOW TRNG - MISC | 8.0 |
| 03/27/1987 | CT | COMMUNICATIONS TECHNOLOGY - MI | 8.0 |
| 12/18/1986 | CTMP | MULTIPLEX-ANOLOG MULTIPLEX CIR | 80.0 |
| 12/09/1986 | CT | COMMUNICATIONS TECHNOLOGY - MI | 8.0 |
| 05/23/1986 | CT | COMMUNICATIONS TECHNOLOGY - MI | 8.0 |
| 05/07/1986 | CT | COMMUNICATIONS TECHNOLOGY - MI | 8.0 |
| 04/17/1986 | PX97 | PRO-BACK | 8.0 |
| 05/03/1985 | PXBF | HRDT - BASICS OF COMMUNICATION | 8.0 |

**Report Generated on 09/22/20 12:29:52 by LADM279**
**Data copyright Union Pacific Railroad 2020**

UPFULBRIGHT

CONFIDENTIAL

UPFULBRIGHT

HR Reporting System

**Medical Exam History**
**Name: JOE M FULBRIGHT**
**Empl Id: 0251592**

| EXAM CODE | EXAM DATE | EXAM TITLE | PASS/FAIL | SCORE | ACCURACY | END DATE |
|---|---|---|---|---|---|---|

**Report Generated on 09/22/20 12:29:52 by LADM279**
**Data copyright Union Pacific Railroad 2020**

CONFIDENTIAL

HR Reporting System

**Skills Exam History**
**Name: JOE M FULBRIGHT**
**Empl Id: 0251592**

| EXAM CODE | EXAM DATE | EXAM TITLE | PASS/FAIL | SCORE | ACCURACY | END DATE |
|---|---|---|---|---|---|---|
| ITSRE | 04/29/2014 | Telecom Safety Rules Exam | PASS | 8 | 8 | |
| MWECE | 04/29/2014 | EMWECE - Employee in Charge Exam | PASS | 100 | 100 | |
| MWECEC | 04/29/2014 | MWECE-MOFW EMPL-IN CHARGE EXAM | PASS | 0 | 0 | |
| MWLOE | 04/29/2014 | Lookout Exam | PASS | 80 | 80 | |
| MWLOEC | 04/29/2014 | MWLOE-MOFW LOOKOUT EXAM | PASS | 0 | 0 | |
| MWLWE | 04/29/2014 | OTS Loneworker Exam | PASS | 100 | 100 | |
| MWLWEC | 04/29/2014 | MWLWE-MOFW LONE WORKER EXAM | PASS | 0 | 0 | |
| MWRWE | 04/29/2014 | MWRWE - OTS Roadway Worker Exam | PASS | 100 | 100 | |
| MWRWEC | 04/29/2014 | MWRWE-MOFW RDWAYWRKRES00E EXAM | PASS | 0 | 0 | |
| MWTWE | 04/29/2014 | MWTWE - OTS Train Approach Warning System Exam | PASS | 100 | 100 | |
| MWTWEC | 04/29/2014 | MWTWE-MOFW TRAINAPRCHWRN EXAM | PASS | 0 | 0 | |
| ITSRE | 02/06/2013 | Telecom Safety Rules Exam | PASS | 10 | 10 | |
| MWECE | 02/06/2013 | EMWECE - Employee in Charge Exam | PASS | 80 | 80 | |
| MWTWE | 01/31/2013 | MWTWE - OTS Train Approach Warning System Exam | PASS | 90 | 90 | |
| MWECE | 01/30/2013 | EMWECE - Employee in Charge Exam | PASS | 68 | 68 | |
| MWLOE | 01/30/2013 | Lookout Exam | PASS | 90 | 90 | |
| MWLWE | 01/30/2013 | OTS Loneworker Exam | PASS | 100 | 100 | |
| MWRWE | 01/30/2013 | MWRWE - OTS Roadway Worker Exam | PASS | 100 | 100 | |
| ITSRE | 02/22/2012 | Telecom Safety Rules Exam | PASS | 9 | 9 | |
| MWECE | 02/22/2012 | EMWECE - Employee in Charge Exam | PASS | 92 | 92 | |
| MWRWE | 02/22/2012 | MWRWE - OTS Roadway Worker Exam | PASS | 90 | 90 | |
| MWTWE | 02/22/2012 | MWTWE - OTS Train Approach Warning System Exam | PASS | 100 | 100 | |
| MWECE | 02/21/2012 | EMWECE - Employee in Charge Exam | PASS | 72 | 72 | |
| MWECE | 01/27/2012 | EMWECE - Employee in Charge Exam | PASS | 68 | 68 | |
| MWLOE | 01/27/2012 | Lookout Exam | PASS | 90 | 90 | |
| MWLWE | 01/27/2012 | OTS Loneworker Exam | PASS | 90 | 90 | |
| MWECE | 01/19/2011 | EMWECE - Employee in Charge Exam | PASS | 92 | 92 | |
| MWLOE | 01/19/2011 | Lookout Exam | PASS | 90 | 90 | |
| MWLWE | 01/19/2011 | OTS Loneworker Exam | PASS | 100 | 100 | |
| MWRWE | 01/19/2011 | MWRWE - OTS Roadway Worker Exam | PASS | 90 | 90 | |
| MWTWE | 01/19/2011 | MWTWE - OTS Train Approach Warning System Exam | PASS | 100 | 100 | |
| MWTWE | 02/19/2010 | MWTWE - OTS Train Approach Warning System Exam | PASS | 90 | 90 | |
| MWECE | 01/22/2010 | EMWECE - Employee in Charge Exam | PASS | 100 | 100 | |
| MWLOE | 02/04/2009 | Lookout Exam | PASS | 90 | [illegible] | |

UPFULBRIGHT002005
UPFULBRIGHT000007
UPFULBRIGHT

CONFIDENTIAL

HR Reporting System

| | | | | | | |
|---|---|---|---|---|---|---|
| MWRWE | 02/04/2009 | MWRWE - OTS Roadway Worker Exam | PASS | 80 | 80 | |
| MWTWE | 02/04/2009 | MWTWE - OTS Train Approach Warning System Exam | PASS | 100 | 100 | |
| ITSRE | 02/03/2009 | Telecom Safety Rules Exam | PASS | 85 | 85 | |
| MWLWE | 02/03/2009 | OTS Loneworker Exam | PASS | 7 | 7 | |
| MWECE | 01/28/2009 | EMWECE - Employee in Charge Exam | PASS | 64 | 64 | |
| ITSRE | 01/22/2008 | Telecom Safety Rules Exam | PASS | 90 | 90 | |
| ITSRE | 02/23/2007 | Telecom Safety Rules Exam | PASS | 90 | 90 | |
| ITOT | 01/25/2007 | ON TRACK SAFETY (RW,LO,LW,EC,TW) | PASS | 98 | 98 | |
| ITSRE | 06/22/2006 | Telecom Safety Rules Exam | PASS | 95 | 95 | |
| SECUR | 03/21/2006 | Q212 | PASS | 0 | 0 | |
| MWEC | 02/03/2005 | MWEC - EMPLOYEE-IN-CHARGE | PASS | 100 | 100 | |
| MWLO | 02/03/2005 | MWLO - LOOKOUT | PASS | 100 | 100 | |
| MWLW | 02/03/2005 | LONE WORKER | PASS | 100 | 100 | |
| MWRW | 02/03/2005 | MWRW - ROADWAY WORKER | PASS | 100 | 100 | |
| ITOT | 01/29/2002 | ON TRACK SAFETY (RW,LO,LW,EC,TW) | FAIL | 0 | 0 | |
| ITOT | 01/23/2001 | ON TRACK SAFETY (RW,LO,LW,EC,TW) | PASS | 0 | 97 | |
| ITOT | 08/14/1996 | ON TRACK SAFETY (RW,LO,LW,EC,TW) | PASS | 0 | 92 | 01/23/2001 |

**Report Generated on 09/22/20 12:29:52 by LADM279**
**Data copyright Union Pacific Railroad 2020**

UPFULBRIGHT

 CONFIDENTIAL

HR Reporting System

**Employee Discipline History**
**Name: JOE M FULBRIGHT**
**Empl Id: 0251592**

**Current Snapshot Record:**

| | |
|---|---|
| MAPS Status Code: | |
| Attendance Status Description: | |
| Leniency Probation End Date: | |
| Leniency Probation MAPS Level: | |
| Leniency Retention Date: | |
| Last Event Date: | 09/29/2015 |
| Active: | N |

**History Record(s): 2**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Case Id** | 574861 | **Case Type Desc** | General Case (Upgrade) | **Effective Date** | 09-01-1998 | **Incident Date** | 08-17-1998 |
| **Charging Office** | RICHARD GREEN | **Supervisor Name** | RICHARD COLE | **Service Unit** | Track Programs | | |
| **Even Type Desc** | GN | **Waive Offered Flag** | N | **License Revoke Flag** | | **Result Summary** | Dschrg Violat Operg Rules/Regs |
| **MAPS Previous Start Date** | | **New Status Code** | | **Category Code** | | **Retention Date** | |
| **Event Comments** | | **Current Status Code** | | **Attendence Retention Date** | | **Discipline Flag** | |
| **Incident Description** | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Case Id** | 574862 | **Case Type Desc** | General Case (Upgrade) | **Effective Date** | 02-07-1990 | **Incident Date** | 02-07-1990 |
| **Charging Office** | | **Supervisor Name** | RICHARD COLE | **Service Unit** | Track Programs | | |
| **Even Type Desc** | GN | **Waive Offered Flag** | N | **License Revoke Flag** | | **Result Summary** | |
| **MAPS Previous Start Date** | | **New Status Code** | | **Category Code** | | **Retention Date** | |
| **Event Comments** | | **Current Status Code** | | **Attendence Retention Date** | | **Discipline Flag** | |
| **Incident Description** | | | | | | | |

**Report Generated on 09/22/20 12:29:52 by LADM279**
**Data copyright Union Pacific Railroad 2020**

UPFULBRIGHT

CONFIDENTIAL



*See Other Side for Instructions*

# EMPLOYEE REPORTING FORM – 32141

FORM 32141 REV. 10-76

PLEASE TYPE OR PRINT

NAME OF R.R. OR COMPANY Missouri Pacific — Dallas (Location)

THIS SECTION COMPLETED (AS CIRCUMSTANCES DICTATE) AND SIGNED BY EMPLOYEE

SOCIAL SECURITY ACCOUNT NO. — INITIALS JM — LAST NAME (ONLY ONE LETTER PER SPACE) Fulbright

☑ Male ☐ Female ☑ Single ☐ Married — Date of Birth

STREET ADDRESS 810 Oakwood dr.

HOME TELEPHONE Redacted — AREA CODE — NUMBER

CITY Euless — STATE TX — ZIP CODE 76040

If address should be used for U.S. Savings Bonds Address, check square. ☐

Location to which checks are to be sent: 810 Oakwood dr. Euless Texas 76040

## HOW TO CLAIM YOUR FEDERAL WITHHOLDING EXEMPTIONS

| | FEDERAL | STATE OF |
|---|---|---|
| 1. Personal exemption for yourself. Write "1" if claimed | 1 | |
| 2. If married, personal exemption for your wife (or husband) if not separately claimed by her (or him). Write "1" if claimed | | |
| 3. Special withholding allowance. (See instruction 2.) Write "1" if claimed | | XXX |
| 4. Exemptions for age and blindness (applicable only to you and your wife but not to dependents): | | |
| (a) If you or your wife will be 65 years of age or older at the end of the year, and you claim this exemption, write "1" if both will be 65 or older, and you claim both of these exemptions, write "2" | | * |
| (b) If you or your wife are blind and you claim this exemption, write "1"; if both are blind, and you claim both exemptions, write "2" | | * |
| 5. Exemptions for dependents. (Do not claim an exemption for a dependent unless you are qualified under instruction 5.) | | |
| 6. Additional withholding allowances for itemized deductions | | XXX |
| 7. Add the exemptions and allowances (if any) which you have claimed above and enter total | 1 | |

**If applicable only.*

## HEALTH & WELFARE COVERAGE

Represented by which Union TRANS-Comm Union

1. ☐ Not Covered
2. ☐ GA 23000 (Dependent Benefits only)
A. ☒ GA 23000 (Employee & Dependent Benefits)
B. ☐ GA 852700 (Employee & Dependent Benefits) TPMP Clerks
3. ☐ R-480 Excepted

If block 2 is checked show Name of hospital association to which you will belong:

STL. PALESTINE, KINGSVILLE, GULF COAST, MARSHALL, AT&SF

I certify that the information given in this section is true and that the number of withholding exemptions claimed hereon does not exceed the number to which I am entitled.

Employee's Signature X [signature] — Date of Signature 2 (MONTH) 14 (DAY), 19 75 (YEAR)

Comm Maintainer (OCCUPATION) — Ft Worth (HEADQUARTERS)

## THIS SECTION IS TO BE USED (AS CIRCUMSTANCES DICTATE) AND SIGNED BY EMPLOYING OFFICER

Status Changes

| | Date | Code | Status |
|---|---|---|---|
| 1. | | | FURLOUGHED — Expected Return Date |
| 2. | | | RETIRED ___ Age ___ Disability (23–28) |
| 3. | | | DECEASED |
| 4. | | | TERMINATED ☐ REHIRE ELG. (29) |
| 5. | | | L of A |
| 6. | | | MILITARY SERVICE |
| 7. | | | SUMMER EMPLOYEE (23–28) |
| 8. | 021575 | 102 | NEW EMPLOYEE — REHIRED |
| 9. | | | OTHER (Explain): |

A.

B. Check Destination Code 99999

C. State Residence 58

D. CITY OR STATE TAX

| | Code | Res., N/R | % of Gross | Self | Spouse | No. of Add'l | Fixed Monthly Deduction for Withholding |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

E. FEDERAL INCOME TAX — Exemptions 01 — Fixed Monthly Deduction

F. Company Code 10 — THIS BOX MUST BE COMPLETED

G. H & W COVERAGE: 1. ☐ 2. ☐ A. ☒ B. ☐ 3. ☐

H. SUBJECT TO: 1. ☒ RRB & WT 2. ☐ FICA & WT 3. ☐ Neither 4. ☐ WT Only

I. HOSPITAL ASSOCIATION — Code — Deduction Amt.

J. Male/Female, Married/Single ✓

CER-1 verified by Payroll Dept.

ORIGINATING DEPARTMENT COPY

[signature] Signature of Employing Officer — [signature] Title or Department — 2/25 Date

UPFULBRIGHT002008

UPFULBRIGHT



UPFULBRIGHT000881

CONFIDENTIAL



MPRR

NAME OF COMPANY

FORM 15021
(REV. 6-72)

# APPLICATION FOR EMPLOYMENT

PRINT CLEARLY - USE BALL POINT PEN

COMPLETE LINES 1-15 ENTERING DATA IN UNSHADED AREAS ONLY. AFTER COMPLETING 1-15, TURN TO PAGE 2. USE CODES WHERE INDICATED. CODES SHOWN ON REVERSE SIDE OF PAGE 3.

1 SOCIAL SECURITY NUMBER — SOCIAL SECURITY NO.:

2 NAME — Block 002 — LAST NAME: Fulbright — FIRST NAME: Joe — MIDDLE INITS: M — PREFIX: — ALLOWABLE NAME PREFIXES: MR., MRS., MISS., MS.

3 HOME ADDRESS AND TELEPHONE — Block 005 — STREET ADDRESS: 810 Oakwood dr. — SUPPLEMENTAL ADDRESS (BOX NO., APT., ETC. IF APPLICABLE):

4 Block 006 — CITY: Euless — STATE: TX — ZIP: — HOME TELEPHONE Block 007 — AREA CODE & NUMBER (USE NUMBERS ONLY): Redacted

USE STATE CODES SHOWN ON REVERSE SIDE OF PAGE 3.

5 PERSONAL AND FAMILY — Block 008 BIRTH DATE: — Block 014 SEX (M-MALE, F-FEMALE): M — Block 015 MARITAL STATUS (S-SINGLE, W-WIDOWED, D-DIVORCED, M-MARRIED, L-LEGALLY SEPARATED): S — Block 016 NUMBER OF DEPENDENTS: 01 — NOT FOR TAX PURPOSES. ENTER TOTAL NUMBER DEPENDENTS EXCLUDING SELF.

6 Block 096 — SPOUSE FIRST NAME: — SPOUSE BIRTH DATE (MO DAY YR): — Block 012 U.S. CITIZENSHIP: ENTER 'N' IF NOT A U.S. CITIZEN; OTHERWISE, LEAVE BLANK

7 IN CASE OF EMERGENCY CONTACT: — Block 009 — EMERGENCY CONTACT NAME: Martha Fulbright — RELATIONSHIP: Mother — USE RELATION ABBREVIATION SHOWN ON BACK OF PAGE 3. — EMERGENCY TELEPHONE NO. (USE NUMBERS ONLY): Redacted

8 Block 010 — EMERGENCY CONTACT ADDRESS USE STATE CODES SHOWN ON REVERSE SIDE OF PAGE 3. — STREET: 810 Oakwood dr. — CITY: Euless — ST: TX

9 RESERVE MILITARY SERVICE DATA — Block 037 — MILITARY STATUS CODE: 1-SUBJECT TO CALL FOR ACTIVE DUTY, 2-NOT SUBJECT TO CALL OR OBLIGATION COMPLETED, 3-ACTIVE RESERVIST, 4-INACTIVE RESERVIST — MONTH & YEAR OF RESERVE OBLIGATION COMPLETION:

10 RESERVE STATUS CODE: 1-READY, 2-STANDBY, 3-RETIRED, 4-OTHER — RESERVE BRANCH: 0-AIR FORCE, 1-AIR NAT. GUARD, 2-ARMY, 3-NAT. GUARD, 4-NAVY, 5-MARINES, 6-COAST GUARD — HIGHEST RANK ATTAINED: ENTER ABBREVIATION SUCH AS E6 OR O3.

