IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE M. FULBRIGHT,<br>PLAINTIFF,<br><br>v.<br><br>UNION PACIFIC RAILROAD CO.,<br>　DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL CASE NO. 3:20-CV-2392-BK |

## MEMORANDUM OPINION AND ORDER

Pursuant to the parties' consent to proceed before the undersigned United States magistrate judge, Doc. 17, the Court now considers Defendant's *Motion to Partially Dismiss Plaintiff's Amended Complaint*, Doc. 41. For the reasons stated here, the motion is **GRANTED**.

### I.　　BACKGROUND

This action arises out of a dispute between Plaintiff Joe M. Fulbright and his former employer, Defendant Union Pacific Railroad Co., for Defendant's alleged violation of the Americans with Disabilities Act ("ADA"). Doc. 40 at 1. On February 19, 2016, six named plaintiffs and others similarly situated filed suit against Defendant in *Harris, et al. v. Union Pacific Railroad Co.*, alleging discrimination under the Americans with Disabilities Act. Civ. Act. No. 8:16-cv-381 (D. Neb.). Their class-wide allegations included discrimination based on disparate treatment, disparate impact, and unlawful medical inquiries. The named plaintiffs, independently from the class, also claimed failure to accommodate. Ultimately, the *Harris* plaintiffs moved to certify the class only with respect to their disparate treatment claim, voluntarily abandoning the disparate impact and unlawful medical inquiry claims. *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 621 (D. Neb. 2019); *Plaintiffs' Memorandum of Law in*

*Support of Motion for Class Certification*, 2018 WL 11257613 ("Plaintiffs seek certification of Count I, ADA disparate treatment.").  The district court certified the class, but the United States Court of Appeals for the Eighth Circuit reversed.  Doc. 40 at 12-13; *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1032 (8th Cir. 2020).  Here, Plaintiff alleges he was a putative member of the *Harris* class.  Doc. 40 at 12.

On July 28, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Fort Worth Human Relations Commission.  Doc. 40 at 11.  The EEOC issued its Dismissal and Notice of Rights to Plaintiff on June 7, 2016.  Doc. 40 at 11.  Plaintiff filed his complaint in this case on August 20, 2020.  Doc. 1 at 1.  Plaintiff's *Amended Complaint*, Doc. 40, alleges three claims: (1) discrimination based on his disability, (2) failure to accommodate, and (3) unlawful medical inquiries.  Doc. 40 at 14-16.  He seeks damages and injunctive relief.  Doc. 40 at 17.  The motion *sub judice* followed.  Doc. 41.

## II.    APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In making this determination, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the [non-moving party]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted).  However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).  To survive a motion to dismiss, a party's factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*,

550 U.S. at 555 (internal citations omitted).  When ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice.  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

### III.    ANALYSIS

#### A.  Discrimination Based on Disability

Plaintiff pleads a disparate-treatment cause of action under ADA sections 12112(a) and 12112(b)(6).  42 U.S.C. §§ 12112(a) & (b)(6).  Plaintiff alleges Defendant subjected him to disparate treatment by restricting his work, removing him from his job, disallowing him to resume working, making him pay for medical testing, and terminating his employment.[1]  Doc. 40 at 15.  Further, Plaintiff alleges Defendant discriminated against him by using qualification standards to screen him out of his job because of his disability.  Doc. 40 at 15; 42 U.S.C. § 12112(b)(6) (prohibiting using "selection criteria that screen out . . . an individual with a disability").  Defendant argues Plaintiff's screening-related, "disparate-treatment" claim under section 12112(b)(6) is really a disparate-impact claim and should be dismissed because Plaintiff did not exhaust his administrative remedies prior to filing suit.  Doc. 41 at 1.  Plaintiff disagrees, arguing section 12112(b)(6) claims may be brought under a disparate-treatment theory.  Doc. 44 at 10.  Thus, the Court must determine whether Plaintiff may rely on a disparate-treatment theory to bring a claim for screening-related, section 12112(b)(6) discrimination.

---

[1] Defendant does not seek dismissal of Plaintiff's disparate treatment allegations under section 12112(a) for, *inter alia*, work restrictions and termination based on his disability, although they are alleged in the same claim as Plaintiff's screening standards allegations under section 12112(b).  *See* Doc. 40 at 14-15.  Thus, the section 12112(a) claims are excluded from this analysis.

