IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE M. FULBRIGHT, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:20-CV-2392-BK |
| | § | |
| UNION PACIFIC RAILROAD CO., | § | |
| DEFENDANT. | § | |

MEMORANDUM OPINION AND ORDER

Pursuant to the parties' consent to proceed before the undersigned United States

magistrate judge, Doc. 17, the Court now considers *Plaintiff's Motion for Partial Summary*

*Judgment*, Doc. 88, and *Defendant Union Pacific Railroad Company's Motion for Summary*

*Judgment*, Doc. 94. For the reasons that follow, Plaintiff's motion is **GRANTED IN PART** and

Defendant's motion is **DENIED**.[1]

I. BACKGROUND

Plaintiff worked for Defendant for 30 years, the last 15 of which he spent working as a

Senior Communications Technician.[2] Doc. 96 at 51 (HR Reporting System); Doc. 40 at 4.

Sometime around 2009, a psychiatrist prescribed Plaintiff Trazodone for his trouble sleeping,

Doc. 96 at 8 (Plaintiff's Deposition), which, without medication, caused fatigue, short-term

---

[1] Relatedly, Defendant filed a *Motion to Strike Plaintiff's Second Response to Defendant's Motion for Summary Judgment*. Doc. 114. Because the Court does not consider the information in *Plaintiff's Response to Defendant's Evidentiary Objections Regarding ECF Documents 105 and 106*, Doc. 111, in determining the motions *sub judice*, Defendant's motion to strike is moot.

[2] Plaintiff states that this position involved installing and maintaining equipment, and he did not work on moving trains. Doc. 106 at 3 (Plaintiff's Declaration).

memory troubles, irregular sleep, irritability, and feelings of depression, Doc. 90 at 147-48

(Coworker Declaration); Doc. 90 at 149-51 (Plaintiff's Declaration).  In 2015, at the time of the

acts at issue here, Plaintiff was still taking Trazodone.  Doc. 96 at 8 (Plaintiff's Deposition).

On January 26, 2009, Plaintiff informed his immediate supervisor, Steve Hale ("Hale"),

and second-level supervisor, Terry Neal ("Neal"), that he would be taking Trazodone in the

evenings to help him sleep, Doc. 90 at 151, which caused him to feel drowsy for four to six

hours, Doc. 96 at 10 (Plaintiff's Deposition).  Six years later, in January 2015, Plaintiff missed

three calls from work in one night on a weekend he was "on call" after taking Trazodone and

falling asleep.  Doc. 96 at 117-18 (Formal Conferencing Form).  Neal then referred Plaintiff to a

Fitness-For-Duty ("FFD") evaluation to "clarify if there is a sleep disorder or condition."  Doc.

96 at 117-18 (Formal Conferencing Form).  Plaintiff was then involuntarily removed from

service pending his FFD evaluation and placed on unpaid leave.  Doc. 90 at 155 (Plaintiff's

Declaration); Doc. 96 at 65 (Letter regarding Medical Leave).  As part of the FFD evaluation,

Defendant's Associate Medical Director, Dr. John Charbonneau, asked that Plaintiff undergo a

sleep medicine evaluation.  Doc. 96 at 89 (Employment Activity Log).  Then, in June 2015, Dr.

Charbonneau issued Plaintiff numerous work restrictions:

- Not to operate company vehicles, on track or mobile equipment, or fork lifts;
- Not to work on rail trains or work trains dumping ballast;
- Not to operate cranes; hoists, or machinery;
- Not to work at unprotected heights, over four feet above the ground;
- Not to work on 1 man or 2 man gangs; and
- Must have at least two additional employees on gang or at work area in order to use Train Approach Warning regulations (lookout).

Doc. 96 at 85 (Employment Activity Log).  Neal reviewed the restrictions and determined

Plaintiff's medical issues could not reasonably be accommodated because doing so would

require removing essential job functions and/or lowering performance standards.  Doc. 96 at 75-78 (Restriction Review Form).