11 EMPLOYMENT REFERRAL SOURCE — Block 017 — ENTER CODE TO INDICATE HOW YOU FIRST CONTACTED THIS COMPANY: 11 — 01-OWN ACCORD, 02-EMPLOYEE REFERRAL, 10-ST. LOUIS NEWSPAPER, 11-OTHER NEWSPAPER, 20-COLLEGE RECRUIT, 30-URBAN LEAGUE, 31-R.R.B., 32-STATE EMPLOY. AGENCY, 33-MINORITY REFERRAL SOURCE, 40-HIGH SCHOOL PROGRAM, 50-EMPLOY. AGENCY

HIGH SCHOOL OR BACHELOR'S DEGREE EDUCATION

12 Block 030 — LEVEL CODE: 14 — LEVEL NAME: 2COL — SUBJECT CODE: — MAJOR SUBJECT: Electronics — SCHOOL CODE: — SCHOOL NAME: Texas State Tech Inst. — LAST YEAR: 81 — STATE CODE: TX

MASTER'S DEGREE OR SECOND BACHELOR'S DEGREE

13 Block 031 — LEVEL CODE / LEVEL NAME / SUBJECT CODE / MAJOR SUBJECT / SCHOOL CODE / SCHOOL NAME / LAST YEAR / STATE CODE:

DOCTORATE OR SECOND MASTER'S DEGREE

14 Block 032 — LEVEL CODE / LEVEL NAME / SUBJECT CODE / MAJOR SUBJECT / SCHOOL CODE / SCHOOL NAME / LAST YEAR / STATE CODE:

EDUCATION IN PROGRESS (IF CREDITS REQUIRED NOT KNOWN, ENTER 'UNK'.)

15 Block 033 — LEVEL CODE / LEVEL NAME / SUBJECT CODE / MAJOR SUBJECT / SCHOOL CODE / SCHOOL NAME / LAST YEAR / CREDITS OBTAINED / CREDITS REQUIRED:

(LEVEL CODES & NAMES ON BACK OF PAGE 3)

**AFTER COMPLETING LINES 1-15, TURN TO PAGE 2. LINES 16-21 TO BE COMPLETED BY MOPAC STAFF.**

16 SOCIAL SECURITY NO.: Redacted — EFFECTIVE DATE (MO DA YR): 032585 — BLOCK: 001 — TRANS. CODE: 10 — EMPLOYEES' OCCUPATION (PRINT): Comm Main. — EMPLOYING OFFICER SIGNATURE: R W Usselton

17 WORK LOCATION — Block 050 CO/BUDGET CODE: 1000780 — N — DEPARTMENT NAME (DO NOT PUNCH): 1408 — Block 051 LOC CODE: — Block 052 EEO RPT UNIT: 350 — Block 053 CHECK DEST CODE: 00780 — LOCATION NAME (DO NOT PUNCH):

18 JOB & SALARY — Block 056 POS/OCC CODE: — N — DATE ID: — Block 080 SAL GRADE: — Block 081 AMT SAL CHANGE: 0000000 — TYPE: N — CURRENT BASE SAL: — HOW PAID CODE: CODES SHOWN ON REVERSE SIDE OF PAGE 3.

19 SENIORITY ROSTER DATA — Block 054 DATE ID: — A/C: A — SENIORITY DATE (MO DAY YR): 032585 — SAME DAY: — ROSTER REMARKS: — PRIOR RIGHTS: — POS/SYS CLS/SEN:

20 ETHNIC ORIGIN, CONTIN SRV DATE, UNION AGREEMENT, TEST SCORES — Block 011: 2 — Block 013 CONTINUOUS SERVICE DATE: 032585 — Block 060 UNION AGREEMENT: 140 — Block 018 — Block 019 — Block 020 — Block 021 — Block 022 — Block 023

21 PROBATION PERIOD BEGIN DATE, END DATE, MOPAC TELE. NO. — PROBATION BEGIN DATE (MO DA YR): 032585 — Block 063 — PROBATION END DATE (MO DA YR): 052385 — Block 057 — MOPAC SYSTEM TELE NETWORK NO.:

UPFULBRIGHT002009

FIELD COPY





UPFULBRIGHT000662

UPFULBRIGHT

CONFIDENTIAL



## EMPLOYMENT HISTORY

Start with present or last position and re .d complete employment history in reverse er including employment by this railroad or its subsidiar. s.

| EMPLOYMENT DATES (Show month and year) | A - NAME OF COMPANY<br>B - STREET ADDRESS<br>C - CITY & STATE | A - POSITION HELD<br>B - SALARY<br>C - IMMEDIATE SUPERVISOR | REASON FOR LEAVING |
|---|---|---|---|
| From: July 1984 | A McCollum Advanced Comm | A Technician | |
| To: Present | B 3505 Airport Freeway | B $23,000 | |
| | C Fort Worth, Texas. | C Robert McCollum | |
| From: July 1983 | A Russ Miller Comm | A Technician | Better job |
| To: July 1984 | B 3620 byers Ave | B $20,000 | |
| | C Fort Worth, Texas. | C Steve Lundine | |
| From: Feb. 1982 | A Brown & Root Inc | A Technician | To relocate in |
| To: July 1983 | B | B $12,500 | D/FW area |
| | C Houston Texas | C Tam Bui | |
| From: | A | A | |
| To: | B | B | |
| | C | C | |

Name any Relatives Employed by this Company or its Subsidiaries

| NAME | RELATIONSHIP | POSITION | LOCATION |
|---|---|---|---|
| None | | | |
| | | | |

Name Other Employees of this Company With Whom You Are Personally Acquainted

None

## ACTIVE MILITARY SERVICE

IF YOU HAVE HAD SERVICE IN THE U.S. ARMED FORCES, INDICATE BRANCH: ________ FINAL RANK ________ SERVICE SERIAL NO. ________

DATE ACTIVE SERVICE COMMENCED: ________ DATE RELEASED: ________ TYPE OF RELEASE: ________

NOTE: Persons discharged from military service should have discharge papers giving condition at time of discharge. Employing officer must examine all discharge papers carefully.

STATE ANY SERVICE INCURRED DISABILITY: ________ PRESENT SELECTIVE SERVICE DRAFT CLASSIFICATION: ________

IF REJECTED OR DEFERRED FOR MILITARY SERVICE, GIVE REASON: ________

Have you ever been convicted of a violation of the law other than a minor traffic offense? No

If so, approximate date: ________ Nature of violation: ________

Location of court: ________ Final disposition: ________

UPFULBRIGHT002006

UPFULBRIGHT



UPFULBRIGHT000683

CONFIDENTIAL



What illnesses or injuries causing disability f- more than 15 consecutive days have you ever h- ' and when? None

Do you receive a disability pension? No If so, for what?

What injuries (other than minor cuts and bruises) have you ever had? None

Have you ever filed a claim or suit for personal injuries? No If so, when?

Where? Against whom?

If not a citizen of the USA, of what country are you a citizen?

If not, what type of visa have you been issued?

Do you understand that it is contrary to the rules and/or policy of this Company for any employe, either on or off duty, to be on or about the property of the Company while using or under the influence of intoxicants or narcotics? yes

Do you agree to fully acquaint yourself with the physical characteristics of the portion of the railway or the location in which you become employed and use extreme care at all times to avoid physical injury and guard against damage to the property of this Company? yes

## CONDITIONS OF EMPLOYMENT

In consideration of my employment, I hereby agree:

1. To furnish the employer a copy of my birth certificate, or other acceptable proof of my age.
2. To submit my finger prints for clearance through law enforcement agencies.
3. That such employment as may be given to me is temporary until such time as my application is approved or rejected, and that my employment may thereafter be terminated at will and without cause in the discretion of my employer, except as otherwise specifically provided in any applicable current labor agreement.
4. That any misrepresentation or concealment of facts by me in this statement or in my statements to the medical examiner respecting my age, physical condition past or present, qualifications, personal character, or record with former employers shall be just cause for my rejection or dismissal from service.
5. To familiarize myself with and to observe all rules and regulations governing the service to which I shall at any time be assigned; to maintain strict integrity of character; to faithfully observe the rules and/or policy governing the use or possession of intoxicating liquors or narcotics; and to perform my duties to the best of my ability.
6. That the settlement of, or the satisfaction of a judgment in, any suit brought by me against my employer for any disability based upon the representation that I am permanently disabled from performing such regular duties as would in the usual course be assigned to me, shall constitute grounds for the termination of my employment; and I further agree, now or at any time in the future, to abide by the opinion of the appropriate Company Medical Officer as to my physical and mental ability to perform competently and safely to myself and others my regular duties.
7. That if I make any claim or file suit against my employer on account of any injury or illness, all hospitals and all physicians and surgeons examining or treating me are hereby authorized to furnish complete information concerning such injury or illness, or any other injury or illness affecting my recovery, to my employer's claim representatives and attorneys.
8. To authorize the employer to make a deduction from my wages covering the current fee for pre-employment physical examination, provided the medical examiner finds me physically qualified for the service applied for and such deduction is not prohibited by state law.
9. That any X-rays taken in connection with my pre-employment physical examination shall be the property of and will be retained by the employer, regardless of whether or not I enter his employment.
10. To authorize the custodian of my high school records to furnish a copy of my high school transcript to the employer.
11. That I will never during or after employment by my employer reveal to any person any information concerning inventions, experimental developments, special machines, testing processes, methods, systems, procedures, program or ideas of Missouri Pacific Railroad Company, its subsidiaries, affiliates or its successors and assigns, or any other confidential matters or trade secrets.
12. That if any of the foregoing conditions be held invalid, the validity of the remaining conditions shall not be affected.

The foregoing conditions of employment have been read by me before affixing my signature.

Date 2/14/85

[signature] Signature of Witness

x [signature] Signature of Applicant

(TO BE PERSONALLY FILLED OUT BY OFFICER IN CHARGE AFTER APPLICANT HAS BEEN QUALIFIED BY MEDICAL OFFICER)

This applicant meets our entry to service requirements and I recommend employment pending approval or disapproval of application:

Temporarily employed as Communication Maintainer At 7:00 A M (Time Commenced Work)

ON 3/25/85 (Date Commenced Work) AT Ft. Worth (Location)

J W Uselton (Personal Signature of Officer in Charge) Mgr. Comm. Fac (Title) [illegible] (Date)

UPFULBRIGHT002007





UPFULBRIGHT000684

UPFULBRIGHT

Department:
Information Technologies

Electronic Technician
Classifications for IBEW and BRS

ETC Electronic Technician without an FCC GROL. Must attain license within two years
ETB Electronic Technician with an FCC GROL
ETA is attained after being an ETB for two yrs
Sr. ET Grandfathered IBEW and BRS
Sr ET Pay code 101
COM MTR BRS monthly rated

All IBEW and BRS Electronic Technicians are subject to "Emergency Restoration of Service"

This job description may not fully identify or describe all the essential job or requirements

Duties:
Electronic technicians are responsible for repair, maintenance, and installation of the following components and systems:

- inside and outside wire and cable plant, including CAT 5/6 and Fiber Cables
- support systems; LAN/WAN interconnect systems
- Computer systems: Routers, Switches, Servers
- Analog and Digital radios systems: including dispatcher, yard, rcl, eot repeater, desktop, Hand held, mobile, Mds (ctc), WOR
- Microwave and Fiber Optic transmission equipment: including the multiplexing of such equipment
- Work station, voice, MDf and data, including Horizontal cabling
- Phone and Pbx systems
- Connections; and similar work in connection with telecommunications equipment.
- AEI trackside
- Weigh and Scale
- Camera systems
- Intermodal systems: Gate and oasis
- GMOTD and Auto Ramp facilities
- DC Systems: 12, 24, 48vdc rectifiers, converters, inverters, and battery plants

UPFULBRIGHT

Electronic technicians are responsible for repair, maintenance and installation of all the systems above at the following locations:

- Trackside Must be able to utilize OTS for their own protection from rolling stock Lone worker and Lookout
- Rail Yard Must be able to work around Yard operations, Hump, RCL, Track machines
- Office Must be able to function in an office environment, must be able to work closely with customers
- Remote Locations Must be able to work alone, at remote radio, ctc, aei, Microwave and Fiber Facilities.

Electronic Technicians must be competent in the operation of test equipment such as, but not limited to, multimeters, frequency counters, RF service monitors, wattmeter's, spectrum analyzers, signal generators, transmission test sets, frequency selective level meters, digital test sets, and other types of telecommunication test equipment.

Experience/Skills Required:
Must be 18 years of age or older. Individuals with felony and/or misdemeanor convictions may not be hired. Candidates must be able to read and comprehend regulations and instructions in English, as well as possess good oral communication skills.

Applicants
Must have at least a two-year Associates Degree in Electronic Technology from a generally recognized school, or, have equivalent military training or job experience. Extensive RF or microwave experience is desirable. An Electronic Technician shall possess a thorough knowledge of electronic theory, understand the operation of electronic components and circuits, and must be able to read and understand electronic schematics. Electronic Technicians shall posses advanced computer skills.
Successful applicants must be able to obtain a Federal Communication Commission General Radio telephone Operator License within the first 244 working days of service. Failure to obtain the FCC license will be considered as voluntary resignation from employment.
Applicants must have a valid driver's license and must be able to operate a vehicle for 2 to 3 hours per day minimum to cover their territory.
Applicants must be able to climb ladders, and perform work while on a ladder.
Applicants must be able to lift a 50 to 70 pound object such as a monitor or air conditioner, that requires two hands to move and carry a short distance.

UPFULBRIGHT

CONFIDENTIAL

**Work Conditions:**
Outdoor work required, regardless of weather conditions.

Probationary Period:
90 Days.

Shifts:
Must be available to work all three shifts.

Union:
International Brotherhood of Electrical Workers and grandfathered BRS
Dues: Initiation and monthly dues required.

Travel Required:
Occasional; may be away from home one to five days per week..
Hours:
40-hour work week, subject to overtime, weekends. and holidays.

UPFULBRIGHT

Telecom Electronic Technician's Duties, Job Description, and Physical Performance Requirements
05/01/06

Attached below from a prior note is a list of routine duties that a telecom technician performs along with the job description we use for the position. We feel that the following tests could be used to help determine the probability of the employee being able to perform his routine daily duties.

1. Demonstrate lifting a 50 to 70 pound object like a monitor or air conditioner that requires two hands to move and carry a short distance.

2. Demonstrate the ability to carry a tool bag or test equipment (approx 15 to 30 pounds) up 1 to 2 flights of steps

3. Demonstrate the ability to climb ladders, and perform work while on a ladder. The best example might be to use a step ladder, climb half way up and perform a manual dexterity example requiring both hands, like installing a piece of equipment into a rack where one hand is holding the equipment and the other hand is screwing the equipment into the rack,

4. Fine motor skills of the hand, assemble something with several small part, we would have the person assemble a cat 6 jack, terminate it, and place into a wallplate. We would probably also do a soldering test to demonstrate how steady the persons hands are.

5. Demonstrate the ability to operate a motor vehicle for 2 to 3 hours.

6. Demonstrate the ability to perform the daily morning Union Pacifc Warm up to work exercises as directed on forms PB-20606

7. Demonstrate the ability to crawl under a desk and perfrom tasks such as plugging in devices, terminating cables, etc.

8. Demonstrate the ability to work on his feet for several hours at a time

9. Demonstrate the ability to use a computer (keyboard and mouse movements)

The employee must be able to operate a motor vehicle. They are often required to drive to a site that is up to 3 hours away and back in the same day. The employee must be able to operate the vehicle at night also.

The employee must be able to work on ladders and step stools. There may be times when a person would be required to work on a stepladder for several hours. The employee will require good balance when on a ladder as they will be using their hands to adjust equipment, install equipment, pull cable, etc.

The employee will be required to lift and carry equipment including up staircases when installing equipment in towers, The equipment could be a PC, 21"' monitor, radio gear, printer etc. Most of our equipment is less than 70 lbs.

The employee must be able to walk on uneven, and rough surfaces, as they are required to sometimes walk down the right of way of the track to reach our equipment.

The employee must be able to go up and down stairs, as several of our sites only have stairway access.

The employee will be required to work while on his knees (with knee pads or a kneeler) when installing equipment under desks or in low spaces.

UPFULBRIGHT

CONFIDENTIAL

The employee will be responsible for installing cabling usually overhead. This will require the person to be able to pull the cable though the cabling management system.

The employee will be required to stand for extended periods of time while performing testing or doing installation work.

The employee will require good dexterity of the hands to be able to perform tasks of installing cable terminations, cable punches, assembly of small devices and connections. These tasks are performed almost every day.

The employee must be available for call out 24 x 7. The employee could have worked an entire shift, then be called out 9 PM to perform a restoration service and again at 3 AM to perform a different restoration of service task.

The employee must be able to work alone in remote areas during day or night.

Telecommunications Technician

Wide array of technical equipment covered on this job. After-hours call-outs at night, weekends and holidays. Equipment failures impacting train service must be restored in under 2.5 hours. Employee often works alone. All-weather environment.

Duties:

Electronic technicians are responsible for installing, maintaining and restoring service to our Telecommunications network. This includes Radio, Microwave, Fiber Optics, Data, Voice, LAN/WAN, PCs and any other technology we may use for Telecommunications, with or without immediate supervision.