This issue has not yet been specifically addressed by the United States Supreme Court, the Court of Appeals for the Fifth Circuit, or any district court within the circuit.  In fact, there is sparse Fifth Circuit precedent concerning disparate-impact claims within the context of the ADA.  Nevertheless, in this instance, such determination is a prerequisite to considering whether Plaintiff has exhausted his administrative remedies.  Thus, the Court first undertakes this analysis.

### 1. *Plaintiff's section 12112(b) claim is properly characterized as one for disparate impact.*

Although Plaintiff labels his claim for screening-related discrimination as "disparate treatment," a review of his complaint reveals this claim fits more appropriately in the disparate-impact category.  The Fifth Circuit has "frequently instructed district courts to determine the true nature of a pleading by its substance, not its label." *Armstrong v. Capshaw*, *Goss & Bowers*, *LLP*, 404 F.3d 933, 936 (5th Cir. 2005).  Plaintiff alleges Defendant "discriminated against [him] by using standards (the Medical Rules and company fitness-for-duty policies) that screened him out and cost him his job because of his disabilities."  Doc. 40 at 15.

The United States Supreme Court has "consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact"—admonishing that courts must carefully distinguish between the two "[b]ecause 'the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact.'" *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (quoting *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252 n.5 (1981)).  Disparate treatment occurs when an employer "treats some people less favorably than others because of their race, color, religion, sex, or other protected characteristic"; and a plaintiff making this claim must show his employer acted with

4

subjective intent to discriminate. *Id.* at 52 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). By contrast, under the disparate-impact theory, "a facially neutral employment practice may be deemed illegally discriminatory *without evidence of the employer's subjective intent to discriminate*." *Id.* at 52-53 (quotation omitted) (emphasis added). On this distinction alone, the Court finds reason to limit Plaintiff's screening-related claim to a disparate-impact theory. Plaintiff's charge does not assert that any individual acted with *intent* to discriminate against him *vis-à-vis* the standards, but only that he was "screened out" under the medical standards. As such, the issue Plaintiff raises by his claim is not whether Defendant properly applied the medical standards when it fired him, but whether the standards' application disparately impacted him. *Beiswanger v. Ricoh USA, Inc.*, No. 1:21-CV-112, 2021 WL 4893582, at *2 (N.D. Ind. Oct. 20, 2021). For example, had Plaintiff alleged Defendant employed the standards against Plaintiff but not against non-disabled, similarly situated employees, he would have sufficiently alleged disparate treatment. But that is not the case here. Instead, Plaintiff's complaint focuses on the effect of the screening, utilizing language commonly cabined in disparate impact. Doc. 40 (complaining the Medical Rules, a facially neutral standard, screened Plaintiff out as a disabled person). A disparate-treatment analysis—dependent on the employer's motivation—would be inapposite. *See Raytheon* at 52.

Further, to establish a disparate-treatment claim, a plaintiff must sufficiently allege he: (1) has a disability and (2) is qualified for the job he held. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014). Contrastingly, disparate impact "involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Teamsters*, 431 U.S. at 335-36 n.15. Consequently, analyzing Plaintiff's claim under a disparate-treatment theory would be nonsensical. "[I]n the context of a challenge

to an employer's *facially discriminatory* qualification standard . . . it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly *cannot* meet because of his disability and that forms the very basis of his discrimination challenge."  *Johnson v. Bd. of Trs. of Boundary Cnty. Sch. Dist. No. 101*, 666 F.3d 561, 566-67 (9th Cir. 2011) (quotation omitted) (emphasis in original).  By contrast, Defendant's Medical Rules and fitness-for-duty policies are facially discriminatory qualification standards, as they focus "directly on an individual's disabling or potentially disabling condition."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007).  As such, the burden-shifting used in disparate treatment cases, which seeks to uncover "whether the employer made an employment decision on a proscribed basis," is not in dispute here.  *Id.* at 988 (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182-83 (6th Cir. 1996) (noting that when a defendant admits to taking account of disability status, the burden-shifting framework sometimes applicable to disparate treatment claims is unnecessary)).