Plaintiff filed this case in August 2020.  Doc. 1 at 1.  Plaintiff's sole remaining claim is for disparate-treatment disability discrimination.  Doc. 120.

## II. APPLICABLE LAW

Summary judgment shall be granted when the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  No genuine dispute of material fact exists where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

When ruling on a motion for summary judgment, the Court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The Court is not, however, required to sift through the record in search of evidence to support a party's position.  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  Instead, parties should "identify specific evidence in the record," and articulate the precise manner in which that evidence supports their claim.  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

**III. ANALYSIS**

The Americans with Disabilities Act ("ADA") prohibits discrimination based on disability in contexts including, *inter alia*, employment.  42 U.S.C. § 12112(a).  To succeed on an ADA claim, a plaintiff must first establish a *prima facie* case by showing (1) he has a disability; (2) he is qualified for the job in question; and (3) he suffered an adverse employment decision because of his disability.  *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998) (per curiam).

**A. There is a dispute of material fact as to whether Plaintiff has demonstrated a *prima facie* case of disability-based discrimination.**

*i. Plaintiff's sleep disorder is an ADA disability.*

Plaintiff seeks summary judgment in his favor on the issue that he has a "disability" as defined in 42 U.S.C. § 12102(1).  Doc. 89 at 9.  Courts must determine the threshold question of disability under ADA standards before any other issues are relevant.  *Rogers v. Int'l Mar. Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).  In crafting the 2008 ADA Amendments ("ADAAA"), "Congress intended that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Neely v. PSEG Tex., Ltd.*, 735 F.3d 242, 245 (5th Cir. 2013) (quotation omitted).  But a plaintiff must still prove disability by showing either: (1) he has a physical impairment that substantially limits one or more major life activities; (2) there existed a record of such impairment; or (3) his employer regarded him as having such an impairment.  *Id.*; 42 U.S.C. § 12102(1).

Plaintiff alleges he had "a sleep disorder that was substantially limiting with respect to several major life activities"—including sleeping, concentrating, thinking, and working—"when it was not treated by medication."  Doc. 89 at 25.

Defendant makes two arguments in opposition: first, that Plaintiff's medication is the issue, not his sleep disorder, and second, that Plaintiff's evidence is too remote.  Doc. 98 at 21. Both arguments, however, derive from the same nucleus—Defendant's averment that *Trazodone's side effects* led to its employment decisions, not Plaintiff's underlying sleep disorder.[3]  Doc. 98 at 21.  But the ADAAA clarifies that "the non-ameliorative effects of mitigating measures, such as negative side effects of medication, . . . may be considered when determining whether an individual's impairment substantially limits a major life activity."  29 C.F.R. § 1630.2(j)(4)(ii).  Further, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures."  29 C.F.R. § 1630.2(j)(1)(vi).  Medication is listed in the regulations as an example of mitigation measures.  29 C.F.R. § 16300(j)(5)(i).  Thus, the Court considers Trazodone's negative side effects in determining whether Plaintiff is disabled but will not consider the medication's amelioration of his sleep disorder's symptoms.

To show he suffers from an actual disability, a plaintiff must show he has "a physical or mental impairment that substantially limits one or more major life activities."  29 C.F.R. § 12102(1)(A).  Major life activities include, *inter alia*, "sleeping, . . . concentrating, thinking, communicating, and working."  *Id.* § 12102(2)(A).  This is not a difficult standard for plaintiff to

---

[3] In its argument for remoteness, Defendant asserts that Plaintiff's recollections reflect the period before he started taking Trazodone.  Doc. 98 at 21.  But assuming the Trazodone was effective, it follows that he would not be experiencing symptoms during the period he was taking it.

meet as, "'[a]n impairment need not prevent, or significantly or severely restrict' performance of major life activities, but rather, the standard is whether it 'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" *Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 446 (5th Cir. 2018) (citing 29 C.F.R. § 1630.2(j)(1)(ii)).  Medical corroboration is not required at the summary judgment stage—"[t]he 2008 [ADA] amendments and their implementing regulations broaden protection for the disabled, in part by clarifying, as noted *supra*, that showing substantial limitation 'usually will not require scientific, medical, or statistical analysis.'" *Id.* at 448 (citing 29 C.F.R. § 1630.2(j)(3)(iii)).