Electronic technicians are responsible for building, repairing and maintaining pole lines and supports; running, connecting and maintaining line wires, service wires and cables, overhead and underground, together with their supports; the conduits for such wires and cables; microwave and radio tower work; and similar work in connection with telecommunications equipment.

INSPECT AND TEST ELECTRONIC OR MICROPROCESSOR-BASED SYSTEMS AND COMPONENTS (communication systems, analyzers, control systems, or logic controls). Perform electronic tests on electronic systems and components to ensure unit functions according to specifications: monitor functioning and calibration of electronic testing equipment; use electronic testing equipment per company and manufacturer standards; read technical information to determine appropriate testing procedures and equipment specifications.

TROUBLESHOOT MALFUNCTIONS IN ELECTRONIC OR MICROPROCESSOR- BASED SYSTEMS AND COMPONENTS. Analyze test results to troubleshoot equipment failures; identify or analyze defective units or parts and indicate necessary corrective actions; apply technical knowledge to develop troubleshooting procedures and solutions; gather and integrate information from various sources (manufacturer manuals, schematics, instrument readings and people) to troubleshoot problems.

REPAIR, INSTALL, OR DISMANTLE ELECTRONIC SYSTEMS AND COMPONENTS. Wire communication facilities; connect inbound/outbound lines to communication equipment; replace defective wiring and components (e.g. on printer boards) using tools described below and soldering iron; repair analog and digital circuitry.

WORK WITH TOOLS AND TESTING EQUIPMENT. Must safely and effectively operate the following: high precision measuring tools (electronic scales, voltmeters, micrometers); soldering irons; non-power tools (pliers, screwdrivers); off-highway motor vehicles (snow cats); motorized vehicles (cars, light trucks or vans).

UPFULBRIGHT

PRACTICE SAFE WORK HABITS. Understand and follow company and industry safety rules, practices and procedures, wear prescribed safety apparel; take appropriate action when conditions threaten safety of self or coworkers; ensure equipment and work are in safe operating condition before starting work.

UPFULBRIGHT

**PB-90161**

# AGREEMENT
# BETWEEN THE
# UNION PACIFIC RAILROAD

# AND THE
# INTERNATIONAL BROTHERHOOD
# OF
# ELECTRICAL WORKERS
# (TELECOMMUNICATION
# EMPLOYEES)

# EFFECTIVE JANUARY 1, 2003

UPFULBRIGHT

| Rule | | Page |
|---|---|---|
| Rule 1 | Scope | 4 |
| Rule 2 | Hours of Service | 4 |
| Rule 3 | Shift Work | 8 |
| Rule 4 | Classification of Work/Qualifications | 9 |
| Rule 5 | Rates of Pay | 12 |
| Rule 6 | Skill Differentials | 13 |
| Rule 7 | Monthly Compensated Employees | 13 |
| Rule 8 | Hourly Compensated Employees | 15 |
| Rule 9 | Seniority | 16 |
| Rule 10 | Seniority Classes | 17 |
| Rule 11 | Seniority Districts | 17 |
| Rule 12 | Seniority Rosters | 18 |
| Rule 13 | Working off District | 19 |
| Rule 14 | Bulletining Positions | 19 |
| Rule 15 | Filling Vacancies | 19 |
| Rule 16 | Exercise of Seniority | 20 |
| Rule 17 | Promotion | 20 |
| Rule 18 | Transfers | 20 |
| Rule 19 | Reduction in Force | 21 |
| Rule 20 | Applicants for Employment | 22 |
| Rule 21 | Claims and Grievances | 22 |
| Rule 22 | Discipline - Investigations | 23 |
| Rule 23 | Leave of Absence | 25 |
| Rule 24 | Absent from Work | 25 |
| Rule 25 | Vacations | 26 |
| Rule 26 | Personal Leave | 26 |
| Rule 27 | Bereavement Leave | 27 |
| Rule 28 | Holidays | 27 |
| Rule 29 | Attending Court | 28 |
| Rule 30 | Jury Duty | 28 |
| Rule 31 | Per Diem Allowance | 28 |
| Rule 32 | Travel Allowance | 29 |
| Rule 33 | Personal Injury | 32 |
| Rule 34 | Movement of Household Goods | 32 |
| Rule 35 | Faithful Service | 32 |
| Rule 36 | Paying Off | 33 |
| Rule 37 | Assignment of Work | 33 |
| Rule 38 | Distribution of Agreement | 33 |
| Rule 39 | Conformity to Agreement | 33 |
| Rule 40 | Effective Date of Agreement | 33 |


UPFULBRIGHT

## APPENDICES

Appendix


Union Shop Agreement ........ A
Dues Deduction Agreement ........ A-1
Political Contributions Deduction Agreement ........ A-2
Maintenance of Membership 3/05/81 ........ A-3
Clarify Maintenance of Membership Agreement ........ A-4
Retention of Maintenance of Membership Agreement ........ A-5
National Vacation Agreement ........ B
Daily Vacation Agreement ........ B-1
Daily Vacation Agreement Understanding ........ B-2
Non-Operating National Holiday Provisions ........ C
Health and Welfare Benefits ........ D
Supplemental Sickness Benefits ........ E
National Dental Plan ........ F
National Vision Plan ........ G
Off-Track Vehicle Accident Benefits ........ H
Employee Information ........ I
Bereavement Leave Q & A ........ J
Personal Leave Examples ........ K
Washington Job Agreement May 21,1936 ........ L
September 25, 1964 Mediation Agreement ........ M
Memorandum of Understanding RE: Article VI ........ M-1
Letter of Understanding # 7, November 27, 1991 ........ M-2
Incidental Work Rule, November 27, 1991 ........ N
Guidelines for Administration of Differentials ........ O
Understanding dated July 16, 1963 – Hours of Holiday for Monthly Rated Positions ........ P
Understanding dated November 10, 1975 – Observation of Holiday ........ Q
Understanding dated January 25, 1986 – Overtime Calling Procedures ........ R
Establishment of Uniform Collective Bargaining Agreement On UPRR & MPRR ........ S
Understanding dated October 17, 1986 – Work on Corporation Equipment ........ T
Understanding dated March 17, 1992 – Work on Computers ........ U
Understanding dated November 16, 1996 Incentive Program TSC ........ V
Employees with Preserved Rates Of Pay ........ W
401(K) Agreement 8/5/1992 ........ X
UP Shares Agreement dated 4/30/1998 ........ Y
C.O.R.E. Agreement 11/19/1998 ........ Z


UPFULBRIGHT

UPFULBRIGHT

***THE OBLIGATION THAT RESTS UPON THE MANAGEMENT TO PROVIDE AND THE EMPLOYEES TO RENDER HONEST, COURTEOUS AND EFFICIENT SERVICE IS RECOGNIZED.***

***A SPIRIT OF COOPERATION BETWEEN THE EMPLOYEES AND THE MANAGEMENT IS ESSENTIAL TO SAFE AND EFFICIENT MAINTENANCE AND OPERATIONS, AND BOTH PARTIES AGREE TO SO CONDUCT THEMSELVES. THE RESPONSIBILITY FOR SUCCESS RESTS EQUALLY WITH THE EMPLOYEES AND THE MANAGEMENT.***

***WHENEVER TERMS ARE USED WITHIN THIS AGREEMENT REFLECT THE MASCULINE GENDER, SUCH TERMS SHALL BE CONSTRUED AS THOUGH THEY ARE ALSO IN THE FEMININE GENDER.***

***EFFECTIVE JANUARY 1, 2003***
***SUPERSEDES AGREEMENT EFFECTIVE JULY 1, 1977, AS AMENDED***

consecutive hours including an allowance of twenty minutes for lunch within the limits of the fifth hour.

(C) Where three shifts are employed, the starting time of the first shift shall be governed by Section A, above, and the second and third shifts shall start immediately following the end of the preceding shift. The spread of each shift shall consist of eight consecutive hours including an allowance of twenty minutes for lunch within the limits of the fifth hour.

> ***NOTE:*** ***Other assigned starting times may be established by agreement between the designated Carrier Manager and the General Chairman.***

**RULE 4. CLASSIFICATION OF WORK AND QUALIFICATIONS.**

(A) ELECTRONIC TECHNICIAN

(1) An Electronic Technician shall possess a thorough knowledge of electronic theory, understand the operation of electronic components, and circuits, and must be able to read and understand electronic schematics. Electronic Technicians must be familiar and competent in the operation of test equipment such as, but not limited to, multimeters, frequency counters, watt meters, service monitors, spectrum analyzers, frequency generators, frequency selective level meters, transmission test sets, digital transmission testers, and other types of telecommunications test equipment. Electronic Technicians shall be required to operate any hand and power tools needed to accomplish the work. Electronic Technicians shall possess advanced computer skills. Electronic Technicians will perform their assigned work without direct individual supervision.

(2) An Electronic Technician must possess a two (2) year Associate degree or greater in Electronic Technology from a generally recognized school. An Electronic Technician shall be classified as an Electronic Technician C until the completion of all required training and has obtained a Federal Commission General Radiotelephone Operator license at which time the employee will be promoted to Electronic Technician B. However, any Electronic Technician C who fails to complete the required training and/or fails to obtain a Federal Communication Commission General Radiotelephone Operator License, or equivalent within the two hundred forty-four (244) work days of service will relinquish any and all seniority rights and the employee will be considered as voluntarily resigned from the service of the Carrier.

If a new hire has obtained a Federal Communication Commission General Radiotelephone Operator license and has a two (2) year Associate degree or greater in Electronic Technology from a generally recognized school or equivalent experience, management shall place the new hire as an Electronic Technician B.

(3) An Electronic Technician shall be classified as an Electronic Technician B for four hundred eighty-eight (488) working days of service. An employee completing four hundred eighty-eight (488) working days of service as an Electronic Technician B shall be promoted to position of Electronic Technician A. It is understood the



UPFULBRIGHT

promotion from Electronic Technician B to Electronic Technician A is based only on time in grade.

(4) An Electronic Technician A shall be classified as a Senior Electronic Technician after completion of two hundred forty-four (244) working days as an Electronic Technician A and who has passed the required three (3) of Union Pacific Telecommunications training labs. Senior Electronic Technicians will make themselves available for after hour calls, unless other arrangements have been made with proper authority. Senior Electronic Technicians must further successfully complete any new technology training labs as required with a passing grade. The employee will be given two (2) opportunities to do so, except as otherwise agreed to by the General Director of Telecommunications and the General Chairman.

Any Senior Electronic Technician who fails to maintain the requirements listed above will revert to their former Electronic Technician position. It is understood that such reversion is not considered discipline and that the Carrier is not subject to any claim on behalf of an Electronic Technician who fails to maintain the requirements listed above. The Senior Electronic Technician program is based on voluntary participation and an employee who has been promoted to Senior Technician may upon thirty (30) days written notification to his manager and local chairman, return to their former Electronic Technician classification. Senior Technicians who elect to return to their former Electronic Technician classification, will not be able to make application for promotion to Senior Technician for a period of one (1) calendar year from the date of reverting to Electronic Technician.

(5) Electronic Technicians' work shall consist of building, installing, assembling, dismantling, inspecting, testing, adjusting, restoring and maintaining, *other than leased*, telephone, telephone switching, and telephone networking equipment (excluding portable equipment such as cellular phones and pagers); public address and intercom systems, electronic and radio communication equipment; industrial closed circuit television equipment, centralized radio control equipment; radios used for two-way communication or control (except application and removal on rolling stock); microwave, multiplex, and related equipment in microwave sites; electronic recording or playback equipment; fiber optic, digital multiplex, and related equipment; automatic car identification and weighing equipment; EOTs, MDS and ATCS equipment, under the supervision of the Telecommunications Department, and wiring, cabling, and conduits related to above Carrier-owned, stationery telecommunications equipment, inside and outside, overhead and underground,and similar work, without individual supervision, in connection with Telecommunication Plants.

***NOTE: It is understood between the parties that the Carrier may allow other entities to put their equipment on Carrier property (including their own fiber optics and their own microwave dishes) as long as that equipment is not being utilized for Railroad operations. Such agreements between the Carrier and outside companies to allow them access to Carrier property for the purpose of installing, maintaining or dismantling such equipment is not in violation of this Agreement.***

UPFULBRIGHT

CONFIDENTIAL

Richard D. Green
Regional Manager Telecom
Information Technologies

# UNION PACIFIC RAILROAD COMPANY

81 N. 400 W.
Salt Lake City, Utah 84101
(801) 595-3329

Mr. Joe M. Fulbright

September 1, 1998

Senior Communications Technician

This letter is in reference to the hearing held on August 27,1998, at 9:00 am, to determine facts and responsibilities on the charges that you refused to report for duty at designated time and place ( Rule 1.15), you failed to report and comply with instructions from Supervisor ( Rule 1.13), and you were insubordinate (Rule 1.6-3). The following is my assessment, after reviewing the transcript of the hearing, which I conducted.

The charges stemmed from a call to duty that was made by Darin Anderson, to yourself, on August 17, 1998.

*Quotes may be Summarized*

You gave testimony that you were not called to duty:
pg 48 - ...he doesn't tell people to go out on calls. ...he notified me of a problem.

Testimony showing that you were called to duty:
Mr. Fulbright:
pg 48 - They made it clear they wanted me to go out on this call.
pg 61 - He mentioned...you could drink coffee and come in later
Mr. Herring:
pg 21 - I asked Joe if-if he could cover the call.
Pg 21 - ...let's go ahead and cover the call and we can turn in a claim or grievance later.
Mr. Anderson
pg 38 - *question*- So did he accept this call to duty? *Answer*- No.

At the time Mr. Anderson called you to duty, you indicated that he should get your supervisor on the phone. According to Mr. Herring's, Mr. Anderson's and your own testimony, after Mr. Herring was added into the call, you gave numerous reasons why you would not take the call.
Mr. Herring:
pg 21 - refused because of reimbursement mileage being inadequate, personal vehicle insurance being inadequate, too tired now, would be too tired later
pg 29 - After the mileage issue was first mentioned, then the safety issue of being too tired.
Mr. Anderson:
pg 38 - reasons why he could not go on the job, he was tired, his vehicle liability insurance, he stated he was not alert enough,
pg 38 - *question*- did he accept this call to duty- *answer*- "No"
Mr. Fulbright:
pg 48 - ...I had reservations about accepting it...I had problems
pg 61 - *question*- he asked you to go, you brought up the safety issue...he didn't give you a direct order after that; *answer*- No, no he didn't.

Your testimony that you did not refuse the call to duty.
pg 48 - I absolutely did not refuse to cover the outage.
pg 54 - I never did refuse to go out on the call.
pg 60 - *question*- ...you did not refuse to go out on a call. *answer*- No I did not.



UPFULBRIGHT

CONFIDENTIAL

Testimony that you did refuse the call to duty.

Mr. Herring:

pg 20 - He refused to come out. He refused to drive his personal vehicle out …
pg 21 - Joe said…I've only had two hours sleep. I'm tired and it wouldn't be safe…
pg 21 - …it wouldn't be safe later either.
pg 31 - And to my knowledge the first call that came in, then he did refuse the call.
pg 33 - …he said, no it won't be safe later either and besides I'm not going to take that personal vehicle out

Mr. Anderson:

pg 38 - …explaining the reasonings why he could not go on the job.
pg 38 - *question-* So did he accept this call to duty? *answer-* No
pg 42 - …he stated about the insurance scenario and on top of that he was tired.

Mr. Fulbright:

pg 48 - I had reservations about accepting it. I had problems.
pg 61 - *question-* he asked you to go, you brought up the safety issue, he didn't give you a direct order after that point to go? *Answer-* No, no he didn't.
pg 62 - I indicated I would not try to come out later.

This testimony was included to show just some of the contradictions in testimony that was heard. Not only did your testimony contradict that of other witness testimony, but your testimony did show conflicts within itself. There was evidence entered from other hearings as well as an action plan that stemmed from discipline as the results of still additional hearings. The hearing transcripts that were entered, indicate they were dismissed due to technicalities. They were the results of multiple missed call-outs being grouped into two hearings.

The transcripts as well as the action plan, entered as exhibits, were all the results of multiple hearings, based on your failure to protect your work after hours. The evidence entered into this transcript identifies 5 hearings held on six incidents of like charges. This repeated behavior presents a troubling pattern. It identifies your total lack of regard for your obligations to protect your work after hours. There is an obvious intent on your part to use as many excuses as possible, to avoid responding to calls.

In the hearing held as a result of a missed call on January 6, 1998, and also in the hearing held on August 27, 1998, the issue of safety was brought up as part of the defense, among other reasons, as to why you were not available to accept the calls. A letter from Mr. Jerry Davis was presented, in which he indicates no one will be disciplined due to issues that directly compromise personal safety. That letter is endorsed by the management of Union Pacific Railroad. It is clearly demonstrated in the testimony found in the transcript as Mr. Herring would not give you a direct order to go after you voiced your safety concerns.

These situations however do not appear to be the result of you simply taking the safe course of action. You presented numerous reasons why you could not take the calls. In the latest incident, you indicated it would not be safe for you to go later either, as Mr. Herring tried to work out acceptable solutions.

The company has demonstrated its' willingness to be very flexible, even beyond negotiated contractual obligations, in an effort that you may meet your obligation to protect your work after normal working hours and take call-outs.

pg 60 - Mr. Bracken had already issued me instructions on Friday that it was okay if I called a taxi.
pg 20 - …he made some mention of mileage for his personal vehicle not being adequate.