Although not of precedential value, the district court for the Western District of Washington's holding that section 12112(b)(6) was a disparate-impact-*only* provision; to-wit: a plaintiff cannot bring a disparate-treatment claim under that section, is nonetheless instructive. *EEOC v. BNSF Ry. Co.*, No. C14-1488 MJP, 2016 WL 98510, at *5 (W.D. Wash. Jan. 8, 2016), *aff'd*, 902 F.3d 916 (9th Cir. 2018), *as amended* (Sept. 12, 2018).  The Supreme Court appears to have also positioned section 12112(b)(6) exclusively in the disparate-impact category, although it has not definitively held as much.  *Raytheon*, 540 U.S. at 53 (explaining that disparate impact claims are cognizable under the ADA and citing "using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability"—language lifted directly from section 12112(b)(6)—as example).  In arriving

6

at its decision, the Supreme Court focused on the discrepancy between the disparate-treatment

theory's *intent*-centric nature verses the *effect*-centric nature of the disparate-impact theory.  *Id.*

at 52-53.  Other courts have suggested as much,[2] including the Fifth Circuit.[3]  In accordance with

the foregoing analysis, Plaintiff may not bring his section 12112(b)(6) screening-related claim

under a disparate-treatment theory of discrimination and is limited to doing so only under a

theory of disparate impact.

      **2.  *Plaintiff has not exhausted his administrative remedies for a disparate-impact claim.***

      To exhaust administrative remedies prior to filing an ADA suit, a plaintiff must, *inter*

*alia*, file a charge with the EEOC describing the alleged discrimination.  *Patton v. Jacobs Eng'g*

*Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citing 42 U.S.C. § 2000e-5(e)(1)).  A plaintiff is

bound by the EEOC charge; and if he later files suit, he may not add additional claims not

---

[2] The Second Circuit demarcated "cases alleging discriminatory application of qualification standards" from "cases in which a plaintiff alleges 'disparate treatment.'"  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (citation omitted).  The Seventh Circuit similarly held that plaintiffs who do not want to bear the burden of showing they were a victim of *intentional* discrimination—*i.e.*, disparate treatment—may instead "switch to the disparate-impact approach," identifying section 12112(b)(6) as the relevant statute.  *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir. 1997).  Further, the Ninth Circuit cabined a plaintiff's claim regarding his employer's qualification standards as disparate impact and analyzed it on its own, apart from his disparate treatment claims, applying section 12112(b)(6).  *Lopez v. Pac. Mar. Ass'n*, 657 F.3d 762, 766 (9th Cir. 2021); *see Carillo v. Union Pac. R.R. Co.*, No. EP-21-CV-00026-FM, 2021 WL 3023407, at *3 (W.D. Tex. July 16, 2021) ("[Section] 12112(b)(6) is a disparate impact provision.").  "Numerous federal appellate circuit courts have declined to apply the *McDonnell Douglas* analysis to claims brought pursuant to [section] 12112(b)(6)," further implying reluctance to analyze such claims under a disparate-treatment theory.  *Allmond v. Akal Sec., Inc*., No. 4:05-cv-96(HL), 2007 WL 2904023 (M.D. Ga. Sept. 28, 2007) (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003)); *see Boersig v. Union Elec. Co.*, 219 F.3d 816, 822 (8th Cir. 2000) (discussing claims brought under section 12112(b)(6) as "invoking a disparate impact theory of liability").

[3] *See, e.g.*, *Gonzales v. City of New Braunfels*, 176 F.3d 834, 837-39 (5th Cir. 1999) (analyzing a plaintiff's claim regarding his employer's refusal to allow him to retake a qualifications test as disparate treatment but not analyzing whether the test itself "screened out the disabled," because the plaintiff did not plead disparate impact).

alleged in the charge. *Id.* When determining whether a specific claim of discrimination has been alleged, and thus exhausted, the crucial element is the charge's factual statement. *Id.* at 462. If that statement is sufficient to trigger an investigation into a specific discrimination claim, the administrative remedy has been exhausted. *See id.*

A disparate impact *prima facie* case requires proof of "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class," and does not require proof of discriminatory motive. *Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir. 2006) (citation omitted).

Plaintiff's EEOC charge alleges:

I.  PERSONAL HARM
I complained of discrimination by Supervisor Terry Neal due to my disability in 2012.  In retaliation for my complaint, I was falsely accused of being impaired in January 2015.  I was involuntarily removed from work and placed on a medical evaluation in February 2015.  In June 2015 I was discharged from my position.

II.  RESPONDENT'S REASON FOR ADVERSE ACTION
On January 6, 2015, Mr. Neal alleged that I was impaired while at work and that I had failed to answer a call made by dispatch, which was all proven to be false.
On June 28, 2015, Human Resources said it no longer had a job in communications due to the results of the medical evaluation.