In support of his motion, Plaintiff provided the Court with his Declaration, which details his diagnosis, treatments, and symptoms, as well as elaborates on his sleep disorder's effect when unmanaged by medication.  Doc. 90 at 149-60 (Plaintiff's Declaration); *see Williams*, 717 F. App'x at 447 (finding this form of evidence sufficient to create a genuine dispute of material fact); *see Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 318 (5th Cir. 2013) (assuming without deciding that a plaintiff's sleep disorder was an actual disability that substantially limited the major life activities of sleeping and thinking).  Additionally, Plaintiff provides his former coworker's Declaration, which support his own.  Doc. 90 at 147-48.  Plaintiff also submitted evidence of doctors' visits—records of which were included in the fax Plaintiff sent Defendant during his FFD evaluation—that include notation of Plaintiff's insomnia, Doc. 90 at 61, 67, and his Trazodone medication, Doc. 90 at 73, 78, 83.  Further, Defendant "does not dispute that a sleeping disorder may substantially limit the major life activity of sleeping," rather, its main qualm with Plaintiff's claim centers on its belief that the effects of Trazodone cannot be considered in evaluating Plaintiff's ability to perform his job.  Doc. 98 at 21.

6

Plaintiff has shown evidence of his substantial limitation in sleeping "compared to most people in the general population." *Hernandez v. Clearwater Transp., Ltd.*, 550 F. Supp. 3d 405, 412-13 (W.D. Tex. 2021) (finding no dispute of material fact as to whether the plaintiff was disabled when she submitted supporting deposition evidence and medical records).  Plaintiff's evidence of a sleep disorder, to-wit, insomnia, is uncontroverted.  Also unconverted is Plaintiff's evidence that this disorder is substantially limiting with respect to several major life activities when untreated.  Defendant's arguments that Plaintiff's medication is the issue, not his sleep disorder, and second, that Plaintiff's evidence is too remote, fail for the reasons explained *supra*. On this record, the Court concludes that no genuine issue of material fact exists as to the existence of a "disability," as defined in 42 U.S.C. § 12102(1).

### ii. There is a genuine issue of material fact as to whether Plaintiff was qualified for the position.

Both parties argue they are entitled to summary judgment as to whether Plaintiff is a "qualified individual" under the ADA.  Doc. 89 at 9; Doc. 95 at 27.  The ADA prohibits discrimination against a "qualified individual with a disability on the basis of that disability."  42 U.S.C. § 12112(a).  A "qualified individual" is one who, with or without a reasonable accommodation, can perform the essential functions of the job.  42 U.S.C. § 12111(8). Defendant argues Plaintiff was unqualified because of (1) his unavailability for required after-hours calls, Doc. 95 at 27-29, and (2) his "medical restrictions conflicted with his essential job functions and could not be reasonably accommodated without removing or exempting him from having to perform certain essential functions," Doc. 95 at 30.

"Essential functions" are those that bear more than a marginal relationship to the employee's job. *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993)).  Courts owe

deference to an employer's judgment as to what functions are essential, 42 U.S.C. § 12111(8), but not absolute deference:

> The inquiry into whether a particular function is essential initially focuses on whether the employer *actually requires* employees in the position to perform the functions that the employer asserts are essential. For example, an employer may state that typing is an essential function of a position. If, in fact, the employer has never required any employee in that particular position to type, this will be evidence that typing is not actually an essential function of the position.

*E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014) (emphasis in original) (quotation omitted). The factfinder must make this determination on a case-by-case basis, *id.* (citation omitted), and should "evaluate the employer's words alongside its policies and practices." *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 794 (5th Cir. 2017) (citation omitted).