The action plan that was entered into the transcript, indicates very clearly, the company's expectations and intent. You were informed that further infractions could result in severe penalties, including permanent dismissal. You were informed that notifying the person designated, that you were not available during the course of being dispatched was unacceptable and may be construed as being in violation of Rules 1.13, 1.15, 1.6-3. It was also indicated that failure to follow the said instructions and rules would be considered insubordination.

The defense presented on your behalf clearly pointed out that there was no vulgarity or raised voiced at any time. However these are only a couple of items that constitute insubordination. From the glossary of the upgrade manual, the following description is labeled insubordination:



UPFULBRIGHT

CONFIDENTIAL

When an Employee's actions or statements indicate a refusal to carry out the clear instructions of a supervisor (as opposed to a failure for cause) which are work, safety or policy- related and which conform to accepted Company and industry practice, or when an employee demonstrates gross disrespect towards a supervisor.

I sent two letters to you in association to the hearings which I conducted on January 28, 1998. These letters were given to you as a courtesy in hopes that you would realize the seriousness of your behavior and possibly make suitable corrections. You received an action plan on August 14, 1998, clearly spelling out the seriousness of your actions and the expectations and intent of the Railroad. By refusing the very next call with numerous excuses, it appears to me that you blatantly hold yourself exempt of your contractual obligation of after hour call-outs. I therefore find you guilty of the charges identified, including insubordination. You are hereby assessed with a level 5 in accordance with Union Pacific Railroad's upgrade policy. Therefore you are terminated as an employee of the Union Pacific Railroad. You are instructed to return any and all Union Pacific Railroad property to Mr. Bob Herring.

Sincerely,

Richard D. Green
Regional Manager Telecommunications

cc:
Joe Anousakes
Bob Herring
Fred Sevenants
Andrea Gansen

UPFULBRIGHT

CONFIDENTIAL

**SPECIAL BOARD OF ADJUSTMENT NO. 1047**

AWARD NO. 29
NMB CASE NO. 29

**PARTIES TO THE DISPUTE:**

Brotherhood of Railroad Signalmen

- and -

Union Pacific Railroad

**STATEMENT OF CLAIM:**

> Claim on behalf of Claimant J. M. Fulbright (SSN: to clear his record of discipline assessed September 1, 1998, resulting in his dismissal from service and return him to his former position with compensation for any actual wage loss.

**OPINION OF BOARD:**

At the time of the events leading to this claim, Claimant was employed by Carrier as a Communications Technician position, headquartered at Fort Worth, Texas. On August 14, 1998, Claimant had participated in a corrective action plan (an eight-hour paid workshop), stemming from a previous discipline for failing to take a call to cover service on a prior date. On August 17, 1998, Claimant was called to restore service and refused the call, alleging that he had not had enough sleep to be able to work safely. An investigation was held on August 27, 1998, following which Claimant was dismissed from Carrier's service.

The Organization asserts that Claimant was not afforded a fair and impartial hearing. The Board has reviewed the testimony on the record carefully and finds no basis for such an inference. The Organization also insists that Claimant was unreasonably charged and dismissed. They maintain that claimant did not refuse a direct order and, therefore, was not

UPFULBRIGHT

CONFIDENTIAL



insubordinate. The Organization also points out that Claimant had been treated for a sleep disorder and told the caller that he could not work safely because he had had only two hours sleep the previous night.

Unrefuted testimony on the transcript indicates that Claimant had been previously treated for a sleep disorder. However, testimony also establishes that he had been treated by his physician and returned to work with no restrictions. It is also clear from testimony on the transcript that Carrier did not "demand" that Claimant go out on the call (Tp. 33). However, Claimant testified that the Carrier officer had "made it clear" that they wanted him to go out on the call (Tp. 48). There is also evidence on the record that Claimant stated he would not be more able later, and "besides that [he was] not going to take that personal vehicle out, not being fully covered per Company policy on [his] vehicle insurance." Testimony on the record also reveals that Claimant was clearly instructed regarding the correct procedures and requirements regarding taking a call as a result of the "action plan" formulated for him following his previous discipline.

A thorough review of the transcript reveals problems on both the Carrier's and Claimant's part during the incident giving rise to this case. Carrier's representative did not ask Claimant to elaborate on the "safety issues" he was concerned about, and apparently did not give Claimant a direct order, per se. Notwithstanding, Claimant's excuses are not persuasive, and his testimony seeks to place the blame on the Carrier for failing to make the procedures for responding to calls clear to him.

In light of the obvious muddle of facts surrounding this case, the ultimate discipline of discharge is overly harsh. However, there is no question that Claimant shares a large measure



UPFULBRIGHT

CONFIDENTIAL

AWARD NO. 29
NMB CASE NO. 29



of culpability in creating that muddle, and was not so naive regarding the proper procedures as he at first maintained in his testimony. Accordingly, the Board finds that he shall be returned to service on a last chance basis, but with no back pay for time out of service.

**AWARD**

Claim sustained only to the extent set forth in the above Opinion.

Elizabeth C. Wesman
Elizabeth C. Wesman, Chairman

J.O. McArthur
Union Member

W.E. Naro
Company Member

Dated at 1/24/2000

UPFULBRIGHT

**From:** CN=Terry D. Neal/O=UPC
**To:** CN=Joe M. Fulbright/O=UPC
**Sent:** 11/17/2014 08:03:15 AM
**Cc:** CN=Neal J. Spencer/O=UPC@UP;CN=Stephen T. Hale/O=UPC@UP
**Bcc:** CN=Terry D. Neal/O=UPC
**Subject:** Expectations

Joe,
Per our conversation this morning.

You missed two calls this weekend.

**#24 UP-05270110**

| Ticket: | UP-05270110 | Location: | AEI1282 FH012 | City ST: | BISBEE - MIDLOTHIAN TX | Open D/T: | 16-NOV-14 |
|---|---|---|---|---|---|---|---|

**#31 UP-05270149**

| Ticket: | UP-05270149 | Location: | WEATHERFORD RADIO SITE | City ST: | WEATHERFORD TX | Open D/T: | 16-N |
|---|---|---|---|---|---|---|---|

I understand that when you take your sleep medicine, driving is out of the question. That is the reason that I dispatched Mr Hines on the two tickets.
You need to understand that I have a to make sure that we have personnel available to cover after hour emergency restoration of service. You also need to understand that other employees are covering for you when you cannot take your calls.

I need you to work within the medical department and submit a document to me stating your medical limitations.

******************************
Terry Neal
Manager Telecom Facilities
3250 Kimzey St
Ft. Worth, Tx 76107
Office: 817 353 7237
Cell: 817-313-5317
Fax: 402 997 3547
*Do everything without grumbling or arguing (Philippians 2:14 NIV)*

*"A group becomes a team when each member is sure enough of himself and his contributions to praise the skills of others"*

UPFULBRIGHT

# TRM UP-05352044

**Current User:** ICOM045

**Page Generated:** 09/16/2015 09:29

Actions

## Details

**User:** Noc, Noc (noc )
**Phone:** 544-4674
**Status:** Closed on 01/27/15 08:23
**Opened:** 01/25/15 19:18

**Category:** NOC TRAIN OPERATIONS / TRAINOPS / AEI / NO TRAINS REPORTING AT ALL
**Severity:** 1 - Critical
**AEI Site:** AEI0758 (TTN)
**Device Status:** OP
**Location:** AEI758 TP250 FORT WORTH CENTENNIAL PULLOUT #2 TX

## Description

AL Luna called to report AEI site 0758 is not functioning properly. Antenna 1 is not reading any tags and antenna 0 is also missing tags here and there which causes the site to not recognize cars. WD reads are 12, 13, 9, 8 and has red boxes which is normal as per AEI database. No discarded and reversed out trains. Called Ft. Worth Trim Yardmaster and confirmed site is not working properly.

## Work History

| Date | User | Comment |
|---|---|---|
| 01/25/15 19:35 | Shrestha, Sayuj | Left VM to Joe Fulbright in his tie-up phone number as cell phone and home phone which is same gives a busy signal. |
| 01/25/15 19:36 | Shrestha, Sayuj | Per the preference or on-duty status of the manager (TERRY NEAL), no notification was sent |
| 01/25/15 20:13 | Shrestha, Sayuj | Called Joe again in his tie up number 817-733-0427 and left him a message with the issue details and the number of NOC to call us back. His cell phone and home number listed 817-915-8449 gives a busy signal. |
| 01/25/15 20:14 | Shrestha, Sayuj | Talked to Terry and told to call Edgar. |
| 01/25/15 20:19 | Shrestha, Sayuj | Ed Hines is heading to site to check the antennas. |
| 01/25/15 20:21 | Shrestha, Sayuj | Per the preference or on-duty status of the manager (TERRY NEAL), no notification was sent |
| 01/25/15 21:10 | Shrestha, Sayuj | Ed Hines got to the site. He said mount is broken for the antenna but antenna seems okay including coax. Both antennas are low profile. He has rebooted the IDT site for now. He has to come back with help later to check if it does not work. Monitor fo r now. |
| 01/26/15 05:47 | Conover, Sean | Only one train with locomotive ID passed site and missed two tags out of 95. Continue to monitor. |
| 01/26/15 05:54 | Conover, Sean | Ant 1 did not read any tags. |
| 01/26/15 05:59 | Conover, Sean | NOC called JOE FULBRIGHT for dispatch, left vx on number 817-733-0427 |
| 01/26/15 06:03 | Conover, Sean | Called Terry Neal, he said to dispatch Ed Hines. NOC spoke with Ed, they had plans to go back and work on the site this morning. |
| 01/26/15 06:05 | Conover, Sean | Per the preference or on-duty status of the manager (TERRY NEAL), no notification was sent |
| 01/26/15 14:34 | Wertzberger, Jacob | Seeing couple pairs of locos go by this AM. No trains since tech dispatch. Requesting update from tech/ Ed. |
| 01/26/15 14:45 | Scherer, Theodore | Comtech reports the antenna was torn off. Rebuilt antenna set-up. Waiting for train to go by to verify. |
| 01/26/15 16:10 | Thompson, James | Tech used train that was close by to help verify that the site was working, the antennas read ok but it looked like WD needed to be calibrated. Train that passed and has a WD sequence of 1, 0, 1, 0..... |
| 01/26/15 16:48 | Shrestha, Sayuj | Ed called back. He has calibrated WD now. Will monitor for traffic. |
| 01/27/15 08:22 | GABRIELLE WETHOR | Per AEI site database diagnostics are looking up to standards. Closing ticket |
| 01/27/15 08:23 | GABRIELLE WETHOR | An email was sent to the NCSCAEITLMAINT group to inform them that this ticket is now CLOSED, and Site AEI0758 should be returned to service. |
| 01/27/15 08:23 | GABRIELLE WETHOR | Rebuilt antenna set up and recalibrated WD |

**Time Metrics**

| User | Notify | Dispatch | Start | Finish | Release | Reason |
|---|---|---|---|---|---|---|

UPFULBRIGHT

UP-05352044

| User | Notify | Dispatch | Start | Finish | Release | Reason |
|---|---|---|---|---|---|---|
| Hines Jr, Edgar | 01/25/15 20:20 | 01/25/15 20:20 | 01/25/15 20:45 | 01/25/15 21:10 | 01/25/15 21:10 | Problem Fixed - Monitor |
| Hines Jr, Edgar | 01/26/15 06:03 | 01/26/15 06:03 | 01/26/15 06:03 | 01/26/15 16:48 | 01/26/15 16:48 | Problem Fixed - Monitor |
| Fulbright, Joe | 01/25/15 19:35 | | | 01/25/15 20:20 | 01/25/15 20:20 | Tech Did Not Respond |

Dispatch History

UPFULBRIGHT

## *FORMAL CONFERENCING/TRAINING*

Date: 01/26/15
Name: Joe M. Fulbright
Employee ID: 0443299

Check One:
__ Conference result of Employee option
X Conference result of Mutual Consent All Parties
__ Training result of Employee Option
__ Training result of Mutual Consent All Parties

Mr./Ms. Joe M. Fulbright
This is to confirm our conference on Jan 26, 2015 at 3:45 AM/PM
At the Radio Shop Davidson Yard in connection with events described below.
Location

Description of Event:

- Failure to take after hour call on 01/25/15. Ticket #05352044 Omaha NOC called Joe Fulbright twice at 7:35 pm and left vm, Called again at 8:13 and left Vm. NOC called manager Terry Neal, who instructed to call Edgar Hines. Terry Neal called Joe Fulbright at 8:11 and left message. Did Call back in 24min Phone Record JF
- Terry Neal received a call from Joe Fulbright around 6:15 am on Jan 26, Joe stated he did not hear manager call due to taking sleep medicine. Manager Neal told Fulbright that we would be written up on formal conference, and he might want a Union Rep Present

Rules discussed:

**1.16:Subject to Call**

Employees subject to call must indicate where they can be reached and must not be absent from their calling place without notifying those required to call them.

**Rule Updated Date**

April 7, 2010

X I agree to have a conference.
__ I decline to have a conference
__ I agree to C.O.R.E Training.
__ I decline C.O.R.E Training

Employee signature

Manager signature

Mgr Telecom
Title

NOTE: This letter is NOT a form of discipline and will not be used in any subsequent disciplinary proceedings as evidence the employee previously allegedly violated the rules cited (except as explained at NOTE on Page 4 of this policy

UP-OSHA0047

UPFULBRIGHT002029
UPFULBRIGHT000951



UPFULBRIGHT

Union Pacific Rules

# UPRR - General Code of Operating Rules

**Seventh Edition**
**Effective April 1, 2015**
**Includes Updates as of June 19, 2019**
**PB-20280**

1.0: GENERAL RESPONSIBILITIES
2.0: RAILROAD RADIO AND COMMUNICATION RULES
3.0: Section Reserved
4.0: TIMETABLES
5.0: SIGNALS AND THEIR USE
6.0: MOVEMENT OF TRAINS AND ENGINES
7.0: SWITCHING
8.0: SWITCHES
9.0: BLOCK SYSTEM RULES
10.0: RULES APPLICABLE ONLY IN CENTRALIZED TRAFFIC CONTROL (CTC)
11.0: RULES APPLICABLE IN ACS, ATC AND ATS TERRITORIES
12.0: RULES APPLICABLE ONLY IN AUTOMATIC TRAIN STOP SYSTEM (ATS) TERRITORY
13.0: RULES APPLICABLE ONLY IN AUTOMATIC CAB SIGNAL SYSTEM (ACS) TERRITORY
14.0: RULES APPLICABLE ONLY WITHIN TRACK WARRANT CONTROL (TWC) LIMITS
15.0: TRACK BULLETIN RULES
16.0: RULES APPLICABLE ONLY IN DIRECT TRAFFIC CONTROL (DTC) LIMITS
17.0: RULES APPLICABLE ONLY IN AUTOMATIC TRAIN CONTROL (ATC) TERRITORY
18.0: RULES APPLICABLE ONLY IN POSITIVE TRAIN CONTROL (PTC) TERRITORY
GLOSSARY: Glossary

UPFULBRIGHT

For business purposes only. Unauthorized access, use, distribution, or modification of Union Pacific computer systems or their content is prohibited by law.

Union Pacific Rules

UPRR - General Code of Operating Rules

# 1.0: GENERAL RESPONSIBILITIES


- 1.1: Safety
- 1.1.1: Maintaining a Safe Course
- 1.1.2: Alert and Attentive
- 1.1.3: Accidents, Injuries, and Defects
- 1.1.4: Condition of Equipment and Tools
- 1.2: Personal Injuries and Accidents
- 1.2.1: Care for Injured
- 1.2.2: Witnesses
- 1.2.3: Equipment Inspection
- 1.2.4: Mechanical Inspection
- 1.2.5: Reporting
- 1.2.6: Statements
- 1.2.7: Furnishing Information
- 1.3: Rules
- 1.3.1: Rules, Regulations, and Instructions
- 1.3.2: General Orders
- 1.3.3: Superintendent Bulletins, Instructions, and Notices
- 1.4: Carrying out Rules and Reporting Violations
- 1.4.1: Good Faith Challenge
- 1.5: Drugs and Alcohol
- 1.6: Conduct
- 1.6.1: Motor Vehicle Driving Records
- 1.6.2: Notification of Felony Convictions
- 1.6.3: Notification of Deteriorating Vision or Hearing
- 1.7: Altercations
- 1.8: Appearance
- 1.9: Railroad Company
- 1.10: Games, Reading, or other Media
- 1.11: Sleeping
- 1.11.1: Napping
- 1.12: Weapons
- 1.13: Reporting and Complying with Instructions
- 1.14: Employee Jurisdiction
- 1.15: Duty - Reporting or Absence


UPFULBRIGHT

- 1.16: Subject to Call
- 1.17: Hours of Service Law
- 1.18: Unauthorized Employment
- 1.19: Care of Property
- 1.20: Alert to Train Movement
- 1.21: Occupying Roof
- 1.22: Unauthorized Persons
- 1.23: Altering Equipment
- 1.23.1: Locomotive-Mounted Safety Devices
- 1.24: Clean Property
- 1.25: Credit or Property
- 1.26: Gratuities
- 1.27: Divulging Information
- 1.28: Fire
- 1.29: Avoiding Delays
- 1.30: Riding Engine
- 1.31: Repairs to Foreign Cars
- 1.32: Overheated Wheels
- 1.33: Inspection of Freight Cars
- 1.34: Flat Spots
- 1.35: Dump Doors
- 1.36: Excessive Dimension Loads
- 1.37: Open Top Loads
- 1.38: Shipments Susceptible to Damage
- 1.39: Accuracy of Speed Indicator
- 1.40: Reporting Engine Defects
- 1.41: Engines Coupled to Occupied Passenger Cars
- 1.42: Trains Detoured
- 1.43: Stopped in Tunnels
- 1.44: Duties of Train Dispatchers
- 1.45: Duties of Control Operators and Operators
- 1.46: Duties of Yardmasters
- 1.47: Duties of Crew Members
- 1.47.1: Cab Red Zone
- 1.47.2: Training and Familiarization
- 1.48: Time


UPFULBRIGHT

## 1.1: Safety

^Top

## 1.6: Conduct

Employees must not be:

1. Careless of the safety of themselves or others
2. Negligent
3. Insubordinate
4. Dishonest
5. Immoral
6. Quarrelsome
   or
7. Discourteous

Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported. Indifference to duty or to the performance of duty will not be tolerated.