III.  DISCRIMINATION STATEMENT
I believe I have been discriminated against and retaliated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended, the City of Fort Worth's Fair Employment Ordinance No. 7278, as amended, and the Texas Commission on Human Rights Act because:
I complained of discrimination by Supervisor Terry Neal due to my disability in 2012.  Mr. Jim Bracken Regional Director of Communications corrected Mr. Neal's actions of discrimination[,] and all was well until Mr. Bracken retired in late 2014.  In January 2015, Mr. Neal scheduled a conference with me and my union representative to discuss my job performance.  He alleged that I was impaired while at work and that I had failed to answer to a call made by dispatch.  All his allegations were proven to be false.  Even though I had no previous write ups I was removed from my service on February 3, 2015.  Human Resources said I was on a medical evaluation.  On or around June 28, 2015, I was told that I no longer had a job in communications due to the results of the medical evaluation even though the company never contacted me to complete a medical evaluation.  I believe that Mr.

Neal is retaliating against me for my complaints of discrimination against him and that I am being treated in this manner due to my disability.

Doc. 42-1 at 2-3 (cleaned up).[4]  At no point in his charge did Plaintiff mention any of Defendant's facially neutral policies or any adverse effects caused by such policies.  Therefore, the factual statements in Plaintiff's EEOC charge would not trigger an investigation into a disparate-impact disability discrimination claim.

Consequently, Plaintiff has not exhausted his claim for disparate-impact discrimination based on Defendant's qualification standards and screening.  To the extent Plaintiff's complaint alleges such a disparate-impact claim of discrimination, Defendant's motion is **GRANTED**, and such claim is **DISMISSED** for Plaintiff's failure to exhaust administrative remedies.

## B. Failure to Accommodate

Plaintiff next alleges Defendant failed to provide him reasonable accommodation for his impairment.  Doc. 40 at 15-16.  Defendant argues the claim should be dismissed as time-barred or, alternatively, because Plaintiff failed to exhaust his administrative remedies before filing suit.  Doc. 42 at 18-19.  Plaintiff responds that (1) the *Harris* class action, of which he was a putative member, tolled his limitations period, and (2) he exhausted his administrative remedies because his EEOC charge contains the facts necessary to support a failure-to-accommodate claim.  Doc. 44 at 7-14, 24-26.  Specifically, he argues his charge states he was falsely accused of being impaired on duty and was given a medical evaluation, which shows Defendant knew or

---

[4] "When a defendant attaches documents to its motion [to dismiss] that are referred to in the complaint and are central to the plaintiff's claims,[] the court can also properly consider those documents." *Covington v. City of Madisonville*, 812 F. App'x 219, 224 (5th Cir. 2020) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

suspected Plaintiff had a medical issue, thus giving rise to an obligation to provide an accommodation.  Doc. 44 at 27-28.

The Court first analyzes whether Plaintiff exhausted his administrative remedies—if he did not, the limitations issue is immaterial.[5]  As the Court explained *supra*, to properly exhaust his administrative remedies, a plaintiff must have filed an EEOC charge that includes a factual statement sufficient to trigger an investigation into his specific discrimination claim.  *Patton*, 847 F.3d at 443, 462.  Here, Plaintiff's EEOC charge explicitly alleges discrimination based on disability and retaliation.  Doc. 42-1 at 2-3.  It does not allege a failure to accommodate.  Doc. 42-1 at 2-3.  Indeed, it is not simply that Plaintiff did not say the magic words "failure to accommodate"—the charge does not contain *any* facts showing Plaintiff requested an accommodation, Defendant suggested or refused accommodation, an accommodation was discussed but not given, or any other scenario from which a failure-to-accommodate claim could arise.  *See* Doc. 42-1 at 2-3; *Woods v. United Parcel Serv.*, No. 3:18-cv-129-N-BK, 2018 WL 6729690, at *5 (N.D. Tex. Nov. 7, 2018) (Toliver, J.) ("[A] plaintiff wishing to exhaust a failure-to-accommodate claim must allege specific facts enabling the EEOC to determine that she requested an accommodation and the employer denied it." (citation omitted)); *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006).

Thus, Plaintiff failed to exhaust his administrative remedies as to his failure-to-accommodate claim.  Defendant's motion is to dismiss is **GRANTED** as to that claim.

---

[5] As discussed *infra*, only the limitations period for the disparate treatment claim was tolled until the decertification of the class action.  *See also* Section C, *infra*.  Thus, Plaintiff's tolling argument against dismissal of his failure-to-accommodate claim would also fail.