The parties' evidence in this respect can be summarized as follows: In support of its argument that being "on call" was an essential function of Plaintiff's job, Defendant provides its "Telecom Electronic Technician's Duties, Job Description, and Physical Performance Requirements (05/01/06)," which requires employees to be "available for call out 24x7." Doc. 96 at 107-08. Defendant also relies on its Director of Labor Relations' Declaration, which states Plaintiff was paid in consideration of his "being subject to call after hours at night and on weekends and holidays." Doc. 96 at 46. Finally, Defendant provides the declaration of Plaintiff's former supervisor, Hale, who also avers Plaintiff was "subject to after-hours call outs at night and on weekends." Doc. 96 at 48. Hale states he is "aware that communication technicians, [Plaintiff] included, voluntarily created, amongst themselves, a weekend rotation schedule where each technician took turns covering after-hours call outs," but claims the collective bargaining agreement's provision regarding emergency work controls. Doc. 96 at 47-48.

8

Plaintiff relies in large part on evidence of the voluntary rotation that Hale referenced. He points to his coworkers' and supervisors' testimony regarding the rotational system used to determine who would be "on call" at a given time.  Doc. 106 at 114-16 (Jason Ensign Deposition); Doc. 106 at 112-13 (Neal Deposition).  Further, Plaintiff testified at deposition that during a meeting led by Neal in 2009, Neal and Plaintiff's coworkers agreed Plaintiff would not be expected to be "on call" after taking Trazodone, and that his voluntary weekend rotations would end on Sunday evenings for that reason.  Doc. 90 at 151-54 (Plaintiff Declaration). Notably, Plaintiff testified that, until the incident in question, he was never called after taking Trazodone.  Plaintiff also highlights Neal's testimony that if a technician did not answer a call, the caller would simply dial the next person on the list.  Doc. 90 at 85-86 (Neal Deposition). Plaintiff's former coworker concurred that employees who were not on call would not be called, and if they were called, they would not be disciplined for failing to answer the call.  Doc. 106 at 115-16 (Ensign Deposition).

Plaintiff also argues that Defendant's proffered job description is not controlling because the technician duties were split between two positions after 2006.  Doc. 106 at 3-4 (Plaintiff Declaration); Doc. 106 at 97, 106-07 (Neal Deposition); Doc. 106 at 147-48 (Ensign Declaration); Doc. 105 at 23; Doc. 90 at 88-89 (Neal Deposition).  This split classified certain technicians as "Restore Technicians" and the rest as "Install Technicians."  Doc. 106 at 3-4 (Plaintiff Declaration); Doc. 106 at 37-38 (Christopher Ozuna Declaration); Doc. 106 at 106-07 (Neal Deposition).  The Install Technicians, Plaintiff alleges, were not on call outside of normal work hours, excepting voluntary weekend rotations and holiday shifts.  Doc. 106 at 3-4 (Plaintiff Declaration); Doc. 106 at 37-38 (Christopher Ozuna Declaration).

9

Plaintiff additionally argues that the collective bargaining agreement provision that Defendant cites to, which purports to require employees to report for emergency work any time they are called, Doc. 96 at 129, is not controlling because it conflicts with another provision of the document. Doc. 105 at 22. This latter provision states "Senior Electronic Technicians will make themselves available for after hour calls, unless other arrangements have been made with proper authority." Doc. 106 at 51 (2003 Collective Bargaining Agreement). Plaintiff contends such "other arrangements" were made for him and his coworkers. Doc. 105 at 22. Finally, Plaintiff contends "Defendant has not supplied any evidence about how frequently persons in [his] position were actually called to come in to work for an emergency when they were off duty, thus leaving open a question of fact that a jury could resolve in Plaintiff's favor." Doc. 105 at 24-25.

In light of the proffered evidence, the issue of whether being "on call" was an essential function of Plaintiff's job remains a disputed material fact. *See Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 998-99 (W.D. Tex. 2012) (finding the plaintiff's evidence regarding duties she did not perform in her job created a triable issue of material fact as to whether those duties were essential functions of her position). Defendant apparently does not consider the voluntary rotation in making its argument that Plaintiff was not qualified for his position. However, the trier of fact could no doubt conclude that Plaintiff would have been unable to work under the voluntary rotation system for six years without issue if a mandatory on-call system was indeed "essential."

As to Plaintiff's ability to safely perform his job—which Defendant argues is an essential function he cannot fulfill—Plaintiff avers, "the evidence shows that Plaintiff safely did his job for six years after he started taking Trazodone." Doc. 89 at 29. He points out that Dr.

Charbonneau, in making the adverse employment decisions and in providing decision-making information to Neal, was not aware of any day Plaintiff was impaired on the job or any safety violation Plaintiff committed at work.  Doc. 89 at 30 (citing Doc. 90 at 11-12, 28 (Dr. Charbonneau Deposition)).  Neal also was not aware of Plaintiff ever behaving in an unsafe manner.  Doc. 90 at 91-92.

An "individual is not qualified for a job if there is a genuine substantial risk that he or she could be injured or could injure others, and the employer cannot modify the job to eliminate that risk."  *Chiari v. City of League City*, 920 F.2d 311, 317 (5th Cir. 1991).  This determination "cannot be based on unfounded fears or stereotypes; it must be veritable."  *Id.* (citation omitted).  Although Defendant points to the results of the FFD evaluation and Neal's determination that Plaintiff could not safely perform various essential functions of his job, Plaintiff provides conflicting evidence of his lack of safety violations, good performance reviews (including from Neal himself), and coworkers' beliefs in his ability to safely perform his job functions.  Doc. 90 at 155 (Plaintiff Declaration); Doc. 90 at 109 (Ensign Deposition).  Such evidence raises a genuine dispute of material fact as to this issue for summary judgment purposes.  *See Molina*, 840 F. Supp. 2d at 984 (showing a plaintiff's supervisor testified he never felt she posed a safety threat to herself or others, which was sufficient to bar summary judgment against her on this issue).

11

### iii. There is a genuine issue in dispute as to whether Plaintiff suffered an adverse employment action because of his disability.

Both parties also argue they are entitled to summary judgment in their favor regarding the existence of an adverse employment action. Doc. 89 at 9; Doc. 95 at 30. "An employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quotation omitted). Adverse employment actions consist of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Id.* (emphasis and quotation omitted).

Plaintiff alleges Defendant took adverse employment actions against him when it (1) placed him on unpaid leave in February 2015 and (2) imposed work restrictions that caused Plaintiff to lose his job—the functional equivalent of a termination. Doc. 89 at 22-23; Doc. 103 at 4. Defendant argues, *inter alia*, that Plaintiff failed to comply with its requests regarding the FFD evaluation and requested sleep medicine evaluation. Doc. 95 at 34. The facts surrounding the communication between the parties regarding this procedure and Plaintiff's knowledge of what was required of him are murky at best. *Compare* Doc. 90 at 155-57 (Plaintiff's Declaration) *with* Doc. 96 at 41 (Dr. Charbonneau Deposition). Plaintiff also avers he was unable to afford the evaluation itself, which cost $600, because he had been out of work for four months by the time Defendant requested it, Doc. 89 at 18, 32, which facts Defendant disputes. Doc. 98 at 14-15.

Indefinite suspension without pay can constitute an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72-73 (2006) (including a plaintiff who lived for 37 days without income on indefinite leave might, for fear of economic retaliation, decide against filing a discrimination complaint). Defendant, however, asserts that Plaintiff's

removal was not indefinite.  Doc. 109 at 12-14, 22.  Plaintiff argues it was indefinite, as he was

suspended for five months without pay and without knowledge of when, if ever, he could return

to work.  Doc. 105 at 26.  Further, a fundamental change of compensation is an adverse

employment action.  *Presta v. Omni Hotels Mgmt. Corp.*, No. 4:17-CV-912, 2018 WL 1737278,

at *12 (S.D. Tex. Apr. 4, 2018) (citing *Pegram*, 361 F.3d at 283).  Here, Plaintiff no longer had

any job responsibilities, a right to return to work, compensation, or benefits.  *See id.* (finding

similar facts showed an adverse employment action).  Thus, there remains a genuine dispute of

material fact as to whether Plaintiff was placed on unpaid leave and effectively terminated

because of his disability.

### B. There is direct evidence of discrimination in this case.

Defendant argues it is entitled to summary judgment in its favor on this matter because, it

alleges, Plaintiff cannot show direct evidence of discrimination.  Doc. 95 at 26.  A plaintiff may

sidestep the usual *McDonnell Douglas* burden-shifting framework if he can show direct evidence

of discrimination.  *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 521 (N.D. Tex. 2009); *see*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  "Direct evidence is evidence

which, if believed, proves the fact in question without inference or presumption.  In the

employment discrimination context, this includes any statement or document which shows on its

face that an improper criterion served as the basis for an adverse employment action."  *Cortez,*

663 F. Supp. 2d at 521 (citation and quotation omitted).

Here, the evidence shows direct evidence of discrimination.  *See, e.g.*, Doc. 90 at 8 (Dr.

Charbonneau's deposition testimony that he decided to pull Plaintiff from service partly because

Plaintiff "has a sleep problem, he's taking medication which impairs his ability to be there").  In

fact, in its brief on this issue, Defendant states "[Plaintiff] was removed from service after Neal

referred him for an FFD evaluation when [Plaintiff] had missed *multiple after-hours calls because of his sleep medication and based on concerns that his sleep medication may have lingering effects during his normal work shift*."  Doc. 95 at 37-38 (emphasis added).  Whether discrimination based on disability occurred here turns on whether Plaintiff was expected to answer after-hours calls as an essential function of his job.  If the trier of fact finds a *prima facie* case of ADA discrimination exists, Defendant's multiple explanations that the purported adverse employment actions were the result of Plaintiff's sleep disorder (or, as Defendant emphasizes, Trazodone's effects) may directly demonstrate discriminatory intent, regardless of whether Defendant can proffer a legitimate reason for its actions or Plaintiff can prove pretext.  The slew of competing accusations in this case as to whether technicians were required to always be on call, as discussed *supra*, is illustrative of the existence of a genuine issue of material fact as to this issue.

C.  **Plaintiff's motion for summary judgment on Defendant's failure to mitigate, direct threat, and undue hardship defenses is denied.**

  i.  *There is a genuine issue of material fact as to Plaintiff's failure to mitigate his damages.*

Plaintiff argues summary judgment should be granted in his favor on Defendant's failure-to-mitigate affirmative defense because "Defendant did not identify any positions it contends were substantially similar that Plaintiff could have applied for."  Doc. 89 at 35.  Defendant counters that Plaintiff's "intermittent" search for positions was not reasonable regardless of whether positions existed that he could have applied for because his attempts at securing a position did not fulfill his "reasonable" obligation.  Doc. 98 at 27.

A plaintiff suing for back pay under the ADA must mitigate his damages by using reasonable diligence to obtain substantially equivalent employment.  *Migis v. Pearle Vision, Inc.*,

14

135 F.3d 1041, 1045 (5th Cir. 1998).  The employer has the burden of proving failure to

mitigate.  *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 486 (5th Cir. 2007).  It can meet this

burden by demonstrating (1) substantially equivalent work was available and (2) the plaintiff did

not exercise reasonable diligence to obtain this work.  *See Sellers v. Delgado Cmty. Coll.*, 839

F.2d 1132, 1138 (5th Cir. 1988) ("The determination of whether or not a Title VII claimant uses

reasonable diligence in obtaining substantially comparable employment is a determination of

fact.").  If an employer shows that an employee has not made reasonable efforts to obtain work,

it does not also have to establish the availability of substantially equivalent employment.  *West v.*

*Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (quoting *Sellers v. Delgado Coll.*,

902 F.2d 1189, 1193 (5th Cir. 1990)).

　　　Plaintiff alleges he fulfilled his obligation to mitigate his damages by asking a former

coworker to "keep an eye out" for job openings Plaintiff could apply for, by searching online for

other railroad jobs, and by creating accounts on two online job-search sites, which he used to

apply to non-railroad jobs.  Doc. 90 at 159 (Plaintiff's Declaration).  Defendant concedes that

Plaintiff "searched for employment at intermittent times since June 2015," but argues he did not

"fully mitigate[] his damages and [] genuine issues of material fact exist in this regard."  Doc. 98

at 27.  Defendant plausibly disputes whether Plaintiff's job search was reasonable.  *See*

*Hernandez v. Clearwater Transportation, Ltd.*, 550 F. Supp. 3d 405, 415 (W.D. Tex. 2021)

(finding summary judgment improper on the "failure to mitigate" affirmative defense when

parties presented sufficient conflicting evidence of reasonableness).  Accordingly, Plaintiff is not

entitled to summary judgment on this basis.

### ii. There is a genuine dispute of material fact as to whether Plaintiff posed a "direct threat."

Plaintiff argues that the Court should grant summary judgment in his favor on Defendant's direct-threat affirmative defense, Doc. 43 at 11, 13, because "it is undisputed that [] after he started taking Trazodone in 2009, Plaintiff safely did his job for six years without an incident or even a rumor of a safety concern," and because Defendant did not make its adverse employment decisions on the belief that Plaintiff was a direct threat. Doc. 89 at 37. Defendant argues its "actions were not based on the fact that [Plaintiff] took Trazodone [but] on the concerns and unknown variables of how Trazodone affected him when he took it." Doc. 98 at 28.

An employer is entitled to a direct threat defense if an employee poses a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The Court of Appeals for the Fifth Circuit has yet to determine which party bears the burden of proof regarding the direct threat defense. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 343 n.5 (5th Cir. 2019). Whether an employee is a direct threat "is a complicated, fact intensive determination, not a question of law." *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 764 (5th Cir. 1996). "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job.'" *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)).

Irrespective of whose burden it is, however, the Court concludes that a genuine issue of material fact exists regarding the nature of the risk and the purported harm. Defendants have

16

proffered evidence, and Plaintiff has admitted as much, that Trazodone causes him to feel

drowsy.  However, Plaintiff has also presented evidence that he took Trazodone for six years of

his employment without incident and that he passed two other FFD evaluations wherein

Trazodone was a noted medication.  Doc. 90 at 34 (Dr. Charbonneau Deposition); *see Breaux v.*

*Bollinger Shipyards, LLC*, No. CV 16-2331, 2018 WL 3329059, at \*13 (E.D. La. July 5, 2018)

(arriving at the same conclusion on similar evidence).  Thus, summary judgment on this issue is

not appropriate.

### iii. Defendant's "undue hardship" defense is moot.

Undue hardship is a defense to a failure-to-accommodate claim, not a disparate treatment

claim.  *See Cortez*, 663 F. Supp. 2d at 525 ("[I]t is a violation of the ADA for failing to

reasonably accommodate an employee unless the employer can demonstrate that the

accommodation causes undue hardship.") (citing 42 U.S.C. § 12112(b)(5)(a)).  Because the

Court granted Defendant's motion to dismiss Plaintiff's failure-to-accommodate claim due to his

failure to exhaust his administrative remedies, Doc. 120 at 10, Plaintiff's request for summary

judgment on Defendant's undue hardship defense is likewise moot.

### IV. CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Partial Summary Judgment*, Doc. 88, is

**GRANTED IN PART,** to the extent set forth above, and *Defendant Union Pacific Railroad*

*Company's Motion for Summary Judgment*, Doc. 94, is **DENIED**.  Relatedly, Defendant's

*Motion to Strike Plaintiff's Second Response to Defendant's Motion for Summary Judgment*,

17

Doc. 114, is **TERMINATED AS MOOT**.

      **SO ORDERED** on March 31, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

18