**Rule Updated Date**

April 7, 2010

^Top

## 1.6.1: Motor Vehicle Driving Records

A certified conductor, engineer, employee seeking initial certification or employees qualified to drive commercial motor vehicles must report any arrest, citation or conviction to an employee assistance representative at (800)779-1212, within 48 hours for:

- Operating a motor vehicle while under the influence of or impaired by alcohol or a controlled substance.
- Refusal to undergo such testing when a law enforcement official seeks to find out whether a person is operating under the influence of alcohol or a controlled substance.

State-sponsored diversion programs, guilty pleas, and completed state actions to cancel, revoke, suspend, or deny a driver's license are considered convictions as applied to this rule.

**Rule Updated Date**

April 1, 2015

**System Special Instructions**

Effective Date: April 1, 2015

UPFULBRIGHT

- Employee must request a nap from their immediate supervisor and identify the location where the nap is to take place. The supervisor may grant the request if doing so does not jeopardize the safety of employees, the public or train operations. In no case may the employee nap foul of any track or in an area where equipment is operating.
- Before napping is allowed **on maintenance of way equipment:** The operator of the equipment must ensure the equipment is properly tied down, secured against movement and adequately ventilated.
- When on a road in a company vehicle, at least one employee in addition to the employee driving the vehicle must stay awake to help the driver identify potential hazards ahead.

**Rule Updated Date**

May 2, 2016

**System Special Instructions**

Effective Date: May 2, 2016

^Top

## 1.12: Weapons

While on duty or on railroad property, employees must not have firearms or other deadly weapons, including knives with a blade longer than 3 inches. However, railroad police are authorized to possess firearms in the course of their work.

**Application**:

Also refer to UPRR Policy to Address Violence & Abusive Behavior in the Work Place. Access the policy by using the link: http://home.www.uprr.com/emp/ec/policy/violence.shtml

**Rule Updated Date**

April 1, 2015

**System Special Instructions**

Effective Date: April 1, 2015

^Top

## 1.13: Reporting and Complying with Instructions

Employees will report to and comply with instructions from supervisors who have the proper jurisdiction. Employees will comply with instructions issued by managers of various departments when the instructions apply to their duties.

**Rule Updated Date**

April 7, 2010

UPFULBRIGHT

^Top

## 1.14: Employee Jurisdiction

Employees are under the jurisdiction of the supervisors of the railroad they are operating on. When operating on another railroad, unless otherwise instructed, employees will be governed by:

- Safety rules, air brake and train handling rules and hazardous materials instructions of the railroad they are employed by.
- The operating rules, timetable and special instructions of the railroad they are operating on.

**Rule Updated Date**

April 7, 2010

^Top

## 1.15: Duty - Reporting or Absence

Employees must report for duty at the designated time and place with the necessary equipment to perform their duties. They must spend their time on duty working only for the railroad. Employees must not leave their assignment, exchange duties, or allow others to fill their assignment without proper authority.

Continued failure by employees to protect their employment will be cause for dismissal.

**Rule Updated Date**

April 7, 2010

^Top

## 1.16: Subject to Call

Employees subject to call must indicate where they can be reached and must not be absent from their calling place without notifying those required to call them.

**Rule Updated Date**

April 7, 2010

^Top

## 1.17: Hours of Service Law

Employees must be familiar and comply with the requirements of the federal hours of service law, including accurate reporting. Employees are expected to use off-duty time so they are prepared for work.

UPFULBRIGHT

# Medical Comments History

**Employee ID:** 00251592 ( Joe M Fulbright )

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Nov 10, 2016 **Time:** 10:51:32 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Spoke with Tarry Johnnson LR who states that this case is in arbitrationand could come up in 1 day or 5 years. States that Labor Relations doessend correspondences to the Union regarding decisions and requests andcommunication regarding this case. Spoke with Deb Gengler and Dr Hollandregarding this case and why reopened the manager referral case. Notedthat this can be closed since this was not 3 MD Panel and via LR CBA doesnot allow for 3MD panel. This case is in Arbitration through Chicago. tr

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Nov 10, 2016 **Time:** 10:27:03 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

11.10.2016 TC to EE LVM to inform that his request was denied from thissummer, informing purpose of this call is follow up to the request thissummer before closing his case. Wanting to make sure that he had receivedthe accommodations letter invite with 800 number to work with DPM group.tr

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Oct 13, 2016 **Time:** 2:41:53 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

This EE request started out as an email with Babette Griffin SR Managerand 3MD Panel which has now been denied per eHS note made by BridgetteZiemer FFD Nurse. I have a call out to the employee to determine whatcommunications have been made to him and his requests. I will inform himthat the 3MD panel was denied and he can work through his Union Rep butwill ask him what Health and Medical can do at this time point to answerhis questions since the 3MD Panel request is now declined/denied throughLR. Please advise if HMS Sends letter or if LR sends letter regardingthis request. I have a message out to the EE asking that he call todiscuss this case. Thank you, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Oct 13, 2016 **Time:** 2:37:56 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Setting this status because we need to know what the Employee isrequesting now that Bridgette Ziemer FFD Nurse has noted that the 3MDPanel Request was denied and closed by Labor Relations and CMO and sentthis case back to Manager Referral. LVM asking EE to please call todiscuss his case need to make sure that he has the communication that heneeds regarding this request and what his expectations/ asks are from theHealth and Medical Team. Awaiting call back from EE. tr

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Oct 12, 2016 **Time:** 11:37:32 AM **Created by:** 00469061 ( Bridgette Ziemer )

**Activity Comments**

3 DR Panel declined per LR and BA Case sent back to manager Referral formanagement on 10-6-2016-bz

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Oct 6, 2016 **Time:** 4:25:34 PM **Created by:** 00469061 ( Bridgette Ziemer )



UPFULBRIGHT

**Activity Comments**

No manager referral per CMO amd LR. bz

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 13, 2016 **Time:** 1:28:02 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

From: ffdmgrrefTo: Mary Jean Lempke/UPC@UP, Ashley L.Waddell/UPC@UPCc: John P. Holland/UPC@UP, Babette A.Griffin/UPC@UPDate: 07/13/2016 01:26 PMSubject: Joe Fulbright ( 00251592) please follow up with Dr Holland regarding your request This is a 3Doctor Panel per your notes in eHSSent by:Theresa A. RodinoHelloJean. Dr Holland closed the activity you sent to him noting that heneeded more information to review for this case. Could you please followup with Dr Holland? It looks like this is a 3 Doctor Panel Request fromLabor Relations and the clock is running on this case forresponse. Thanks Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 13, 2016 **Time:** 1:02:32 AM **Created by:** 00435995 ( John Holland )

**Activity Comments**

It is unclear what action if any is needed for this case. I will conferwith teh FFD Nurse and determine what are the driving factors in thecaseJohn Holland

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 27, 2016 **Time:** 9:39:52 PM **Created by:** 00464275 ( Mary Jean Lempke )

**Activity Comments**

6/27/16 Email to CMO re: Ee request for re-consideration of his workrestrictions (sudden incapacitation) set 6/25/15--EE at this time refusedto pay for a sleep study requested by the AMD. JL

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 27, 2016 **Time:** 9:34:29 PM **Created by:** 00464275 ( Mary Jean Lempke )

**Activity Comments**

(late Entry)From: Mary Jean Lempke/UPCTo: John P.Holland/UPC@UPCc: Babette A. Griffin/UPC@UPDate: 06/03/2016 03:41PMSubject: FulBright 251592[attachment "00251592 J FulbrightManager Referral completed form 1-26-15.pdf" deleted by Mary JeanLempke/UPC] [attachment "00251592 J Fulbright MD Clinic Note 11-20-14Insomnia-Trazadone-Chantix ordered.pdf" deleted by Mary Jean Lempke/UPC][attachment "00251592 Fulbright_Joe_Signed_RestrictionReviewForm_06-29-2015.pdf" deleted by Mary Jean Lempke/UPC] [attachment "00251592 JFulbright EHS COMMENTS Jan-July 2015.pdf" deleted by Mary JeanLempke/UPC] [attachment "00251592 J Fulbright Demographic Personal Cover3-31-16.pdf" deleted by Mary Jean Lempke/UPC] [attachment"00251592_Fulbright_Joe_ManagerConcern_05-22-2015.pdf" deleted by MaryJean Lempke/UPC] 6/3/16 Records to CMO for review. JL

---

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation

**Case Type:** **Service Type:**

**Created on:** Jun 20, 2016 **Time:** 3:37:06 PM **Created by:** 00422236 ( Daniel Fischer )

**Consultation Date Performed:** Jun 20, 2016 **Performed By:** 00422236 ( Daniel Fischer )

**Consultation Comments**

correction - Terry we spoke about services, yet I rerred him to Babette,FFD.

---

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation

**Case Type:** **Service Type:**

**Created on:** Jun 20, 2016 **Time:** 3:08:20 PM **Created by:** 00422236 ( Daniel Fischer )



UPFULBRIGHT

**Consultation Date Performed:** Jun 20, 2016 **Performed By:** 00422236 ( Daniel Fischer )

**Consultation Comments**

return call to manager Jerry Neal at 817-353-7237; RTMW shows closed case.

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 6, 2016 **Time:** 10:47:33 AM **Created by:** 00464275 ( Mary Jean Lempke )

**Activity Comments**

6/6/16 Dr. Holland:Per our case discussion on June 3, 2016:BabetteGriffin contact Labor Relations - Tarry Johnson who responded by emailthis case is not a 3 Doctor Panel.JeanLempke, RN BSN

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 6, 2016 **Time:** 10:45:11 AM **Created by:** 00464275 ( Mary Jean Lempke )

**Activity Comments**

6/3/16 Case conference with CMO/Babette Griffin/FF Nurse, JL. Babette willdiscuss with Labor Relations the status of this case. From: Tarry D.Johnson/UPCTo: Babette A. Griffin/UPC@UPCc: John P. Holland/UPC@UP, DebA. Gengler/UPC@UP, Terrill L. Maxwell/UPC@UPDate: 06/06/2016 09:58AMSubject: Joe Fulbright (EID#0251592) No Request for 3 Doctor Panel ;Case listed for Arbitration at 2nd Division by UnionMs. Griffin,Asfollow up to our conversation regarding the above referenced employee thismorning, I have reviewed the appeal letters submitted by the Brotherhoodof Railroad Signalmen (BRS) Vice General Chairman Joseph (Harry) Doucet inwhich he alleged a violation of Rules within the Telecom Agreement. TheUnion did not request a 3 Doctor panel review at anytime during the appealprocess for Mr. Fulbright. As a side note the Agreement under which Mr.Fulbright works (Telecom) does not contain the right to a 3 Doctor panelwithin it. This case was listed by the Union for Arbitration at the 2ndDivision. Director Maxwell and I are currently drafting the brief for thisBoard. It is likely that this case will be heard by late summer or earlyfall. If you have any further questions please let me know. Thanks foryour help and time.Tarry Don (T.D.) JohnsonLabor RelationsOfficer 1400 Douglas St. STOP 0710Omaha, NE 68179(402)-544-2084(work)(402)-233-2634 (fax)tdjohnso@up.com6/6/16From: Babette A.Griffin/UPCTo: Mary Jean Lempke/UPC@UPDate: 06/06/2016 10:00AMSubject: Fw: Joe Fulbright (EID#0251592) No Request for 3 Doctor Panel; Case listed for Arbitration at 2nd Division by UnionPlease update ineHSJL

---

**Case Number:** 000001293558 **Service Number:** 1001461283 **Category:** Service

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 6, 2016 **Time:** 10:45:11 AM **Created by:** 00464275 ( Mary Jean Lempke )

**Service Comments**

NO CHANGE IN DECISION THIS IS NOT 3 DOCTOR PANEL REQUEST AND CASE IS IN ARBITRATION THROUGH CHICAGO. LR HAS COMMUNICATED WITH UNION. TR

---

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation

**Case Type:** **Service Type:**

**Created on:** Mar 14, 2016 **Time:** 10:43:09 AM **Created by:** 00415681 ( Mary Gallardo )

**Consultation Date Performed:** Aug 26, 2015 **Performed By:** 00415681 ( Mary Gallardo )

**Consultation Comments**

Updates sent to efile on 3/14/16. MG

---

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation

**Case Type:** **Service Type:**

**Created on:** Aug 26, 2015 **Time:** 3:17:36 PM **Created by:** 00415681 ( Mary Gallardo )

**Consultation Date Performed:** Aug 26, 2015 **Performed By:** 00415681 ( Mary Gallardo )

**Consultation Comments**

EEO 933438 medical sent to efile, notes emailed to KR. MG

---

**Case Number:** 000001293558 **Service Number:** 1001385036 **Category:** Activity

UPFULBRIGHT

**Case Type:** FFD NON-REGULA **Service Type:** ACCOMMODATION

**Created on:** Jul 31, 2015 **Time:** 7:42:40 AM **Created by:** 00415681 ( Mary Gallardo )

**Activity Comments**

no response

---

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation

**Case Type:** **Service Type:**

**Created on:** Jul 9, 2015 **Time:** 1:39:37 PM **Created by:** 00415681 ( Mary Gallardo )

**Consultation Date Performed:** Jul 9, 2015 **Performed By:** 00415681 ( Mary Gallardo )

**Consultation Comments**

RM CID 931539 EEO medical sent to efile. Accomm letter, no voc. Notessent. MG

---

**Case Number:** 000001293558 **Service Number:** 1001385036 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** ACCOMMODATION

**Created on:** Jul 1, 2015 **Time:** 10:09:28 AM **Created by:** 00415681 ( Mary Gallardo )

**Activity Comments**

letter sent

---

**Case Number:** 000001293558 **Service Number:** 1001385036 **Category:** Service

**Case Type:** FFD NON-REGULA **Service Type:** ACCOMMODATION

**Created on:** Jul 1, 2015 **Time:** 10:09:28 AM **Created by:** 00415681 ( Mary Gallardo )

**Service Comments**

NO RESPOSNE

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 1, 2015 **Time:** 8:58:55 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

6.29.2015 EE spoke with Dr Charbonneau regarding the AMD Medical requestand completed conversation with he has submitted all the information thatis available. EE states that he is not going to see the sleep MD that theclinic he went to wanted to perform a sleep test and he has already beenevaluated for this with Trazadone as the effective medicine that works forhim. Please see the AMD note regarding the specifics of the discussion.The case was left with disccssion with EE that he has restrictions givenhe is continuing on trazadone and EE communicated that he would like tocontinue to work for UPRR and receptive to the accommodations committeefor consideration of a different position at UPRR that can accommodate hisrestrictions. If/when any new medical information made available to EE tosubstantiate request for re-evaluation of his restrictions EE will submitinformation and make request. Started accommodations discussion with EE. (late entry 6/29/2015) TR

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 1, 2015 **Time:** 8:55:21 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

6.29.2015 EE and Dr C discussed this and at this time EE states that wehave all that we are going to have regarding this question. EE statesthat he does not need a sleep study and that trazadone is the only thingthat works for him. If EE has updated or changed information he willprovide at that time. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 1, 2015 **Time:** 8:52:05 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**



UPFULBRIGHT

From: Theresa A. Rodino/UPCTo: Sheila Gniffke-Pribyl/UPC@UP, Terry H.Owens/UPC@UP, Mary E. Gallardo/ UPC@UPDate: 07/01/2015 08:51AMSubject: Joe. M. Fulbright EID 0251592 requesting accommodation of jobreassignment.EE: Joe. M. Fulbright EID 0251592 requesting accommodationof job reassignment. Please see the Restriction Review Form below signedby management unable to accommodate his restrictions in his current job.See the accommodations tab completed below and medically cleared withrestrictions notification. Thank you, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 1, 2015 **Time:** 8:43:02 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

LN to Sheila Gniffke Pribyl, Mary Gallardo and Terry Owens regarding EErequest. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 1, 2015 **Time:** 8:42:27 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

6.29.2015 Call with EE and AMD regarding determination and restrictions.EE interested in the accommodations committee for job reassignment. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 1, 2015 **Time:** 8:40:16 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Notification sent to work unit and received the signed restriction reviewfrom by managers with restrictions they are unable to accommodate. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jul 1, 2015 **Time:** 8:38:51 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

7.1.2015 received restriction review form unable to accommodate bymanagement. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 29, 2015 **Time:** 4:48:05 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, You and I contacted Mr. Fulbright this afternoon to advise himof the decision to impose sudden incapacitation restrictions.1 Youre-introduced me to Mr. Fulbright. He was aware of me and my position dueto our previous phone call of 4/21/15.2 I advise Mr. Fulbright that wewould pick up where we left off with the previous phone call. That wasacceptable to him.3 I reminded Mr. Fulbright that the plan leaving ourlast call was for him to contact his PCP and request a Sleep MedicineEvaluation. He stated that he had done so. He informed us that he went foran evaluation and was seen by an provider who was not a Sleep Medicinespecialist and could not address the medication issue. That providerwanted Mr. Fulbright to have a sleep study and some other tests before hesaw the specialist. Mr. Fulbright stated that his benefits had beenstopped and that he could not pay for the evaluations (He mentioned a costof $600.00), so nothing more has happened. Further, he made it clear thathe was not looking for someone to "take over my care." He reiterated fromour first call that he had gone to great lengths and significant expenseover the course of about 6 years to find the cause of his insomnia and geton the right treatment so he was not inclined to turn his care over tosomeone else. I advised him that we respected his choice and that wassomething between him and his doctor.4 I then advised the EE that basedupon the fact that there was no new information it was time to go forwardwith the Manager Referral FFD Process. I then summarized the suddenincapacitation restrictions.5 We then offered to answer any questionsthat he might have. He had only one. he wanted to know if we were awarethat he had been off work and not paid. I told him that we were aware thathe was off work. We had no information regarding his pay. Mr. Fulbrightthen explained that since 2010 he had volunteered to take call, with theunderstanding that he could refuse a call if he had taken his medication(Trazadone). He again stated that it is his position that the only thingthat has changed is the position of his new manager. He has had a meetingwith his manager and his union representative and that is theircontinuing position. It is his understanding that he cannot take Trazadoneand

UPFULBRIGHT

continue in his job. We explained that we can only assess the medicalissue, and that is how we determined that sudden incapacitationrestrictions are warranted at this point. He will FU administratively withhis union representative and his manager. Mr. Fulbright had no furtherquestions from me.5 I again advised Mr. Fulbright that we would reviewany subsequent medical information that he makes available to us, and thatwe will schedule another phone conference with him if needed or if herequests one.6 I then dropped off the call.Action:1 Medically FFDwith the previously outlined restrictions.2 He should be referred toDP&M Staff if the EE cannot work within the restrictions.Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 29, 2015 **Time:** 4:03:42 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, I am ready to discuss the restrictions with the EE. You havebeen trying to get in touch with him this afternoon. Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 29, 2015 **Time:** 10:03:31 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Dr C- We need to communicate the restrictions to EE, Work Unit has sentback the signed restriction review form they are not able to accommodateEE in his given job with these restrictions. Please review and advise.Thank you, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 29, 2015 **Time:** 10:02:04 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

6.29.2015 Signed Restriction Review Form Received. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 29, 2015 **Time:** 9:58:11 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

signed restriction review form. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 29, 2015 **Time:** 9:57:52 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

restriction review form. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 26, 2015 **Time:** 8:23:10 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

From: Theresa A. Rodino/UPCTo: Terry D. Neal/UPC@UPDate: 06/26/201508:22 PMSubject: Re: employee Joe Fulbright Restrriction Review FormAttached please review and send backHello Mr Neal: If you could pleasehave this review form reviewed, filled out and sent back regardingrestrictions it would be greatly appreciated. Please make sure yourappropriate management is agreed and signed off regarding whether or notyou are able to accommodate these restrictions and we will move forwardwith call to the Employee. Please call me if you have questions. Thankyou, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

UPFULBRIGHT

**Created on:** Jun 26, 2015 **Time:** 8:20:14 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

This is restriction Review Form Sent to Management. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 26, 2015 **Time:** 8:03:10 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

resent restriction form to Terry Neal due to system error.

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 26, 2015 **Time:** 8:02:28 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

resent this form since SPAN written by eHS system all over the form makingit unreadable. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 26, 2015 **Time:** 7:55:10 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Work Restrictions Sent to Work Unit Management for Review if able toaccommodate in EE given job. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Medical Conclusions

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 26, 2015 **Time:** 7:54:00 PM **Created by:** 00458844 ( Theresa Rodino )

**Medical Conclusions Comments**

1. Not to operate company vehicles,on-track or mobile equipment, orfork-lifts.2. Not to work on rail trainsor work trains dumping ballast.(Can perform work remaining between therails of the occupied track or tothe field side of the occupied track.Where there are adjacent tracks withless than 19 foot track centers,utilize on-track safety protectionfollowing normal safety and Maintenanceof Way rules).3. Not to operatecranes, hoists, or machinery, if theseactivities might create a risk ofharm to others or a risk of catastrophicinjury to the employee.4. Not towork at unprotected heights, over 4 feetabove the ground (Can work on thebeds of trucks, and occupy bridgesfollowing normal safety rules).5. Notto work on 1-man or 2-man gangs(i.e., switch oiler, inspector, welder orhelper job, 2-man section gang).Must have at least 2 additional employeeson gang or at work area in orderto use Train Approach Warning regulations(Lookout).

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 26, 2015 **Time:** 12:41:33 AM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, Per our case review discussion:A This EE has still notcomplied with the agreement that he would work with his doctor to have aformal sleep medicine evaluation. Please advise him that the sleepmedicine evaluation is still required.B Because Trazadone is so longacting, he cannot take that medication and work for the ensuing 24hours.C We will employ sudden incapacitation restrictions until wereceive information that the EE is no longer taking the Trazadone, or isnot using it within 24 hours of reporting for work.D The employee isgiven the following work restrictions:1. Not to operate company vehicles,on-track or mobile equipment, or fork-lifts.2. Not to work on rail trainsor work trains dumping ballast. (Can perform work remaining between therails of the occupied track or to the field side of the occupied track.Where there are adjacent tracks with less than 19 foot track centers,utilize on-track safety protection following normal safety and Maintenanceof Way rules).3. Not to operate cranes, hoists, or machinery, if theseactivities might create a risk of harm to others or a risk of catastrophicinjury to the employee.4. Not to work at unprotected heights, over 4 feetabove the ground (Can work on the beds of trucks, and occupy bridgesfollowing normal safety rules).5. Not to work on 1-man or 2-man gangs(i.e., switch oiler, inspector, welder or helper job, 2-man section gang).Must have at least 2 additional employees on gang or at work area in orderto use Train Approach Warning regulations (Lookout). 6. If a new jobassignment is considered, outside of the Engineering Department, Healthand Medical Services must review the job requirements and determine if theemployee can

UPFULBRIGHT

safely perform the essential functions of the job.E Therestrictions will be ongoing until the conditions outlined above have beenmet.F We will close the case if we have no response from the EE within areasonable period of time.Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 19, 2015 **Time:** 11:14:51 AM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, This EE has not provided the medical records that we haverequested and we have not seen the results of a sleep medicine evaluationwhich we agreed to when you and I spoke directly with the EE.Action:1Remains NOT FFD.2 We still need the same information.3 Please calendarthis case for discussion with the CMO next week.Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 18, 2015 **Time:** 1:56:09 PM **Created by:** 00464275 ( Mary Jean Lempke )

**Activity Comments**

C6/18/15 Document request letter sent:Copy of the last 2 years ofphysician clinic notes (also known as office notes or progress notes) fromthe provider treating you for this condition and the Sleep evaluationstudy records. JL

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 18, 2015 **Time:** 1:49:37 PM **Created by:** 00464275 ( Mary Jean Lempke )

**Activity Comments**

6/18/15 TC to EE re: needing medical records that have beenrequested--Copy of the last 2 years of physician clinic notes (also knownas office notes or progress notes) from the provider. Requested EE RTC toHMS, JL. JL

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jun 18, 2015 **Time:** 9:11:51 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Dr C- This EE had sent us this letter in eHS from 5/22/2015 it is letterfrom EE. We have this case on our Manager Referral Case Review fortomorrow morning but please see this letter and advise. We have beenwaiting for information from EE and this letter is his response but it isnow almost 1 month old. With your last review on the same date I believeyou addressed this letter but please advise.Thank you, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** May 22, 2015 **Time:** 4:29:24 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, We have worked diligently with this EE to get the information weneed. We were both on the call when we asked him to get a sleep evaluationdue to the performance problems that this EE had at work. We cannotcontrol the verbiage that the EE used during a hearing. Our informationneeds to make the final FFD determination have not changed. Pleasereassure the manager that we continue to investigate the medical issue inquestion and nothing more. When we get the sleep evaluation information weshould be able to complete the FFD Process.Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** May 22, 2015 **Time:** 4:00:22 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

manager concern. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

UPFULBRIGHT

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** May 22, 2015 **Time:** 3:59:54 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Dr C- we are reviewing this case for the sleep disorder/ medicationconcern and have new note from the manager regarding a statement that EEhad made during a hearing. This is for your review and noted as other /manager concern in eHS medical file. This is the email note from themaanger Terry Neal: From: Terry D. Neal/UPCTo: Theresa A. Rodino/UPC@UP,Neal J. Spencer/UPC@UPDate: 05/20/2015 12:17 PMSubject: Fw: Scan fromIB20280Theresa, Per our conversation today:Below is an excerpt from adocument sent via BRS and Joe Fulbright to Neal Spencer (Gen DirTelecom)As I stated, The reason I referred Joe into the FFD was to get aruling on the sleep medication and Joe's medical condition.I havehighlighted the areas that I referred to in our conversationThank youfor your time and service to ouremployees.********************************Terry NealManager TelecomFacilities 1658 Rogers RoadFt. Worth, Tx 76107Office: 817 3537237Cell: 817-313-5317

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** May 20, 2015 **Time:** 10:40:19 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Call to EE discussed status of his Off Work EE states he has an apt onJune 1 2015 with Sleep specialist and this is for an evaluation not asleep test. EE will request the report and would anticipate HMS receiptof that report 7-10 business days after EE is seen. EE confirms that hehas HMS fax number and will send the report for his RTW determination. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** May 20, 2015 **Time:** 10:34:33 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

5.20.2015 Call to EE who states that he is to talk with a sleep medicinespecialist has an appointment on June 1, 2015 for the sleep specialistevaluation to talk about the drug that he is taking. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** May 20, 2015 **Time:** 10:31:50 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

5.20.2015 Spoke with EE manager Terry Neal informed that we had aconversation with EE and the UP Company MD. EE is complying and workingwith the company regarding a medical exam that our AMD requested normallythis will take a couple of weeks to set up so would expect the reportaround this time. Informed Terry that I have not spoken with EE sincelast month so will call him today regarding the status of this. Terrystates that EE has sent a note in part with his grievance regarding thismedical condition and that the RR has not been responsive to what the EEnotes in this note as "a life threatening medical condition" Terry statesthat this is the reason that EE was pulled from service and why the WorkUnit asking EE to be evaluated by HMS. Manager asking if we would likethat note from EE? Informed Manager sure that he could send the note,that the EE has spoken with our UP Company MD but Dr Charbonneau wouldalso look at the statement from EE own words regarding his condition.Informed Manager that EE is working with HMS regarding the medical andwould anticipate that we would have the report from the testing that EEwas having done soon and this should answer the questions that the companyMD had prior to his determination for this referral. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 21, 2015 **Time:** 6:20:03 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, You and I spoke directly to this EE this afternoon:1 Youintroduced me and I introduced myself and my position as a consultant toUPRR HMS.2 I briefly summarized the nature of the Manager Referral FFDProcess and the information which the EE had provided to this point.3 Iexplained that we were requesting permission to speak directly with hisPCP to request a Sleep Medicine Evaluation. I told the EE that we wantedto explain the safety considerations to his doctor and the reason that asleep medicine was needed.4 Without my asking for any medicalinformation, the EE explained that he has been dealing with depression andsleep problems for 10-15 years. After much frustration with lack ofefficacy, he found a psychiatrist who figured out that he had a vitaminB-12 deficiency. He reports that this caused a secondary low serotoninlevel in his hypothalamus. As a result, he was started on Trazadone andProzac, and presumably B vitamin



UP FULBRIGHT

supplementation. He has done much betterwith his insomnia ever since. The EE went to great lengths to explain thathe would never report for work, or even drive his car (he cited Texasstate law about that issue) after taking the medication. He states that heis awake and alert during the day because he can sleep well at night. Hetakes the medication anywhere from 3 to 4 up to 8 to 10 nights at a time.He states that he has been working around the on call issue for the 3-4years and states that it has become a problem only due to his currentManager's perspective on the matter. He specifically charged that hisManager had made false statements regarding his being impaired due to themedication, and one other issue. We both reassured the EE that no suchstatements had been made to us and no such information had been sent tous.5 We ended the conversation by telling the EE that we needed a formalSleep Medicine consultation, and that we would be satisfied if he wouldrelay that information to his PCP. In that case, I do not need to speak tohis PCP and no ROI is required.6 The EE agreed to consult his MD andrequest a formal Sleep Medicine Evaluation. We both explained to him thatthe Evaluation had to be performed by a Sleep Medicine Specialist (youtold him that twice).7 That ended our call.Action:1 We will rely onthe EE to get the Sleep Medicine Eval request made to his PCP, as hecommitted to doing this afternoon.2 We will await the report.3 Nochange in the previous plan. We will further the FFD Process after wereview the Sleep Medicine Evaluation. Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 20, 2015 **Time:** 10:38:15 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, I will be happy to visit with you and the EE tomorrow late in theafternoon. Right now, that time appears to work for me. We can discuss thecase briefly on the case review call. Basically, I just want to explainthe situation to the EE's provider and notify the provider why we want tosee a Sleep Medicine consultation. Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 20, 2015 **Time:** 4:15:51 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Dr C- EE would like to talk with you before he signs ROI for you to speakwith his MD. He is available at 5:00pm CST tomorrow on 4/21/2015 doesthat time work for you? Please advise. Thanks, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 20, 2015 **Time:** 4:10:50 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

4.20.2015 several calls to EE asking about the ROI. Informed that ourcompany MD asking to speak with his MD. EE states that he will thinkabout that. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 20, 2015 **Time:** 3:57:34 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

4.20.2015 Update Manager Terry Neal informed that EE is working with usand current status is that our Company MD would like to speak with EECallto EE at 817-301-3981

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 16, 2015 **Time:** 10:05:30 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

4.16.2015 Call to EE informed of above and reason for request that EE hasapparent sleep onset insomnia and UP Company MD would like to talk with EEprovider about sleep specialist and what is the tx plan. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 15, 2015 **Time:** 9:34:10 PM **Created by:** 00458844 ( Theresa Rodino )



UPFULBRIGHT

**Activity Comments**

ROI mailed to EE. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 15, 2015 **Time:** 1:28:18 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

ROI sent to EE requesting information ROI that UP Company MD may speakwith EE MD regarding his Sleep Disorder. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 14, 2015 **Time:** 5:38:46 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, Per our case review discussion:1 The EE is NOT FFD.2 Pleaseinstruct the EE that he will need to have a Sleep Medicine Evaluation aspart of this FFD Process. It is his responsibility to arrange thisevaluation.3 Please ask the EE to sign a release of information so thatI can talk to his PCP to explain the reasons for the safety concern andthe requirement of the evaluation by the Sleep MedicineSpecialist.Thanks. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 13, 2015 **Time:** 9:26:18 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, It looks lie this EE has been treated for sleep onset insomniafor at least the last one year. He has also had problems with a severeskin rash. Treatment has included Benadryl, but I cannot tell if that wasfor the rash or as an OTC sleep aid. He has also been taking oral steroidsat times.Action:1 Remains NOT FFD.2 We should discuss this case atthe time of our next case review call. I think that we may want toconsider a sleep medicine consultation.Thx. Dr. C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 13, 2015 **Time:** 11:07:00 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Dr C- We now have 24 pages of medical information for your review.Please review and advise. Thank you, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 13, 2015 **Time:** 11:06:21 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

4.413.2015 received 24 pages of medical information. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 13, 2015 **Time:** 11:05:59 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

24 pages of medical information. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Apr 10, 2015 **Time:** 10:04:17 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

UPFULBRIGHT

4.10.2015 Call to EE at phone provided by his fax. LVM informed onlyreceived 4 pages of the 29 page fax and that the only medical informationwas 1 pg to please re-fax or send the rest of his information. tr

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Apr 10, 2015 **Time:** 6:59:49 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

4.10.2015 Plan to call EE during business hours, also sending EErequesting medical information only received page 1 of the apparent 4 pageclinic note, asking him to refax. tr

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Apr 7, 2015 **Time:** 4:38:52 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, We discussed this case during our case review call today. As Iwrote immediately above, we need the complete note from this EE's clinicvisit.Thx. Dr C

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Apr 7, 2015 **Time:** 3:19:25 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, The EE has supplied only page #1 of a 4-page note. We cannot actwith inadequate/incomplete information. Let's discuss the case on the casereview call.Thx. Dr C

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Apr 6, 2015 **Time:** 1:18:09 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Dr C- this is the only note that EE has for his medical information.Please review and advise. Thank you, Theresa

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Apr 6, 2015 **Time:** 1:17:23 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

4.6.2015 received 1 page clinic note. tr

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Apr 6, 2015 **Time:** 1:17:04 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

1 page clinic note. tr

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Mar 31, 2015 **Time:** 6:52:51 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

From: Theresa A. Rodino/UPCTo: Terry D. Neal/UPC@UPCc: Deb A.Gengler/UPC@UP, Babette A. Griffin/ UPC@UPDate: 03/31/2015 06:48PMSubject: Joe Fulbright ( 00251592 ) no response to request for MedicalInformation by Health & MedicalHi Terry. We have not received theMedical Information that we had requested. We had sent EE out 2

UPFULBRIGHT

letters,one in January and then a follow up request in February with no response.I will consult with our Director Deb Gengler to see what the next step is. Show cause is used for Medical Leave's but this is different scenariobeing a manager referral so will ask for assist and direction from Deb andBabette Griffin.I have called EE again today and left a voice messageasking for the information.Thanks, TheresaTheresa Rodino RN,CCMFitness-for-Duty NurseFrom: Terry D. Neal/UPCTo: Theresa A.Rodino/UPC@UPCc:Neal J. Spencer/UPC@UPDate:03/31/2015 12:47PMSubject: Re: Manager Referral Form attached Hello Theresa,Hasthere been any progress on the Fulbright Medical EvaluationThankYou********************************Terry NealManager TelecomFacilities 1658 Rogers RoadFt. Worth, Tx 76107Office: 817 3537237Cell: 817-313-5317Fax: 402 997 3547

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Mar 31, 2015 **Time:** 6:51:49 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

3.31.2015 Call to EE cell phone, left detailed VM informing that we arewaiting for his medical information from last 2 years. Provided my callback number and fax number asking EE to please call back with statusupdate. LN to DCS and FFD Supervisor asking for direction no responsefrom EE by HMS requests for last 2 months. LN sent to Mgr Terry Nealinforming that EE has not responded to HMS request and asking Director andFFD Supervisor for direction. Awaiting medical records from EE. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Feb 27, 2015 **Time:** 6:26:27 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

letter resent to EE. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Feb 26, 2015 **Time:** 9:40:54 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

2.26.2015 Call to EE at 817-733-0427 answer machine confirms EE name. LVMasking EE for an update regarding where he is at in sending us his medicalrecords. Informed that we still do not have anything. Provided mycontact information again and call back phone number. Awaiting 2yrsMedical Information from EE. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Feb 11, 2015 **Time:** 9:59:28 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

2.10.2015 VM from EE states that he is trying to get something in writingregarding what information is needed for his return to work. tr2.11.2015 Call to EE at number he provided 817-733-0427 LVM informing EE that weneed the last 2 years of medical records from his provider(s) to pleasefax his actual doctor notes, medical records to 402-501-0067 and providedmy call back phone number 402-544-6769. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Feb 9, 2015 **Time:** 1:19:39 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

2.9.2015 CF EE at 12:51 pm 817-733-0427 and VM from EE regarding thismanager referral. 2.9.2015 1:00pm Call back to EE LVM asking EE to pleasecall me to discuss this concern. Provided the information from the letterthat we need the last 2 yrs of medical information and provided the faxnumber for EE to fax the information. Awaiting call from EE to discusswith EE and awaiting medication medical information. tr

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Feb 3, 2015 **Time:** 4:56:58 PM **Created by:** 00472608 ( Susan Cassiday )

UPFULBRIGHT

**Activity Comments**

Shirley J. Bear (00025372), Stephen T. Hale (00163148), Terry D. Neal(00166451), Scott F. Ochsner (00006978) notified of removal from service.RTC from Terry Neal and informed him. sc

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Feb 3, 2015 **Time:** 4:28:04 PM **Created by:** 00472608 ( Susan Cassiday )

**Activity Comments**

TC to EE and informed him of AMD and DCS decision to remove him fromservice. Left VM message for manager making referral, Terry Neal. Willsend out notifications. sc

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Feb 3, 2015 **Time:** 4:24:33 PM **Created by:** 00472608 ( Susan Cassiday )

**Activity Comments**

VM message received on 1/29/15 stating he was returning call fromTheresa. 2/2/15 RTC to EE regarding Manager Referral and AMDrecommendations. EE stated he does not have any issues being awake for hisregular work hours, but when he is on-call it is for 3 nights and he doesnot get good sleep without taking Trazadone. EE stated it is 75mg and hetakes it 3 out of 4 nights, except when he is on-call when he skips it thefirst 2 nights, but by the 3rd night EE stated he has to take it due tobeing too fatigued from lack of sleep. EE questioned need to be removedfrom service. I left VM message and e-mail message to AMD. sc

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Feb 3, 2015 **Time:** 4:14:31 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Susan, Per our discussion with Deb Gengler, RN today, there is no changeto the previous plan:1 The EE should be pulled from service.2 Pleaserequest the last two years of medical records from the EE.Thx. Dr C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Feb 1, 2015 **Time:** 9:15:09 AM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Theresa, We discussed this case with Dr Holland and Deb Gengler, RN lastweek. The EE is reportedly taking medications which impair his ability toremain alert at work. He has not responded to your request for contact:1This EE is NOT FFD and should be pulled from Duty.2 Per our discuss withthe CMO and DCS, please request the last 2 years of medical records fromall providers who have treated this EE.Thx. Dr C

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jan 29, 2015 **Time:** 9:36:13 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

Dr C- we have not been able to connect with this EE yet for the intakeassessment interview. However it is noted that EE is still working. Wehave sent a letter requesting medical information and medication list.Concerns are that EE cannot stay awake during the time that he is to be oncall and EE admits to manager taking medications that cause him to besleepy. Per our discussion and review of this manager referral pleaseadvise if the above is agreeable. Thank you, Theresa

---

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL

**Created on:** Jan 29, 2015 **Time:** 8:43:47 AM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

UPFULBRIGHT

1.28.2015 Call to EE LVM asking EE To please call back to discuss.Sending letter to EE requesting last 1 yr of medical information. tr

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Jan 27, 2015 **Time:** 6:24:16 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

This is the Manager Referral. tr

**Case Number:** 000001293558 **Service Number:** 1001321869 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** MANAGER REFERRAL
**Created on:** Jan 27, 2015 **Time:** 6:22:40 PM **Created by:** 00458844 ( Theresa Rodino )

**Activity Comments**

1.26.2015 CF Manager Terry Neal regarding his concerns that EE who workson call for telecom and restoration of services has missed some calls.That EE reports he takes medications that put him to sleep and prohibithim from waking up for calls after normal business hours. Manager statesthat this is concern especially since this is part of EE job to be oncall. Mgr has concerns that EE may have medical situation and asks forFFD review. tr

**Case Number:** 000001293558 **Service Number:** 0000000000 **Category:** Case
**Case Type:** FFD NON-REGULA **Service Type:**
**Created on:** Jan 27, 2015 **Time:** 6:22:40 PM **Created by:** 00458844 ( Theresa Rodino )

**Case Comments**

LOC. PHONE IS 817-301-3981

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Oct 23, 2014 **Time:** 9:28:50 AM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**

May RTW w/o restrictions

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Oct 22, 2014 **Time:** 5:37:39 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Jayne, Medically FFD for his Full Duty. Pls send the RTWNotification.Thx. Dr C

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Oct 21, 2014 **Time:** 2:56:17 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**

1. Joe Fulbright 251592, 53 yoa, lineman2. 8/27 Lt elbow ulnar nervedecompression3. Full duty release - need RTW wire4. JEDuValeus, RN636-795-5991

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation
**Case Type:** **Service Type:**
**Created on:** Oct 21, 2014 **Time:** 1:09:30 PM **Created by:** 00415681 ( Mary Gallardo )
**Consultation Date Performed:** Oct 21, 2014

**Consultation Comments**

UPFULBRIGHT

Onestop request CID 916953 medical sent to efile. MG

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Oct 13, 2014 **Time:** 5:29:23 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**

I spoke with EE informed what medical was needed for RTW review and agreedto recommend a short MLOA extension.

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Oct 13, 2014 **Time:** 5:27:39 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**

Supplied RTW note for 10/13 but nothing else

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Oct 13, 2014 **Time:** 5:23:28 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**

MLOA 9/10/14 - 10/20/14

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation
**Case Type:** **Service Type:**
**Created on:** Oct 13, 2014 **Time:** 3:46:34 PM **Created by:** 00440108 ( Rhonda Ross )
**Consultation Date Performed:** Oct 13, 2014

**Consultation Comments**

LN to DPM - RTWM/S2R: Just received a call from Mr. Fulbright whoindicates he has been released to RTW. There is a RTW release in hisfile. His contact # is 817.301.3981. He would appreciate a call back. Igave him Reggie's office # to contact as well. rlr

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Oct 9, 2014 **Time:** 9:39:44 AM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**

Did not respond to SC#1 ~ send SC#2.

**Case Number:** 000001238453 **Service Number:** 1001273902 **Category:** Consultation
**Case Type:** ODI **Service Type:** CASE MGMT DIS. PREVENT & MGMT
**Created on:** Oct 8, 2014 **Time:** 2:19:54 PM **Created by:** 00461750 ( Reginald Hardy Jr )
**Consultation Date Performed:** Oct 8, 2014

**Consultation Comments**

Telephone call to EE to inquire about medical status. EE advises last seenby treating provider 2 weeks ago. RTWM provided contact information tosubmit updated medical information.

**Case Number:** 000001238453 **Service Number:** 1001273902 **Category:** Service
**Case Type:** ODI **Service Type:** CASE MGMT DIS. PREVENT & MGMT
**Created on:** Oct 8, 2014 **Time:** 2:12:04 PM **Created by:** 00461750 ( Reginald Hardy Jr )

**Service Comments**

EE RTW FT/FD ON 10/23/2014.



UPFULBRIGHT

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Sep 18, 2014 **Time:** 2:52:16 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**
SC#1 is due 10/9/14

---

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Sep 17, 2014 **Time:** 7:43:21 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**
9/17/14 ~ He did not supply medical. Therefore I requested SC#1 be sent.

---

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Sep 17, 2014 **Time:** 7:42:45 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**
Please send SC#1

---

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Sep 13, 2014 **Time:** 11:22:55 AM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**
Mr. Fulbright called, left a message asking what medical information isneeded. I returned his call, informed him the needs to supply a currentdiagnosis, Tx plan, medications, level of function and ARTW date.

---

**Case Number:** 000001238453 **Service Number:** 1001258166 **Category:** Activity
**Case Type:** ODI **Service Type:** MEDICAL REVIEW ON DUTY INJURY
**Created on:** Aug 25, 2014 **Time:** 2:38:26 PM **Created by:** 00422380 ( Jayne DuValeus )

**Activity Comments**
MLOA 8/26/14 - 9/10/14

---

**Case Number:** 000001238453 **Service Number:** 0000000000 **Category:** Case
**Case Type:** ODI **Service Type:**
**Created on:** Aug 25, 2014 **Time:** 2:38:26 PM **Created by:** 00422380 ( Jayne DuValeus )

**Case Comments**
LASHANDA'S CASE

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER
**Created on:** Apr 23, 2014 **Time:** 10:29:03 AM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**
Scott F. Ochsner (00006978), Shirley J. Bear (00025372), Stephen T. Hale(00163148)- informed of medical release to RTW-PP

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity
**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER
**Created on:** Apr 23, 2014 **Time:** 10:25:20 AM **Created by:** 00447560 ( Pamela Pachaud )

UPFULBRIGHT

**Activity Comments**

Records received on 4/22/2014 supporting full duty release effective3/31/2014

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 22, 2014 **Time:** 5:42:43 PM **Created by:** 00415695 ( John Charbonneau )

**Activity Comments**

Pam, Medically FFD for his Regular Work, per his MD's release.Thx. Dr C

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 22, 2014 **Time:** 12:20:08 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

clinic note dated 3/27/2014

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 22, 2014 **Time:** 12:19:52 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

clinic note dated 2/3/2014

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 22, 2014 **Time:** 12:18:36 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

EE is a communications tech who was off work since Feb for a rash r/tallergy. Was on a series of steroids and has provided documentationsupporting full duty release effective 3/31/2014. Please review andadvise.-PP

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 17, 2014 **Time:** 1:32:36 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

duplicate medical releases

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 14, 2014 **Time:** 3:35:03 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

4/10/2014-Discussion with ee. Explained that HMS required entire medicalrecord for duration of MLOA. Asked ee to fax asap.-PP

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 14, 2014 **Time:** 3:33:45 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

SOS supporting RTW effective 3/31/2014

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

UPFULBRIGHT

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Apr 9, 2014 **Time:** 2:30:50 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

4/9/2014-Discussion with Terry Neal, informed that HMS has not receivedmedical documentation supporting RTW. He stated he would contact ee anddiscuss.He verified fax number and will provide to ee.-PP

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Mar 13, 2014 **Time:** 4:46:54 PM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

3/13/2014-Discussion with ee. Informed him that HMS did not have anymedical documentation to support MLOA. Advised ee to provide somethingfrom provider to HMSA asap.-PP

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Mar 12, 2014 **Time:** 10:33:14 AM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

3/3/2014-EE instructed to provide HMS with updated medical recordssupporting MLOA.-PP

---

**Case Number:** 000001192646 **Service Number:** 1001205419 **Category:** Activity

**Case Type:** FFD NON-REGULA **Service Type:** HEALTH CONDITION - OTHER

**Created on:** Mar 12, 2014 **Time:** 10:31:06 AM **Created by:** 00447560 ( Pamela Pachaud )

**Activity Comments**

2/24/2014-EE has only worked 6 days since 1/1/2014-Manager states he paidee vacation pay until ee exhausted it.-PP

---

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation

**Case Type:** **Service Type:**

**Created on:** Mar 3, 2014 **Time:** 9:16:14 AM **Created by:** 00447560 ( Pamela Pachaud )

**Consultation Date Performed:** Mar 3, 2014

**Consultation Comments**

3/3/2014-Received documentation from ee's physician stating that he iscleared to RTW effective 3/3/2014, however, ee states that he is notfeeling ready to RTW. HMS directed ee to f/u with his provider to discussMLOA extension and to provide HMS with documentation asap supportingMLOA.-PP

---

**Case Number:** **Service Number:** 0000000000 **Category:** Consultation

**Case Type:** **Service Type:**

**Created on:** Feb 26, 2014 **Time:** 3:38:43 PM **Created by:** 00447560 ( Pamela Pachaud )

**Consultation Date Performed:** Feb 26, 2014

**Consultation Comments**

2/26/2014-Returned ee's call-unable to leave vm.-EE inquiring if HMSneeded anything other than fax from his doctor to initiate MLOA. PP

---

UPFULBRIGHT

**Union Pacific Railroad**
Health and Medical Services

CONFIDENTIAL

UPFULBRIGHT

March 17, 2014

Joe M. Fulbright
807 Oakwood Drive
Euless, TX 76040-5260

**Employee ID: 00251592**
Employee Position: Sr Comm Technician

Dear Joe M. Fulbright:

Union Pacific Health & Medical Services (HMS) has been notified of your request for time off due to a medical reason. Based on the information reviewed:

[x ] A Medical Leave of Absence is recommended for the following dates

February 19, 2014 through April 14, 2014

In accordance with UPRR Safety Rule 90.4, you will require a Fitness-For-Duty (FFD) review prior to your return to work. This involves a review by Health & Medical Services of medical information related to your absence. Please provide the following information at least ten (10) business days prior to your anticipated return to work date OR to extend your Medical Leave of Absence which expires on the above noted date.

[x ] Copy of physician clinic notes (also known as office notes or progress notes) from the provider treating you for this condition.
[x ] Return to work release from your treating provider.
[x ] List of any limitations/restrictions and their duration.
[x ] List of current medications.

The requested medical records may be submitted to Health & Medical Services confidential fax line at 402-501-0067. Please use the enclosed bar coded cover sheet when faxing your information.

If you are having difficulty in obtaining the medical records in the requested time frame,



817 546-8672

UPFULBRIGHT000128

CONFIDENTIAL

UPFULBRIGHT

**Union Pacific Railroad**
Health and Medical Services

please contact your FFD nurse at number listed below. Following these steps will be helpful in ensuring that the medical records required are complete so the FFD review can take place as efficiently as possible. You and your manager will be notified when you have been medically cleared to return to work by Health & Medical Services.

If at any time you have questions regarding the Return to Work process, please contact your FFD nurse at Health & Medical Services at the number listed below.

Sincerely,

Pamela A. Pachaud
Fitness For Duty Nurse
Health & Medical Services
Union Pacific Railroad
1400 Douglas Street - STOP 0350
Omaha, NE 68179
Phone: 402-544-5234
Fax: 402-501-0067



UPFULBRIGHT000129

KANER
MEDICAL GROUP
Family Medicine that Cares about the Family

412 Northeast Main St Suite 100
Euless, TX 76039
817-358-5800

PATIENT: Joe Fulbright
DATE OF BIRTH: REDACTED
DATE: 03/27/2014 09:30 AM
VISIT TYPE: Office Visit
DOCUMENT TYPE: Chart Note

**History of Present Illness:**
This 53 year old male presents with:
1. rash

The patient presents for rash. The symptom(s) are described as improving. Affected area(s) are scattered on the body. The patient describes the affected area(s) as itchy. Denies aggravating factors. Relieving factors include oral steroids and topical steroids. Associated symptoms include crusting and pruritus.
shot helped, felt out of mind while pred effects were new, better, still needs B12, needs FMLA form

**Chronic Problems:**

**Past Medical/Surgical History:** (reviewed, updated)

| Condition | Year | Procedure/Surgery | Year |
|---|---|---|---|
| Bilat Carpal tunnel syndrome | 2009 | Bilat Carpal tunnel release | 2009 |
| gallbladder removal | 1990 | cholecystectomy | 1990 |
| Tonsillitis | 1965 | Tonsillectomy | 1965 |

**Active Medications**

| Start Date | Medication | Directions |
|---|---|---|
| | Benadryl Allergy 25 mg tablet | take 2 tablet by oral route every 4 - 6 hours as needed |
| 03/04/2014 | prednisone 20 mg tablet | take 1 tablet by oral route 2 times every day |
| | trazodone 50 mg tablet | take 2 tablet by oral route every bedtime after meals |

**Allergies**

Reviewed, no changes.

| Allergy/Ingredient | Brand | Reaction |
|---|---|---|
| CLINDAMYCIN | | |

**Family History:** (reviewed, updated)

| Year | Disease Detail | Family Member | Name | Age |
|---|---|---|---|---|





UPFULBRIGHT

CONFIDENTIAL

| No | | |
|---|---|---|
| Yes | Alzheimer's Disease | Mother |
| Yes | CAD | Family h/o |
| Yes | CAD | Father |

## Social History (reviewed, updated)

The patient is right-handed.
Primary language is English.

**EDUCATION / EMPLOYMENT / OCCUPATION:**

| Employment | Emp. History | Emp Status | Retire Date | Restrictions |
|---|---|---|---|---|
| | Electronic Tech with Rail Road, | | | |

**MARITAL STATUS / FAMILY / SOCIAL SUPPORT:**
Currently married.

**TOBACCO:**
Smoking status: Current every day smoker.

| Use Status | Total Pk Yrs | Type | Per Day | Years Used | Pack Years | Year Quit |
|---|---|---|---|---|---|---|
| current | 760 | cigarettes | 20.00 | 38.00 | 760 | |

| Tried To Quit | Longest Tob-Free | Relapse Reason | Passive Exposure |
|---|---|---|---|
| | | | |

**ALCOHOL:**
There is a history of alcohol use.

## Review of Systems

| System | Negative | Positive | Comments |
|---|---|---|---|
| Constitutional | Fatigue, fever and night sweats. | | |
| HEENT | Eye discharge, vision changes and vision loss. Ear drainage, hearing loss and nasal drainage. | | |
| Respiratory | Cough, dyspnea and wheezing. | | |







UPFULBRIGHT

CONFIDENTIAL

| | |
|---|---|
| Cardiovascular | Chest pain, claudication and irregular heartbeat/palpitations. |
| Gastrointestinal | Abdominal pain, constipation, diarrhea and vomiting. |
| Genitourinary | Dysuria, hematuria, penile discharge and polyuria. |
| Metabolic / Endocrine | Cold intolerance, heat intolerance, polydipsia and polyphagia. |
| Neuro / Psychiatric | Gait disturbance. Anxiety and depression. |
| Dermatologic | Pruritus and rash. **Crusting.** |
| Musculoskeletal | Joint swelling and muscle weakness. |
| Hematology | Easy bleeding and easy bruising. |
| Immunology | Environmental allergies and food allergies. |

## Vital Signs

| Time | BP mm/Hg | Pulse/min | Resp/min | Temp F | Ht ft | Ht in | Wt lb | BMI kg/m2 | BSA m2 |
|---|---|---|---|---|---|---|---|---|---|
| 9:33 AM | 132/82 | 80 | 16 | 98.8 | 5.0 | 10.00 | 296.70 | 42.57 | |

**Measured By:**

| Time | |
|---|---|
| 9:33 AM | Mary Gonzales |

## Physical Exam

**Constitutional:**

Well developed.

**Eyes:**

Right

No injection.

Left

No injection.

**Ears:**

Right:

Unremarkable to inspection.

Left:

UPFULBRIGHT000132







UPFULBRIGHT

CONFIDENTIAL

Unremarkable to inspection.

**Respiratory:**
Lungs clear to auscultation. Respiratory effort is normal.

**Cardiovascular:** Regular rate and rhythm. No murmurs, gallops, or rubs.

**Abdomen:**
Inspection has detected obese.

**Musculoskeletal:**
Normal range of motion, muscle strength, and stability in all extremities with no pain on inspection.

**Neurological:**
Memory: Intact .
Cranial nerves: II through XII are grossly intact.

**Psychiatric:**
The patient is oriented to time, place, person, and situation.
The patient demonstrates the appropriate mood and affect.

**Lab Studies:**

| Status | Lab Study | Timeframe | Date | Comments | Interpretation | Value |
|---|---|---|---|---|---|---|
| ordered | CBC W/AUTO DIFF | -Today | 03/27/2014 | | | |
| ordered | CMP + e-GFR | 2 Months | 05/27/2014 | | | |
| ordered | LIPID PROFILE WITH CALC NON-HDL CHOL | 2 Months | 05/27/2014 | | | |
| ordered | TSH | 2 Months | 05/27/2014 | | | |
| ordered | UA, MICROSCOPIC, REFLEX TO CULTURE | 2 Months | 05/27/2014 | | | |
| ordered | URIC ACID | 2 Months | 05/27/2014 | | | |

**Office Procedures:**

| Status | Ordered | Order | | Completed | Timeframe |
|---|---|---|---|---|---|
| completed | 03/04/2014 | KENALOG 10MG | 40 mg Intramuscular | 03/04/2014 | |

## Orders

| Status | Ordered | Completed | Order | Interpretation |
|---|---|---|---|---|
| ordered | 03/04/2014 | | follow-up visit for preventive care 3 Months | |
| ordered | 03/04/2014 | | ANA REFLEX AUTOIMMUNE AB PROFILE | |
| ordered | 03/04/2014 | | CBC W/AUTO DIFF | |
| ordered | 03/04/2014 | | CMP + e-GFR | |
| ordered | 03/04/2014 | | LIPID PROFILE WITH CALC NON-HDL CHOL | |
| ordered | 03/04/2014 | | RHEUMATOID FACTOR, QUANT | |
| ordered | 03/04/2014 | | SEDIMENTATION RATE | |
| ordered | 03/04/2014 | | TSH | |
| ordered | 03/04/2014 | | UA, MICROSCOPIC, REFLEX TO CULTURE | |

UPFULBRIGHT000133

UPFULBRIGHT

CONFIDENTIAL

| | | | |
|---|---|---|---|
| ordered | 03/04/2014 | | URIC ACID |
| completed | 03/04/2014 | 03/04/2014 | KENALOG 10MG 40 mg Intramuscular |
| ordered | 03/27/2014 | | follow-up visit for preventive care 2 Months |
| ordered | 03/27/2014 | | CBC W/AUTO DIFF |
| ordered | 03/27/2014 | | CMP + e-GFR |
| ordered | 03/27/2014 | | LIPID PROFILE WITH CALC NON-HDL CHOL |
| ordered | 03/27/2014 | | TSH |
| ordered | 03/27/2014 | | UA, MICROSCOPIC, REFLEX TO CULTURE |
| ordered | 03/27/2014 | | URIC ACID |

## Assessment Plan

**Allergic urticaria (708.0), Improved.**
**COMMENTS:**
cont fluids
**Other atopic dermatitis and related conditions (691.8), Improved.**
He is to schedule a follow-up visit for preventive care 2 Months .

Provider: David K. Livingstone MD 03/27/2014

Electronically signed by David K. Livingstone MD on 03/28/2014 08:57 AM

UPFULBRIGHT

UPFULBRIGHT000134

United States of America
Railroad Retirement Board

Form Approved
OMB No. 3220-0039

# Statement of Sickness

**Instructions:** *This form is to be executed by (1) a doctor trained in medical, surgical, dental or psychological diagnosis of the infirmity described, (2) a certified nurse/midwife in cases of pregnancy or childbirth, (3) a supervisory official of a hospital or similar institution, (4) a chiropractor, (5) a Physician Assistant - Certified, or (6) a nurse practitioner. This form should be completed and returned to the patient immediately for prompt mailing; otherwise he/she may lose benefits. Supplementary medical information may be attached or furnished directly to the Railroad Retirement Board (RRB) at the address shown below. If such information is furnished, please include the patient's social security number and name on the report. Please complete section 2 on the reverse side if patient is incapable of signing forms.*

**The RRB is not liable for any charge in connection with completing this form.**

1. Patient's Name (First, Middle, and Last): Joe M Fulbright

2. Patient's Social Security Number: REDACTED

3. Have you examined or treated the patient for his or her injury or illness? ☐ Yes ☐ No -- Go to Item 9

a. Date patient became sick or injured: 1-1-14

b. List all dates of examination and treatment for this infirmity: 2-26-14, 3-4-14, 3-27-14

c. Probable date of next examination: 2-3 mo

4. Diagnosis and concurrent conditions: Urticaria. Dermatitis - severe

5. Does the patient's condition require surgery? ☐ Yes ☒ No -- Go to Item 6

a. Date on which surgery was or will be performed:

b. Surgical procedure that was or will be performed:

6. Does the patient's condition require hospitalization? ER

☒ Yes -- Enter the period of hospital confinement: From Feb 2014 To

☐ No

7. If patient is not working because of maternity or childbirth, complete 7a and 7b.

a. Date patient became unable to work ▶

b. Estimated or actual date of delivery ▶

8. Give the date you believe the patient became or will become able to resume work in his or her occupation. (If indefinite or unknown, please give an estimated date.) ▶ 3-31-14

9. I certify that the information I am giving is true, complete, and correct. I understand that criminal and civil penalties may be imposed on me for false or fraudulent statements or for withholding information to cause or prevent payment of benefits by the RRB.

Please print or type: D. K. Livingstone, MD

| Name of Doctor | Signature of Doctor | Degree/Title |
|---|---|---|
| | D.K. Livingstone, MD | MD |
| **Address** | **Office Telephone Number (Include Area Code)** | **Date** |
| KMG<br>PO BOX 210907<br>BEDFORD, TX 76095 | (817) 358 5800 | 3-27-14 |
| | National Provider Identifier: NPI: 1588654511 | |

**PAPERWORK REDUCTION ACT NOTICE TO DOCTOR**

Medical evidence is needed to support the payment of claims for sickness benefits under the Railroad Unemployment Insurance Act (RUIA). The RRB is authorized to collect this information under section 12(i) of the RUIA. You are not required to furnish this information. If you do not, however, no benefits can be paid to your patient. We estimate this form and the form on the back of this page take an average of 8 and 6 minutes to complete, respectively. The estimates include the time for reviewing the instructions, getting the needed data, and reviewing the completed forms. Federal agencies may not conduct or sponsor, and respondents are not required to respond to, a collection of information unless it displays a valid OMB number. If you wish, send comments regarding the accuracy of our estimate or any other aspect of this form, including suggestions for reducing completion time, to the Chief of Information Resources Management, Railroad Retirement Board, 844 N Rush Street, Chicago, Illinois, 60611-2092. Send completed forms to:

**U.S. RAILROAD RETIREMENT BOARD**
**OFFICE OF PROGRAMS—OPERATIONS**
**POST OFFICE BOX 10695**
**CHICAGO, ILLINOIS 60610-0695**

Doctor: See Reverse Side

FORM SI-1b (06-09)

UPFULBRIGHT

# KANER MEDICAL GROUP, P.A.

## PATIENT AUTHORIZATION FOR USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION

By signing, I authorize Kaner Medical Group to use and/or disclose certain protected health Information (PHI) about me Union Pacific Rail Road Health & Medical services

SEND TO: **Dr. or Hosp.** Fax 402-501-0067
Name, address, phone or fax number of doctor.

ORDER FROM: **Dr. or Hosp.** ______
Name, address, phone or fax number of doctor.

This authorization permits Kaner Medical Group to use and/or disclose the following individually identifiable health information about me:

X History & Physical
X Discharge Summary
__ Operative Report
__ Radiology
__ Nursing
__ Physician Notes
__ Laboratory
__ All records
__ EKG/EEG/CAT scan
X Physician Orders
__ Social Service Notes
X Other, please specify All records except Labratory starting 01/01/2014 – 04/20/2014 end

The information will be used or disclosed for the following purpose:

__ Continuing Medical Care
__ Insurance
__ Legal Purposes
__ Military
__ Personal Use
__ School
__ Social Security/Disability
X Other, please specify is required for Return To work

The purpose(s) is/are provided so that I can make an informed decision whether to allow release of the information. This authorization will expire on 04/30/2014

The practice ______ will ✓ will not receive payment or other remuneration from a third party in exchange for using or disclosing the PHI.

I do not have to sign this authorization to receive treatment from Kaner Medial Group. In fact, I have the right to refuse to sign this authorization. When my information is used or disclosed pursuant to this authorization, it may be subject to redisclosure by the recipient and may no longer be protected by the federal HIPAA Privacy Rule. I have the right to revoke this authorization in writing except to the extent that the practice has acted in reliance upon this authorization. My written revocation must be submitted to the privacy officer at: **KANER MEDICAL GROUP, P.A. P.O. Box 210907 Bedford, Texas 76095** **(817) 358-5800 Fax: (817) 283-7686**

Signed by: [signature] 4/17/2014
Signature of Patient or Legal Guardian — Date

Joe M Fulbright 02 03 61
Print Patient's name — Date of Birth

SS# REDACTED

Print Name of Legal Guardian

**FORM 1101**



UP FULBRIGHT

**FORT WORTH SURGERY CENTER**
**2001 W. Rosedale Street**
**Fort Worth, Texas 76104**

**HISTORY AND PHYSICAL**

**PATIENT NAME:** FULBRIGHT, JOE

**CHART #:**

**DATE OF SURGERY:** 08/26/2014

**SURGEON:** Bobby Wroten, M.D.

**CHIEF COMPLAINT:** Mr. Joe Fulbright is a 53-year-old gentleman admitted at this time for the decompression of the left ulnar nerve at the elbow. He and I discussed this surgery thoroughly. He understands the nature and complications thereof.

**PAST MEDICAL HISTORY:** He denies any major medical problems. He does have a history of some depression.

**PAST SURGICAL HISTORY:** Patient has had his gallbladder removed and carpal tunnel release on both of the hands. He done well with that.

**ALLERGIES:** No allergies to medications. He is allergic to some food and pollen.

**PHYSICAL EXAMINATION:** HEENT: Within normal limits. NECK: Supple, no masses felt. Trachea in the midline. LUNGS: Clear to auscultation and percussion. HEART: Regular rhythm, no murmurs heard. ABDOMEN: Soft, normal bowel sounds. EXTREMITIES: The patient does have a positive Tinel's sign on tapping the ulnar nerve just distal to the medial epicondyle.

**IMPRESSION:** Cubital tunnel syndrome.

Bobby Wroten, M.D.
BW/jyr/1323814108

D: 08/26/2014
T: 08/26/2014

UPFULBRIGHT

UNT HEALTH PATIENT SERVICES

| | |
|---|---|
| Patient: | Joe Fulbright |
| Date of Birth: | REDACTED |
| Age/Sex: | 53/Male |
| Date: | September 5, 2014 |
| Historian: | self |
| Visit Type: | Nurse Visit |
| Provider: | Bobby J. Wroten MD |
| Specialty: | Ben Hogan Ortho Podiatry |

This 53 year old male presents for 9D PO Lt DUNE.

## History of Present Illness:

1. 9D PO Lt DUNE

## Nursing Comments:

Intake Comments: I saw Mr. Fulbright today. He had Lt DUNE on 8/27/2014 @ FWSC. He came in today without a bandage at all. I asked how long it had been uncovered and he said it only lasted about 2 days. He stated that he covered it at night but left it uncovered throughout the day. The incision looks pretty good. The proximal end is a little red but has probably been rubbing on his clothing. I cleaned it really well, removed the staples and placed 3 Telfa island dressings across the wound. His feeling is better.

MAW

## Past Medical History (Detailed)

| Disease | Onset Date | Comments |
|---|---|---|
| cubital tunnel syndrome | | 08/27/2014 - Lt DUNE FWSC |

## Past Surgical History

| Management | Date | Comments |
|---|---|---|
| Lt carpal tunnel release | 02/18/2008 | 02/18/2008 - Lt CTR FWSC |
| Rt carpal tunnel release | 04/16/2009 | 04/16/2009 - Rt CTR FWSC |
| Cholecystectomy | 1990 | |
| Decompress Ulnar Nerve @ elbow | 08/27/2014 | 08/27/2014 - Lt DUNE FWSC |

## Medication Reconciliation

**Patient is on no medications.**

## Allergies:

| Ingredient | Reaction | Medication Name | Comment |
|---|---|---|---|
| NO KNOWN ALLERGIES | | | |



UPFULBRIGHT

# UNT | HEALTH PATIENT SERVICES

**Patient:** Joe Fulbright
**Date of Birth:** REDACTED
**Age/Sex:** 53/Male
**Date:** September 23, 2014
**Historian:** self
**Visit Type:** Post Op Visit
**Provider:** Bobby J. Wroten MD
**Specialty:** Ben Hogan Ortho Podiatry

This 53 year old male presents for PO L DUNE.

## History of Present Illness:

1. PO L DUNE

The wound looks good at this point. He has regained his range of motion; still has a little numbness in the ulnar nerve distribution. His surgery was performed on 8-27-14, so he is almost a month from surgery. His ulnar intrinsics are all good and strong, and that seems to not be a problem for him.

## Past Medical History (Detailed)

| Disease | Onset Date | Comments |
|---|---|---|
| cubital tunnel syndrome | | 08/27/2014 - Lt DUNE FWSC |

## Past Surgical History

| Management | Date | Comments |
|---|---|---|
| Lt carpal tunnel release | 02/18/2008 | 02/18/2008 - Lt CTR FWSC |
| Rt carpal tunnel release | 04/16/2009 | 04/16/2009 - Rt CTR FWSC |
| Cholecystectomy | 1990 | |
| Decompress Ulnar Nerve @ elbow | 08/27/2014 | 08/27/2014 - Lt DUNE FWSC |

## Medications (active prior to today)

Patient is on no medications.

## Medication Reconciliation

Patient is on no medications.

## Allergies:

| Ingredient | Reaction | Medication Name | Comment |
|---|---|---|---|
| NO KNOWN ALLERGIES | | | |

Reviewed, no changes.



UPFULBRIGHT