## C. Unlawful Medical Inquiry

Plaintiff alleges Defendant violated the ADA by requiring Plaintiff to undergo a medical examination, requesting medical records beyond what was necessary to resolve the parties' dispute, and requiring Plaintiff to undergo a sleep study. Doc. 40 at 16-17. Defendant argues the claim should be dismissed as time barred. Doc. 42 at 33. Plaintiff again responds that the class action tolled the limitations period to file this claim. Doc. 44 at 11.

As an initial matter, a plaintiff must file an ADA discrimination suit within 90 days of receiving a right-to-sue letter from the EEOC. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). According to Plaintiff, the EEOC issued that letter on June 7, 2016. Doc. 40 at 11. Plaintiff did not file suit until over four years later, on August 20, 2020. Doc. 1. The filing is untimely on its face, which Plaintiff acknowledges. Doc. 40 at 11. Despite its facial untimeliness, there are ways to toll the 90-day filing period. For example, if, before a plaintiff receives a right-to-sue letter, a class action is filed in which the plaintiff is a putative member, the 90-day limitation period for filing suit is tolled until class certification is denied. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352-54 (1983). Once certification is denied, the plaintiff has 90 days to file suit. *Id.* Defendant argues the *Harris* class action's claim for unlawful medical inquiry was abandoned in 2018—effectively a certification denial—and Plaintiff's 90-day period began to run then. Doc. 42 at 24-25. Plaintiff counters that the claim's abandonment is immaterial to the tolling extension. Doc. 44 at 12-13.

The *Harris* class action did initially contain a claim for unlawful medical inquiry. Doc. 42-3 at 6; Doc. 42-4 at 25. However, the *Harris* plaintiffs moved to certify a class that *did not include that claim*, thus ending the tolling period. *Plaintiffs' Memorandum of Law in Support of Motion for Class* Certification, 2018 WL 11257613 (providing a filing date of August 17, 2018);

see *Carillo*, 2021 WL 3023407, at \*4-6 ("Tolling ended for Plaintiff's disparate impact claim

when the *Harris* class voluntarily abandoned the claim's class certification."); *Johnson v. Ry.*

*Exp. Agency, Inc.*, 421 U.S. 454, 467 (1975).  Class-action tolling depends heavily on the fact

that the subsequently asserted cause of action involves the same cause of action initially pleaded

on a class-wide basis.  *Johnson*, 421 U.S. at 467 (citing *Am. Pipe & Constr. Co. v. Utah*, 414

U.S. 538 (1974); *Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424 (1965)).  It is therefore "incumbent

on the courts not to allow plaintiffs to 'raise different or peripheral claims following the denial of

class status,'" as doing so does not adequately warn defendants "of the scope and number of

claims they can expect."  *Carillo*, 2021 WL 3023407, at \*6 (quoting *Crown, Cork & Seal Co.*,

462 U.S. at 354 (Powell, J., concurring)).

   Here, Plaintiff's unlawful medical inquiry claim was no longer tolled under the *Harris*

class action once the named plaintiffs in that suit voluntarily abandoned the unlawful medical

inquiry claim before moving to certify the class.  *Id.* at \*5.  Moreover, Plaintiff is not permitted

to raise a claim peripheral to those included in the *Harris* motion to certify the class.  Thus, his

unlawful medical inquiry claim is untimely, and Defendant's motion to dismiss it is **GRANTED**.

## D.  Leave to Amend

   A court may dismiss claims that fail to meet the pleading requirements but should not do

so without granting leave to amend, unless the defect is simply incurable or the plaintiff has

failed to plead with particularity after being afforded repeated opportunities to do so.  *Hart v.*

*Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).  For the reasons stated here, however, the

Court concludes that Plaintiff's section 12112(b) unlawful screening, failure to accommodate,

and unlawful medical inquiry claims are fatally flawed.  Regardless of any additional pleading,

Plaintiff cannot overcome his failure to exhaust administrative remedies as to the first two

claims, nor can he cure the untimeliness of the third.  *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).  As such, leave to amend is denied as to Plaintiff's section 12112(b) unlawful screening, failure to accommodate, and unlawful medical inquiry claims, which are appropriately dismissed with prejudice.

## IV.   CONCLUSION

Defendant's *Motion to Partially Dismiss Plaintiff's Amended Complaint*, Doc. 41, is **GRANTED**.  Plaintiff's section 12112(b) unlawful screening, failure to accommodate, and unlawful medical inquiry claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on March 2, 2022,

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE